-- End of Section --

FANO/mf

December 22, 2000
Serial No. 99-0039-0056

Lackland Resident Office

SUBJECT: Lack of Quality Control, Contract No. DACA63-99-C-0039, BC - Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78228

Gentlemen:

As discussed with Mr. Hector Trinidad in the afternoon of December 20, 2000, my staff and I are very concerned with the lack of quality control on this project and the indifference being demonstrated by Mr. Jake Trinidad towards quality and contract compliance.

On December 11, 2000, my quality assurance representative, Mr. Bill Reese informed your quality control manager, Mr. Arturo Perez that the ambient temperature was going to drop that evening in the 20's, according to the weather forecasters. Mr. Reese asked Mr. Perez how were they planning on protecting the concrete that was placed on December 8, 2000. Mr. Perez stated that he would let Mr. Reese know later on that day of what they would do to protect the concrete. Mr. Reese asked three more times that day and finally Mr. Perez stated that it was up to the project superintendent, Mr. Jake Trinidad, to do something. He did nothing.

On the morning of December 12, 2000, Mr. Reese stopped by the Vehicle Maintenance site at around 6:15 am. At that time the ambient temperature was 27 degrees F and the concrete surface temperature under the moist curing blankets was 31 degrees F. Also, the moist curing blankets on the north side were blown off the top of the concrete approximately 3 feet and the rest was frozen to the concrete.

The above is totally unacceptable. Low temperatures like this slow down the curing process, hence not allowing the concrete to achieve the required strength at 28 days. Also, shrinkage cracks may appear when the ambient temperature is approximately 40 degrees F higher. In accordance with paragraph 03300-3.11.4 of the contract specifications, "When the daily ambient low temperature is less that 0 degrees C (32 degrees F) the temperature of the concrete shall be maintained above 5 degrees C (41 degrees F) for the first seven days after placing."

Because of your disregard to follow contract requirements and follow quality control procedures, the quality of the concrete in question is unknown. No payment will be made on this concrete until ambient temperatures reach the 70s, which will probably won't be until spring. At that time, differential temperature shrinkage cracks can be investigated.

This situation again happened on December 15, 2000. You placed concrete on top of the grade beams surrounding the columns. This concrete is to be treated as any other structural concrete. Again, the concrete was not protected against freezing temperature. I asked Mr. Reese to tell your personnel to cover them up with 2 or 3 layers of blankets. He told Mr. Perez, who in turn was to tell the superintendent. Nothing was done. That following Monday, December 18th, the ambient temperature was in the high 20s. The single curing blankets were blown off of the top of the concrete. Again, no payment will be made for this concrete until we are satisfied that it meets that contract requirements.

Another incident that just occurred was regarding the masonry construction. A preparatory inspection was held and the foreman for the crew was present. On the morning of December 19, 2000, the crew began work under the supervision of another foreman. Mr. Reese told them that they could not perform work until another preparatory inspection was conducted to assure this new foreman was familiar with the contract requirements in regards to quality and safety. This meant that scaffolding could not be erected under the hazard control analysis was discussed. Mr. Reese discussed the issue with Mr. Perez who agreed to conduct another

preparatory. Around 2:00 pm that afternoon, Mr. Reese returned to the jobsite and noticed that the scaffold had been erected and CMU blocks were on it. Mr. Reese asked why they had done this after it was agreed that another preparatory inspection would be conducted first. The foreman stated that Jake Trinidad had told them to proceed. Mr. Reese told Mr. Trinidad that no work could be performed until another preparatory inspection could be conducted. This is another instance where Mr. Jake Trinidad disregarded the contract requirements and the safety of employees. Paragraph 01451-3.6.4 of the contract specifications states that additional preparatory phases shall be conducted on the same definable feature of work if there are changes on the onsite production supervision or work crew. This is done to assure the work will be performed in a safe manner and that the required quality will be achieved.

Other instances where poor or no quality control procedures were followed are:

a. No follow up inspections are being conducted, at least not with the necessary frequency and detail. This is left to my personnel to inspect and notify your quality control of deficiencies found.

b. It is the responsibility of the quality control manager to coordinate, schedule and conduct initial inspections. Mr. Perez doesn't. He has to be constantly reminded by my staff. See paragraph 01451-3.6.2 of the contract specifications.

c. Preparatory inspections are being scheduled without having approved submittals. Approved submittals are required prior to scheduling a preparatory phase. See paragraph 01415-3.6.1 of the contract specifications.

d. Work being performed without a preparatory phase held. No preparatory inspection was held for the underground piping insulation. Twice my staff had to stop this work because the preparatory was not held. The first time the preparatory for this phase of work was scheduled the foreman was not present and the sample was incorrect. The second time the preparatory was scheduled, the sample was still incorrect, the material data sheet that matched

the contract requirements, did not match the material being used.

e. Mr. Perez is very seldom in the field performing inspections. He spends most of his time in the office. If he needs help with the administrative portion of his job, then you need to provide him assistance. See paragraph 01451-3.4.3.1 of the contract specifications.

f. I have noticed that Mr. Perez is the one preparing the progress schedule narratives submitted with your pay requests. As the quality control manager, he is to perform duties regarding to quality and safety only. No other duties, such as working with the schedule, will be assigned to him. Refer to paragraph 01451-3.4.2 of the contract specifications.

The above lack of quality control will not be allowed. If a marked improvement is not noticed in the near future, I will not hesitate to request the removal of the superintendent and/or the quality control manager. Refer to paragraph 01451-3.1 and Contract Clause 89 of the contract specifications.

In addition, you are directed to provide a Cold Weather Concrete Protection Plan for approval, prior to scheduling any further concrete placements on this project.

If you have any questions, please do not hesitate to contact the Project Engineer, Mr. George Cardenas at (210) 675-7712.

Sincerely,

Manuel Fano
Contracting Officer Representative

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
4204 WOODCOCK, SUITE 245
SAN ANTONIO, TEXAS 78228-1319

REPLY TO
ATTENTION OF:

P. De La Fuentes/pdf

November 9, 1999
Serial No. 99-0039-0001

Lackland Resident Office

SUBJECT: Preconstruction Conference Minutes, Contract No. DACA63-99-C-0039, BC – Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

Sedona Contracting, Inc.
5800 Park Ten Blvd., Suite 135E
San Antonio, Texas 78213

Gentlemen:

The attached copy of the minutes to subject conference held November 5, 1999 is forwarded for your records. You are reminded that the minutes to this meeting being agreed to and signed will become a part of the safety program for this project.

A copy of the minutes must be kept on file at the job site from start to finish.

Sincerely,

*Original signed by:*

Manuel Fano
Contracting Officer's Representative

Attachment

PRE-CONSTRUCTION AND SAFETY CONFERENCE
CONTRACT NO. DACA63-99-C-0039
BC - VEHICLE OPERATIONS/MAINTENANCE COMPLEX

| 0900 hrs | 5 November 99 | Lackland Res. Off. |
|---|---|---|
| TIME | DATE | LOCATION |

PERSONNEL ATTENDING MEETING

| NAME | ORGANIZATION | TITLE | PHONE |
|---|---|---|---|
| Manuel Fano | Corps of Eng. | Resident Eng. | 675-7712 |
| GEORGE CARDENAS | COE | PROJECT ENGR | 675-7712 |
| BILL REESE | COE | QA | 675-7712 |
| Roy Gutierrez | 37 TRW/SE | Safety Specialist | 671-3967 |
| Hector Trinidad | SEDONA | GM | 736-5335 |
| Eddie STUART | SEDONA | SUPERINTENDENT | 6738216 |
| Tracy Trinidad | Sedona | Quality Control | 736-5335 |
| DEAN BARNHART | HEPHETECKECT | Project MANAGER | 652-4465 |
| GILBERT SANCHEZ | FIRE DEPT | FIRE INSPECTOR | 671-2321 |
| FOLEY BRIAN D. | VEH. MAINT | VMM | 671-2869 |
| Flack Bary D. | Veh maint | VMO | 671-2869 |
| Eddington Robert D | Vehicle operations | Fleet MGR | 671-3413 |
| Walker, Gordon D. | Vehicle Operations | Superintendent | 671-3415 |
| Ronald Fucik | 37 CES/CECL | Project Manager | 671-4096 |
| Peter Micaleddi | 37 LG/CC | Commander | 671-3886 |
| JAMES KODAT | 37 TRANS/LGTR | Flight Commander | 671-3045 |
| Roger Kiker | 76 CES/CECC | Mechanical Engr. | 925-7303 ext. 492 |
| Charles Weiss | 37 TRNS/CC | Commander | 671-2855 |
| Les FORD | 37 TRNS/LGTR | Chief [illegible] | 671-3045 |
| GARY WATTS | 37 CS/SCX | Chief Plans | 671-3196 |
| | | | |
| | | | |

i. Contractor is responsible for the security of his property and jobsite.

j. 1) There is equipment in the existing facility that needs to be moved to Veh. Maint. - This is a separate contract.
2) User expressed their concern regarding completion date. They are required to be operational by April 1, 2001.

8. Progress Payments: Payment for the completed work will be based upon amounts agreed to mutually by the contractor and a representative of the Corps of Engineers using the approved NAS Schedule breakdown as a guide, prior to submitting an official pay request to the Area Office.

a. Allowance may be made for materials stored on site if legible invoices are submitted by the contractor with the pay request.

b. If payment is requested for performance and payment bond premiums as a separate item, it should be included as a separate activity in the NAS.

c. Payment for mobilization cost can be made, provided that a reasonable demobilization amount is allowed for at the end of the project.

d. A 10% retainage will be withheld when progress is 5% or 15 calendar days behind schedule during any one pay period and will continue to be withheld until such time that the schedule is regained and refunding will not adversely affect the protection of the Government's interest.

e. Work performed by a subcontractor will not be included in any contract payment estimate until the Statement and Acknowledgment, Standard Form 1413, is submitted in a satisfactory manner. Reference SWFP 115-1-1.

f. Withholdings from the pay estimate will be made for any non-conforming work, labor violations, delinquent submission of daily logs, and As-builts and Installed Property List not kept up to date.

g. Payment will not be allowed for items which shop drawings have not been submitted and approved.

77 52.229-3 FEDERAL, STATE, AND LOCAL TAXES (JAN 1991)

(a) "Contract date," as used in this clause, means the date set for bid opening or, if this is a negotiated contract or a modification, the effective date of this contract or modification.

"All applicable Federal, State, and local taxes and duties," as used in this clause, means all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract.

"After-imposed Federal tax," as used in this clause, means any new or increased Federal excise tax or duty, or tax that was exempted or excluded on the contract date but whose exemption was later revoked or reduced during the contract period, on the transactions or property covered by this contract that the Contractor is required to pay or bear as the result of legislative, judicial, or administrative action taking effect after the contract date. It does not include social security tax or other employment taxes.

"After-relieved Federal tax," as used in this clause, means any amount of Federal excise tax or duty, except social security or other employment taxes, that would otherwise have been payable on the transactions or property covered by this contract, but which the Contractor is not required to pay or bear, or for which the Contractor obtains a refund or drawback, as the result of legislative, judicial, or administrative action taking effect after the contract date.

(b) The contract price includes all applicable Federal, State, and local taxes and duties.

(c) The contract price shall be increased by the amount of any after-imposed Federal tax, provided the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price, as a contingency reserve or otherwise.

(d) The contract price shall be decreased by the amount of any after-relieved Federal tax.

(e) The contract price shall be decreased by the amount of any Federal excise tax or duty, except social security or other employment taxes, that the Contractor is required to pay or bear, or does not obtain a refund of, through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer.

(f) No adjustment shall be made in the contract price under this clause unless the amount of the adjustment exceeds $250.

(g) The Contractor shall promptly notify the Contracting Officer of all matters relating to any Federal excise tax or duty that reasonably may be expected to result in either an increase or decrease in the contract price and shall take appropriate action as the Contracting Officer directs.

(h) The Government shall, without liability, furnish evidence appropriate to establish exemption from any Federal, State, or local tax when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption.

(End of clause)

78 52.229-5 TAXES--CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO (APR 1984)

The term "local taxes," as used in the Federal, State, and local taxes clause of this contract, includes taxes imposed by a possession of the United States or by Puerto Rico.

(End of clause)
(AV 7-103.10(c) 1963 NOV)
(AV 1-11.401-3(a))

79 52.232-5 PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (MAY 1997)

(a) Payment of price. The Government shall pay the Contractor the contract price as provided in this contract.

(b) Progress payments. The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the

Contracting Officer.

(1) The Contractor's request for progress payments shall include the following substantiation:

(i) An itemization of the amounts requested, related to the various elements of work required by the contract covered by the payment requested.

(ii) A listing of the amount included for work performed by each subcontractor under the contract.

(iii) A listing of the total amount of each subcontract under the contract.

(iv) A listing of the amounts previously paid to each such subcontractor under the contract.

(v) Additional supporting data in a form and detail required by the Contracting Officer.

(2) In the preparation of estimates, the Contracting Officer may authorize material delivered on the site and preparatory work done to be taken into consideration. Material delivered to the Contractor at locations other than the site also may be taken into consideration if--

(i) Consideration is specifically authorized by this contract; and

(ii) The Contractor furnishes satisfactory evidence that it has acquired title to such material and that the material will be used to perform this contract.

(c) Contractor certification. Along with each request for progress payments, the Contractor shall furnish the following certification, or payment shall not be made: (However, if the Contractor elects to delete paragraph (c)(4) from the certification, the certification is still acceptable.)

I hereby certify, to the best of my knowledge and belief, that--

(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of chapter 39 of Title 31, United States Code;

(3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract; and

(4) This certification is not to be construed as final acceptance of a subcontractor's performance.

____________________________
(Name)

____________________________
(Title)

____________________________
(Date)

(d) Refund of unearned amounts. If the Contractor, after making a certified request for progress payments, discovers that a portion or all of such request constitutes a payment for performance by the Contractor that fails to conform to the specifications, terms, and conditions of this contract (hereinafter referred to as the "unearned amount"), the Contractor shall--

(1) Notify the Contracting Officer of such performance deficiency; and

(2) Be obligated to pay the Government an amount (computed by the Contracting Officer in the manner provided in paragraph (j) of this clause) equal to interest on the unearned amount from the 8th day after the date of receipt of the unearned amount until--

(i) The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

(ii) The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

(e) Retainage. If the Contracting Officer finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contracting Officer shall authorize payment to be made in full. However, if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved. When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers

adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds. Also, on completion and acceptance of each separate building, public work, or other division of the contract, for which the price is stated separately in the contract, payment shall be made for the completed work without retention of a percentage.

(f) Title, liability, and reservation of rights. All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as--

(1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or

(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

(g) Reimbursement for bond premiums. In making these progress payments, the Government shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance and reinsurance agreements, when applicable) after the Contractor has furnished evidence of full payment to the surety. The retainage provisions in paragraph (e) of this clause shall not apply to that portion of progress payments attributable to bond premiums.

(h) Final payment. The Government shall pay the amount due the Contractor under this contract after--

(1) Completion and acceptance of all work;

(2) Presentation of a properly executed voucher; and

(3) Presentation of release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release. A release may also be required of the assignee if the Contractor's claim to amounts payable under this contract has been assigned under the Assignment of Claims Act of 1940 (31 U.S.C. 3727 and 41 U.S.C. 15).

(i) Limitation because of undefinitized work. Notwithstanding any provision of this contract, progress payments shall not exceed 80 percent on work accomplished on undefinitized contract actions. A "contract action" is any action resulting in a contract, as defined in FAR Subpart 2.1, including contract modifications for additional supplies or services, but not including contract modifications that are within the scope and under the terms of the contract, such as contract modifications issued pursuant to the Changes clause, or funding and other administrative changes.

(j) Interest computation on unearned amounts. In accordance with 31 U.S.C. 3903(c)(1), the amount payable under subparagraph (d)(2) of this clause shall be--

(1) Computed at the rate of average bond equivalent rates of 91-day Treasury bills auctioned at the most recent auction of such bills prior to the date the Contractor receives the unearned amount; and

(2) Deducted from the next available payment to the Contractor.

(End of clause)

80 52.232-17 INTEREST (JUN 1996)

(a) Except as otherwise provided in this contract under a Price Reduction for Defective Cost or Pricing Data clause or a Cost Accounting Standards clause, all amounts that become payable by the Contractor to the Government under this contract (net of any applicable tax credit under the Internal Revenue Code (26 U.S.C. 1481)) shall bear simple interest from the date due until paid unless paid within 30 days of becoming due. The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraph (b) of this clause, and then at the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

(b) Amounts shall be due at the earliest of the following dates:

(1) The date fixed under this contract.

(2) The date of the first written demand for payment consistent with this contract, including any demand resulting from a default termination.

(3) The date the Government transmits to the Contractor a proposed supplemental agreement to confirm completed negotiations establishing the amount of debt.

(4) If this contract provides for revision of prices, the date of written notice to the Contractor stating the amount of refund payable in connection with a pricing proposal or a negotiated pricing agreement not confirmed by contract modification.

(c) The interest charge made under this clause may be reduced under the procedures prescribed in 32.614-2 of the Federal Acquisition Regulation in effect on the date of this contract.

(End of clause)

81 52.232-23 ASSIGNMENT OF CLAIMS (JAN 1986)

(a) The Contractor, under the Assignment of Claims Act, as amended, 31 U.S.C. 3727, 41 U.S.C. 15 (hereafter referred to as "the Act"), may assign its rights to be paid amounts due or to become due as a result of the performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency. The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence.

(b) Any assignment or reassignment authorized under the Act and this clause shall cover all unpaid amounts payable under this contract, and shall not be made to more than one party, except that an assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract.

(c) The Contractor shall not furnish or disclose to any assignee under this contract any classified document (including this contract) or information related to work under this contract until the Contracting Officer authorizes such action in writing.

(End of clause)

82 52.232-27 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (JUN 1997)

Notwithstanding any other payment terms in this contract, the Government will make invoice payments and contract financing payments under the terms and conditions specified in this clause. Payment shall be considered as being made on the day a check is dated or the date of an electronic funds transfer. Definitions of pertinent terms are set forth in section 32.902 of the Federal Acquisition Regulation. All days referred to in this clause are calendar days, unless otherwise specified. (However, see subparagraph (a)(3) concerning payments due on Saturdays, Sundays, and legal holidays.)

(a) Invoice payments--

(1) Types of invoice payments. For purposes of this clause, there are several types of invoice payments that may occur under this contract, as follows:

(i) Progress payments, if provided for elsewhere in this contract, based on Contracting Officer approval of the estimated amount and value of work or services performed, including payments for reaching milestones in any project:

(A) The due date for making such payments shall be 14 days after receipt of the payment request by the designated billing office. If the designated billing office fails to annotate the payment request with the actual date of receipt at the time of receipt, the payment due date shall be the 14th day after the date of the Contractor's payment request, provided a proper payment request is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(B) The due date for payment of any amounts retained by the Contracting Officer in accordance with the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts, shall be as specified in the contract or, if not specified, 30 days after approval for release to the Contractor by the Contracting Officer.

(ii) Final payments based on completion and acceptance of all work and presentation of release of all claims against the Government arising by virtue of the contract, and payments for partial deliveries that have been accepted by the Government (e.g., each separate building, public work, or other division of the contract for which the price is stated separately in the contract):

(A) The due date for making such payments shall be either the 30th day after receipt by the designated billing office of a proper

invoice from the Contractor, or the 30th day after Government acceptance of the work or services completed by the Contractor, whichever is later. If the designated billing office fails to annotate the invoice with the date of actual receipt at the time of receipt, the invoice payment due date shall be the 30th day after the date of the Contractor's invoice, provided a proper invoice is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(B) On a final invoice where the payment amount is subject to contract settlement actions (e.g., release of claims), acceptance shall be deemed to have occurred on the effective date of the contract settlement.

(2) Contractor's invoice. The Contractor shall prepare and submit invoices to the designated billing office specified in the contract. A proper invoice must include the items listed in paragraphs (a)(2)(i) through (a)(2)(ix) of this clause. If the invoice does not comply with these requirements, it shall be returned within 7 days after the date the designated billing office received the invoice, with a statement of the reasons why it is not a proper invoice. Untimely notification will be taken into account in computing any interest penalty owed the Contractor in the manner described in subparagraph (a)(4) of this clause.

(i) Name and address of the Contractor.

(ii) Invoice date. (The Contractor is encouraged to date invoices as close as possible to the date of mailing or transmission.)

(iii) Contract number or other authorization for work or services performed (including order number and contract line item number).

(iv) Description of work or services performed.

(v) Delivery and payment terms (e.g., prompt payment discount terms).

(vi) Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).

(vii) Name (where practicable), title, phone number, and mailing address of person to be notified in the event of a defective invoice.

(viii) For payments described in paragraph (a)(1)(i) of this clause, substantiation of the amounts requested and certification in accordance with the requirements of the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts.

(ix) Any other information or documentation required by the contract.

(x) While not required, the Contractor is strongly encouraged to assign an identification number to each invoice.

(3) Interest penalty. An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the conditions listed in paragraphs (a)(3)(i) through (a)(3)(iii) of this clause are met, if applicable. However, when the due date falls on a Saturday, Sunday, or legal holiday when Federal Government offices are closed and Government business is not expected to be conducted, payment may be made on the following business day without incurring a late payment interest penalty.

(i) A proper invoice was received by the designated billing office.

(ii) A receiving report or other Government documentation authorizing payment was processed and there was no disagreement over quantity, quality, Contractor compliance with any contract term or condition, or requested progress payment amount.

(iii) In the case of a final invoice for any balance of funds due the Contractor for work or services performed, the amount was not subject to further contract settlement actions between the Government and the Contractor.

(4) Computing penalty amount. The interest penalty shall be at the rate established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority (e.g., tariffs). This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1 and July 1. The interest penalty shall accrue daily on the invoice principal payment amount approved by the Government until the payment date of such approved principal amount; and will be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice principal payment amount and will be subject to interest penalties if not paid in the succeeding 30-day period. If the designated

billing office failed to notify the Contractor of a defective invoice within the periods prescribed in subparagraph (a)(2) of this clause, the due date on the corrected invoice will be adjusted by subtracting from such date the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating interest penalties.

(i) For the sole purpose of computing an interest penalty that might be due the Contractor for payments described in paragraph (a)(1)(ii) of this clause, Government acceptance or approval shall be deemed to have occurred constructively on the 7th day after the Contractor has completed the work or services in accordance with the terms and conditions of the contract. In the event that actual acceptance or approval occurs within the constructive acceptance or approval period, the determination of an interest penalty shall be based on the actual date of acceptance or approval. Constructive acceptance or constructive approval requirements do not apply if there is a disagreement over quantity, quality, or Contractor compliance with a contract provision. These requirements also do not compel Government officials to accept work or services, approve Contractor estimates, perform contract administration functions, or make payment prior to fulfilling their responsibilities.

(ii) The following periods of time will not be included in the determination of an interest penalty:

(A) The period taken to notify the Contractor of defects in invoices submitted to the Government, but this may not exceed 7 days.

(B) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(C) For incorrect electronic funds transfer (EFT) information, in accordance with the EFT clause of this contract.

(iii) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the clause at 52.233-1, Disputes, or for more than 1 year. Interest penalties of less than $1 need not be paid.

(iv) Interest penalties are not required on payment delays due to disagreement between the Government and the Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the clause at 52.233-1, Disputes.

(5) Prompt payment discounts. An interest penalty also shall be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

(6) Additional interest penalty.

(i) A penalty amount, calculated in accordance with subdivision (a)(6)(iii) of this clause, shall be paid in addition to the interest penalty amount if the Contractor--

(A) Is owed an interest penalty of $1 or more;

(B) Is not paid the interest penalty within 10 days after the date the invoice amount is paid; and

(C) Makes a written demand to the designated payment office for additional penalty payment, in accordance with subdivision (a)(6)(ii) of this clause, postmarked not later than 40 days after the date the invoice amount is paid.

(ii)(A) Contractors shall support written demands for additional penalty payments with the following data. No additional data shall be required. Contractors shall--

(1) Specifically assert that late payment interest is due under a specific invoice, and request payment of all overdue late payment interest penalty and such additional penalty as may be required;

(2) Attach a copy of the invoice on which the unpaid late payment interest was due; and

(3) State that payment of the principal has been received, including the date of receipt.

(B) Demands must be postmarked on or before the 40th day after payment was made, except that--

(1) If the postmark is illegible or nonexistent, the demand must

have been received and annotated with the date of receipt by the designated payment office on or before the 40th day after payment was made; or

(2) If the postmark is illegible or nonexistent and the designated payment office fails to make the required annotation, the demand's validity will be determined by the date the Contractor has placed on the demand; provided such date is no later than the 40th day after payment was made.

(iii)(A) The additional penalty shall be equal to 100 percent of any original late payment interest penalty, except--

(1) The additional penalty shall not exceed $5,000;

(2) The additional penalty shall never be less than $25; and

(3) No additional penalty is owed if the amount of the underlying interest penalty is less than $1.

(B) If the interest penalty ceases to accrue in accordance with the limits stated in subdivision (a)(4)(iii) of this clause, the amount of the additional penalty shall be calculated on the amount of interest penalty that would have accrued in the absence of these limits, subject to the overall limits on the additional penalty specified in subdivision (a)(6)(iii)(A) of this clause.

(C) For determining the maximum and minimum additional penalties, the test shall be the interest penalty due on each separate payment made for each separate contract. The maximum and minimum additional penalty shall not be based upon individual invoices unless the invoices are paid separately. Where payments are consolidated for disbursing purposes, the maximum and minimum additional penalty determination shall be made separately for each contract therein.

(D) The additional penalty does not apply to payments regulated by other Government regulations (e.g., payments under utility contracts subject to tariffs and regulation).

(b) Contract financing payments--

(1) Due dates for recurring financing payments. If this contract provides for contract financing, requests for payment shall be submitted to the designated billing office as specified in this contract or as directed by the Contracting Officer. Contract financing payments shall be made on the 14th day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the due date specified.

(2) Due dates for other contract financing. For advance payments, loans, or other arrangements that do not involve recurring submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer.

(3) Interest penalty not applicable. Contract financing payments shall not be assessed an interest penalty for payment delays.

(c) Subcontract clause requirements. The Contractor shall include in each subcontract for property or services (including a material supplier) for the purpose of performing this contract the following:

(1) Prompt payment for subcontractors. A payment clause that obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract.

(2) Interest for subcontractors. An interest penalty clause that obligates the Contractor to pay to the subcontractor an interest penalty for each payment not made in accordance with the payment clause--

(i) For the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and

(ii) Computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(3) Subcontractor clause flowdown. A clause requiring each subcontractor to include a payment clause and an interest penalty clause conforming to the standards set forth in subparagraphs (c)(1) and (c)(2) of this clause in each of its subcontracts, and to require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

(d) Subcontract clause interpretation. The clauses required by paragraph (c) of this clause shall not be construed to impair the right of the Contractor or a subcontractor at any tier to negotiate, and to include in their subcontract, provisions that--

(1) Retainage permitted. Permit the Contractor or a subcontractor to retain (without cause) a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract without incurring any obligation to pay a late payment interest penalty, in accordance with terms and conditions agreed to by the parties to the subcontract, giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

(2) Withholding permitted. Permit the Contractor or subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

(3) Withholding requirements. Permit such withholding without incurring any obligation to pay a late payment penalty if--

(i) A notice conforming to the standards of paragraph (g) of this clause previously has been furnished to the subcontractor; and

(ii) A copy of any notice issued by a Contractor pursuant to subdivision (d)(3)(i) of this clause has been furnished to the Contracting Officer.

(e) Subcontractor withholding procedures. If a Contractor, after making a request for payment to the Government but before making a payment to a subcontractor for the subcontractor's performance covered by the payment request, discovers that all or a portion of the payment otherwise due such subcontractor is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the Contractor shall--

(1) Subcontractor notice. Furnish to the subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon ascertaining the cause giving rise to a withholding, but prior to the due date for subcontractor payment;

(2) Contracting Officer notice. Furnish to the Contracting Officer, as soon as practicable, a copy of the notice furnished to the subcontractor pursuant to subparagraph (e)(1) of this clause;

(3) Subcontractor progress payment reduction. Reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph (e)(1) of this clause;

(4) Subsequent subcontractor payment. Pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and--

(i) Make such payment within--

(A) Seven days after correction of the identified subcontract performance deficiency (unless the funds therefor must be recovered from the Government because of a reduction under paragraph (e)(5)(i)) of this clause; or

(B) Seven days after the Contractor recovers such funds from the Government; or

(ii) Incur an obligation to pay a late payment interest penalty computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty;

(5) Notice to Contracting Officer. Notify the Contracting Officer upon--

(i) Reduction of the amount of any subsequent certified application for payment; or

(ii) Payment to the subcontractor of any withheld amounts of a progress payment, specifying--

(A) The amounts withheld under subparagraph (e)(1) of this clause; and

(B) The dates that such withholding began and ended; and

(6) Interest to Government. Be obligated to pay to the Government an amount equal to interest on the withheld payments (computed in the manner provided in 31 U.S.C. 3903(c)(1)), from the 8th day after receipt of the withheld amounts from the Government until--

(i) The day the identified subcontractor performance deficiency is corrected; or

(ii) The date that any subsequent payment is reduced under

subdivision (e)(5)(i) of this clause.

(f) Third-party deficiency reports--

(1) Withholding from subcontractor. If a Contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with section 2 of the Act of August 24, 1935 (40 U.S.C. 270b, Miller Act), asserting a deficiency in such first-tier subcontractor's performance under the contract for which the Contractor may be ultimately liable, and the Contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, the Contractor may, without incurring an obligation to pay an interest penalty under subparagraph (e)(6) of this clause--

(i) Furnish to the first-tier subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon making such determination; and

(ii) Withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under paragraph (f)(1)(i) of this clause.

(2) Subsequent payment or interest charge. As soon as practicable, but not later than 7 days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected, the Contractor shall--

(i) Pay the amount withheld under paragraph (f)(1)(ii) of this clause to such first-tier subcontractor; or

(ii) Incur an obligation to pay a late payment interest penalty to such first-tier subcontractor computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(g) Written notice of subcontractor withholding. A written notice of any withholding shall be issued to a subcontractor (with a copy to the Contracting Officer of any such notice issued by the Contractor), specifying--

(1) The amount to be withheld;

(2) The specific causes for the withholding under the terms of the subcontract; and

(3) The remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

(h) Subcontractor payment entitlement. The Contractor may not request payment from the Government of any amount withheld or retained in accordance with paragraph (d) of this clause until such time as the Contractor has determined and certified to the Contracting Officer that the subcontractor is entitled to the payment of such amount.

(i) Prime-subcontractor disputes. A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph (c) of this clause does not constitute a dispute to which the United States is a party. The United States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

(j) Preservation of prime-subcontractor rights. Except as provided in paragraph (i) of this clause, this clause shall not limit or impair any contractual, administrative, or judicial remedies otherwise available to the Contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by the Contractor or deficient subcontract performance or nonperformance by a subcontractor.

(k) Non-recourse for prime contractor interest penalty. The Contractor's obligation to pay an interest penalty to a subcontractor pursuant to the clauses included in a subcontract under paragraph (c) of this clause shall not be construed to be an obligation of the United States for such interest penalty. A cost-reimbursement claim may not include any amount for reimbursement of such interest penalty.

(End of clause)

Trevino/rgg

January 6, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 1, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate Number 1, received on December 27, 1999, for the period November 15, 1999 through December 30, 1999 has been approved. The estimate was approved in the amount of $54,791.00 for bond reimbursement.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712 if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Enclosure

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #1 Payments under fixed-price construction contracts (APR 1989)

RECEIVED
DEC 27 1999
San Antonio Area Office

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

(3) This request for progress payments does not include any amounts which the prime ractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Hector Trinidad, President — Date: 12-22-99

Trevino/rgg

March 10, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 2,Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate Number 2, received on March 8, 2000, for the period December 31, 1999 through February 29, 1999 has been approved. The estimate was approved in the amount of $271,934.00.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Roger R. Anderson
Chief, Contract Support Branch

Enclosure

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #2 Payments under fixed-price construction contracts (APR 1989)

RECEIVED
MAR 0 8 2000
San Antonio Area Office

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

(3) This request for progress payments does not include any amounts which the prime actor intends to withhold or retain from a subcontractor or supplier in accordance with erms and conditions of the subcontract.

Hector Trinidad, President

March 1 2000
Date

SAA C File Copy

Trevino/rgg

June 2, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 3, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate Number 3, received on May 25, 2000, for the period March 1, 2000 through April 28, 2000 has been approved. The estimate was approved in the amount of $720,132.00.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Enclosure

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #3 Payments under fixed-price construction contracts (APR 1989)

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

3) This request for progress payments does not include any amounts which the prime ..ntractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

[signature]
Hector Trinidad, President

4-10-00
Date

RECEIVED

APR 1 0 2000

San Antonio ...

SAA

file COP8

Trevino/rgg

August 1, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 4,Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate Number 4, received on July 25, 2000, for the period April 29, 2000 through June 29, 2000 has been approved. The estimate was approved in the amount of $214,944.00.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Enclosure

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #4 Payments under fixed-price construction contracts (APR 1989)

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

(3) This request for progress payments does not include any amounts which the prime .actor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Hector Trinidad, President

7-24-00
Date

RECEIVE

JUL 25 2000

San Antonio Are...

SAAO

Trevino/rgg

file copy

August 21, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 5,Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate Number 5, received on August 10, 2000, for the period June 30, 2000 through July 31, 2000 has been approved. The estimate was approved in the amount of $271,642.00.

The 14-day Prompt Pay will calculate from **August 17, 2000**, the date that the required documentation (Narrative Report, Monthly Exposure Report and First Aid Case History Report) was received at the Corps of Engineers, San Antonio Area Office.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Enclosure

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #5 Payments under fixed-price construction contracts (APR 1989)

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

') This request for progress payments does not include any amounts which the prime .ractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Hector Trinidad, President

Aug. 9 2000
Date

RECEIVED
AUG 10 2000
San Antonio Area Office

SAAO pay est file
A.TREVINO/cf

September 19, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 6, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate No. 6, received on September 7, 2000, for the period August 1, 2000 through August 31, 2000 has been approved. The estimate was approved in the amount of $466,682.00.

The 14-day Prompt Pay will calculate from **September 14, 2000**. This was the date that the required documentation (Progress Narrative Report) was received, rendering your request a proper invoice.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Roger R. Anderson
Chief, Contract Support Branch

Enclosure

# PAYMENT ESTIMATE - CONTRACT PERFORMANC

For use of this form, see ER 37-2-10 and ER 37-345-10.

1. INVOICE RECEIVE DATE: 07 Sep 00

SHEET 1 of 3

2. CONTRACTOR AND ADDRESS: Sedona Contracting, Inc.
6800 Park Ten Blvd, Ste 135E, San Antonio, TX 78213

3. CONTRACT NO.: DACA63-99-C-0039

4. DISTRICT: CESWF

5. DESCRIPTION OF WORK: Vehicle Operations/Maintenance Complex

6. APPROPRIATION AND PROJECT: 0036Z3

7. REQUIRED COMPLETION DATE: 14 Sep 01

8. LOCATION: Lackland AFB

9. PERIOD COVERED BY THIS ESTIMATE: FROM 01 Aug 00 THRU 31 Aug 00

10. JOB ORDER NO.:

11. ESTIMATE NO.: 6

| ITEM NO. a | DESCRIPTION b | CONTRACT: QUANTITY AND UNIT c | CONTRACT: UNIT PRICE d | CONTRACT: AMOUNT e | TOTAL TO DATE: QUANTITY AND UNIT f | TOTAL TO DATE: AMOUNT g |
|---|---|---|---|---|---|---|
| | BASIC CONTRACT | | | 6,077,257.00 | | |
| | MODIFICATIONS Thru P00002 | | | 10,000.00 | | |
| | QUANTITY VARIATIONS | | | 0.00 | | |

ACTUAL PERCENT: 33 % LESS STORED MATERIALS: 28 % TOTAL CONTRACT → $ 6,087,257.00 TOTAL EARNINGS TO DATE → $ 2,031,291.00

REMARKS

14G. Other Deducts..$31,166.00, retainage on Concord Services.

12. PRESENTED FOR PAYMENT

PAYEE: Sedona Contracting, Inc.

PER:

DATE:

TITLE:

13. APPROVED FOR PAYMENT

I CERTIFY that I have checked the quantities covered by this bill or estimate; that the work was actually performed; that the quantities are correct and consistent with all previous computations as actually checked; that the quantities and amounts are wholly consistent with the requirements of the contract or other instrument involved.

SIGNATURE: Alma N. Trevino

TITLE: Civil Engineer Tech

DATE:

CONTRACTING OFFICER APPROVAL (Signature): Thomas L. Armstrong, Administrative Contracting Officer

DATE:

| 14. | | | |
|---|---|---|---|
| A. | PREVIOUS DEDUCTIONS OTHER THAN RETAINED PERCENTAGE | 0.00 | |
| B. | PREVIOUS RETAINED PERCENTAGE | 0.00 | |
| C. | PREVIOUS PAYMENTS | 1,533,443.00 | |
| D. | PREVIOUS EARNINGS (A+B+C) | | 1,533,443.00 |
| E. | EARNINGS THIS PERIOD (TOTAL EARNINGS TO DATE MINUS D) | | 497,848.00 |
| F. | LESS RETAINED PERCENTAGE | 0.00 | |
| G. | LESS DEDUCTION OTHER THAN RETAINED PERCENTAGE FOR | 31,166.00 | |
| H. | TOTAL DEDUCTIONS THIS PERIOD (F+G) | | 31,166.00 |
| I. | RETAINAGE REFUNDED | 0.00 | |
| J. | OTHER REFUNDS | 0.00 | |
| K. | TOTAL REFUNDS THIS PERIOD | | 0.00 |
| L. | AMOUNT DUE CONTRACTOR (E-H+K) | | 466,682.00 |

15. RECAPITULATION

TOTAL RETAINED PCTG. (B+F-I) $ 0.00 TOTAL PAID (C+L) $ 2,000,125.00

FORM 93, 1 MAR 78 — PREVIOUS EDITION OF THIS FORM IS OBSOLETE

* * (USE REVERSE SIDE FOR DETAILED EXPLANATION AND-OR REMARKS)



00228

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #6 Payments under fixed-price construction contracts (APR 1989)

RECEIVED
SEP 0 7 2000
San Antonio Area Office

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

3) This request for progress payments does not include any amounts which the prime .tractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Hector Trinidad, President

9-6-00
Date

SAAO pay est
A.TREVINO/cf

October 20, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 7, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate No. 7, received on October 10, 2000, for the period September 1, 2000 through September 30, 2000 has been approved. The estimate was approved in the amount of $361,516.00.

Please call Mr. George Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Enclosure

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

Contract number DACA63-99-C0039 Invoice #/Payment Request #7 Payments under fixed-price construction contracts (APR 1989)

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

) This request for progress payments does not include any amounts which the prime .tractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Hector Trinidad, President

10-10-00
Date

RECE
OCT 1 0 2000
San Anto

Trevino/rgg

December 19, 2000

San Antonio Area Office

SUBJECT: Pay Estimate No. 8, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Your Payment Estimate No. 8, received on December 6, 2000, for the period October 1, 2000 through October 31, 2000 has been approved. The estimate was approved in the amount of $45,851.00. The approved amount includes a deduction of $238,307.00 for non-payment of sub-contractors. A breakdown of the deduction is: for H&M Steel, $233,200.00, for Concord Services $3,834.00 this period (added to the $31,166.00 previously withheld totals $35,000.00), and for Hughes Supply, $1,273.00.

Please call Mr. John Curtis at the San Antonio Area Office, (210) 731-3460, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Enclosure

# PAYMENT ESTIMATE - CONTRACT PERFORMANCE

For use of this form, see ER 37-2-10 and ER 37-345-10

1. INVOICE RECEIVED DATE 06 Dec 2000
PAYMENT DUE DATE 20 Dec 2000

Sheet 1 of 2

| | | |
|---|---|---|
| 2. CONTRACTOR AND ADDRESS Sedona Contracting, Inc. 6800 Park Ten Blvd, Ste 135E, San Antonio, TX 78213 | 3. CONTRACT NO. DACA63-99-C-0039 NA | 4. DISTRICT Fort Worth District |
| 5. DESCRIPTION OF WORK Vehicle Operations/Maintenance Complex | 6. APPROPRIATION AND PROJECT 97-NA-X-0510-40E2 | 7. REQUIRED COMPLETION DATE 14 Sep 2001 |

| 8. LOCATION | 9. PERIOD COVERED BY THIS ESTIMATE | 10. JOB ORDER NO. | 11. ESTIMATE NO. |
|---|---|---|---|
| Lackland AFB | FROM 01 Oct 2000 THRU 31 Oct 2000 | | 0008 |

| ITEM NO. a | DESCRIPTION a | CONTRACT QUANTITY AND UNIT c | CONTRACT UNIT PRICE d | CONTRACT AMOUNT e | TOTAL TO DATE QUANTITY AND UNIT f | TOTAL TO DATE AMOUNT g |
|---|---|---|---|---|---|---|
| | CONTRACT AMOUNT (contract line items - see attached sheets) | | | $6,131,946.51 | 39% | $2,366,940.00 |
| | ADDITIONAL EARNINGS (not included in contract line items) - STORED MATERIALS | | | | | 310,025.00 |
| INCLUDES MODIFICATIONS THRU | 44 % EARNINGS TO DATE<br>39 % LESS STORED MATERIAL | TOTAL CONTRACT → | | $6,131,946.51 | TOTAL EARNINGS TO DATE → | $2,676,965.00 |

REMARKS

14B. Previous Other Deductions, $31,166.00 subcontractor retainage, Concord Services.
14H. Other Deductions, $238,307.00 for non-payment of subcontractors: $3,834.00 for Concord Services (which totals $35,000.00 withheld); $233,200.00 for H&M Steel; and $1,273.00 for Hughes Supply.

12. PRESENTED FOR PAYMENT

| PAYEE | PER |
|---|---|
| DATE | TITLE |

13. APPROVED AMOUNT

I certify that I have checked the quantities covered by this bill or estimate; that the work was actually performed; that the quantities are correct and consistent with all previous computations as actually checked; that the quantities and amounts are wholly consistent with the requirements of the contract or other instrument involved.

| SIGNATURE | TITLE | DATE |
|---|---|---|
| Trevino, Alma N. | Civil Engineer Tech | |

| CONTRACTING OFFICER APPROVAL (Signature) | DATE |
|---|---|
| Thomas L. Armstrong<br>Administrative Contracting Officer | |

| 14. | | |
|---|---|---|
| A. PREVIOUS RETAINED PERCENTAGE | $0.00 | |
| B. PREVIOUS OTHER DEDUCTIONS | $31,166.00 | |
| C. PREVIOUS LIQUIDATED DAMAGES | $0.00 | |
| D. PREVIOUS PAYMENTS | $2,361,641.00 | |
| E. PREVIOUS EARNINGS (A + B + C + D) | | $2,392,807.00 |
| F. EARNINGS THIS PERIOD (TOTAL EARNINGS TO DATE MINUS E) | | $284,158.00 |
| G. LESS RETAINED PERCENTAGE | $0.00 | |
| H. LESS OTHER DEDUCTIONS | $238,307.00 | |
| I. TOTAL DEDUCTIONS THIS PERIOD (G + H) | | $238,307.00 |
| J. RETAINAGE REFUND | $0.00 | |
| K. OTHER REFUNDS | $0.00 | |
| L. TOTAL REFUNDS THIS PERIOD (J + K) | | $0.00 |
| M. LIQUIDATED DAMAGES THIS PERIOD | | $0.00 |
| N. AMOUNT DUE CONTRACTOR (F - I + L - M) | | $45,851.00 |

15. TOTALS TO DATE - ALL INVOICES

| | | | |
|---|---|---|---|
| RETAINED PERCENTAGE (A + G - J) | $0.00 | LIQ. DAMAGES (C + M) | $0.00 |
| OTHER DEDUCTIONS (B + H - K) | $269,473.00 | PAID TO DATE (D + N) | $[illegible]07,492.00 |

ENG FORM 1 MAR 78 PREVIOUS EDITION OF THIS FORM IS OBSOLETE **(USE REVERSE SIDE FOR DETAILED EXLANATION AND -OR REMARKS)

00292

Cefms 12-19-00 G: LRO 11-22-00

RECEIVED

DEC 0 5 2000

San Antonio Area Office

**SEDONA CONTRACTING, INC.**
6800 PARK TEN BLVD.
SUITE 135E
SAN ANTONIO, TEXAS 78213

P

Contract number DACA63-99-C0039 Invoice #/Payment Request #8 Payments under fixed-price construction contracts (APR 1989)

## CERTIFICATION

I hereby certify, to the best of my knowledge and belief, that --

(1) The amount requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and that the requirements of Chapter 39 of Title 31, United States code; and

3) This request for progress payments does not include any amounts which the prime ntractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Hector Trinidad, President

20 Nov. 2000
Date

RECEIVED

NOV 2 1 2000

San Antonio Area Office

SAAO pay est file
A.TREVINO/ef

December 22, 2000

San Antonio Area Office

SUBJECT: Pay Request No. 9, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Reference your Pay Request No. 9 for the period November 2000. Although we agree with the field percentages, Pay Request No. 9 cannot be processed because you did not supply, with the pay request, the following items. These items are located in Specification 00700, Contract Clause 532.232-5.

a. A listing of the amounts included for the work performed by each subcontractor under the contract.

b. A listing of the total amount of each subcontractor under the contract.

c. A listing of the amounts previously paid to each subcontractor under the contract.

Also, Item #8, Paragraph b in the Narrative states that the site contractor again is at a complete standstill. This statement is not correct. We have issued a notice of non-compliance for the cathodic protection on the water lines. This work could have been ongoing and should have been completed before pulling off the site. Remobilization cost will not be paid for again! Also, the storm sewer lines need to be cleaned out before any further payment is made to the site contractor.

Please call Mr. George A. Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

Alma

Please send back, the contractor need to furnish the following:

1. A listing of the amount included for work preformed by each subcontractor under the contract.

2. A listing of the total amount of each subcontractor under the contract.

3. A listing of the amounts previously paid to each subcontractor under the contract.

4. Item #8, para b in the Narrative states . The site contractor again is at a complete standstill. This statement is not correct. COE has issued a notice of none compliance for the cathodic protection on the water lines. This work could have been ongoing and should have been completed before pulling off the site. Remobilization cost will not be paid for again! Also the storm sewer lines need to be cleaned out before any further payments are made to the site contractor.

Thanks Bill Reese

# MENT ESTIMATE - CONTRACT PERFORMANCE

For use of this form, see ER 37 -2 -10 and ER 37 -345 -10

| | |
|---|---|
| 1. INVOICE RECEIVED DATE | 15 Mar 2001 |
| PAYMENT DUE DATE | 29 Mar 2001 |
| Sheet | of 2 |

| | |
|---|---|
| 2. CONTRACTOR AND ADDRESS | Sedona Contracting, Inc. 6800 Park Ten Blvd, Ste 135E, San Antonio, TX 78213 |
| 3. CONTRACT NO. | DACA63-99-C-0039 NA |
| 4. DISTRICT | Fort Worth District |
| 5. DESCRIPTION OF WORK | Vehicle Operations/Maintenance Complex |
| 6. APPROPRIATION AND PROJECT | 97-NA-X-0510-40E2 |
| 7. REQUIRED COMPLETION DATE | 22 Sep 2001 |
| 8. LOCATION | Lackland Air Force Base, TX 78236-5000 |
| 9. PERIOD COVERED BY THIS ESTIMATE | FROM 01 Nov 2000 THRU 28 Feb 2001 |
| 10. JOB ORDER NO. | |
| 11. ESTIMATE NO. | 0009 |

| ITEM NO. a | DESCRIPTION a | CONTRACT: QUANTITY AND UNIT c | CONTRACT: UNIT PRICE d | CONTRACT: AMOUNT e | TOTAL TO DATE: QUANTITY AND UNIT f | TOTAL TO DATE: AMOUNT g |
|---|---|---|---|---|---|---|
| | CONTRACT AMOUNT (contract line items - see attached sheets) | | | $6,154,106.51 | 64% | $3,928,476.00 |
| | ADDITIONAL EARNINGS (not included in contract line items) - STORED MATERIALS | | | | | 170,006.07 |
| NCLUDES MODIFICATIONS THRU | 67 % EARNINGS TO DATE 64 % LESS STORED MATERIAL | TOTAL CONTRACT → | | $6,154,106.51 | TOTAL EARNINGS TO DATE → | $4,098,482.07 |

REMARKS

14.B Precious Other Deductions = $269,473 (Sub Retainage Concord = $35,000; Non-Pay H&M Steel = $233,200; Non-Pay Hughes = $1,273)
14.G Retained Percentage - behind schedule = $141,151.71
14.H Other Deductions - Non-conforming concrete = $203,000 (See Letter 99-0039-0056)
Stored Material - Corrugated Erectors = $170,006.07

158

12. PRESENTED FOR PAYMENT

| | |
|---|---|
| PAYEE | PER |
| DATE | TITLE |

13. APPROVED AMOUNT

certify that I have checked the quantities covered by this bill or estimate; that rk was actually performed; that the quantities are correct and consistent l previous computations as actually checked; that the quantities and its are wholly consistent with the requirements of the contract or other nent involved.

| SIGNATURE | TITLE | DATE |
|---|---|---|
| rino, Alma N. | Civil Engineer Tech | |

| CONTRACTING OFFICER APPROVAL (Signature) | DATE |
|---|---|
| nas L. Armstrong, inistrative Contracting Officer | |

| 14. | | |
|---|---|---|
| A. PREVIOUS RETAINED PERCENTAGE | $0.00 | |
| B. PREVIOUS OTHER DEDUCTIONS | $269,473.00 | |
| C. PREVIOUS LIQUIDATED DAMAGES | $0.00 | |
| D. PREVIOUS PAYMENTS | $2,407,492.00 | |
| E. PREVIOUS EARNINGS (A + B + C + D) | | $2,676,965.00 |
| F. EARNINGS THIS PERIOD (TOTAL EARNINGS TO DATE MINUS E) | | $1,421,517.07 |
| G. LESS RETAINED PERCENTAGE | $142,151.71 | |
| H. LESS OTHER DEDUCTIONS | $203,000.00 | |
| I. TOTAL DEDUCTIONS THIS PERIOD (G + H) | | $345,151.71 |
| J. RETAINAGE REFUND | $0.00 | |
| K. OTHER REFUNDS | $0.00 | |
| L. TOTAL REFUNDS THIS PERIOD (J + K) | | $0.00 |
| M. LIQUIDATED DAMAGES THIS PERIOD | | $0.00 |
| N. AMOUNT DUE CONTRACTOR (F - I + L - M) | | $1,076,365.36 |

15. TOTALS TO DATE - ALL INVOICES

| | | | |
|---|---|---|---|
| RETAINED PERCENTAGE (A + G - J) | $142,151.71 | LIQ. DAMAGES (C + M) | $0.00 |
| OTHER DEDUCTIONS (B + H - K) | $472,473.00 | PAID TO DATE (D + N) | $3,483,857.36 |

G FORM 93
1 MAR 78

PREVIOUS EDITION OF THIS FORM IS OBSOLETE

**(USE REVERSE SIDE FOR DETAILED EXLANATION AND -OR REMARKS)

'ENT ESTIMATE - CONTRACT PERFORMANCE (Continua
PAYMENT ESTIMATE CLIN DETAILS

2. CONTRACT NO. DACA63-99-C-0039 NA

Sheet : 2

3. CONTRACTOR AND ADDRESS Sedona Contracting, Inc.
6800 Park Ten Blvd, Ste 135E, San Antonio, TX 78213

4. PERIOD COVERED BY THIS ESTIMATE
FROM 01 Nov 2000 THRU 28 Feb 2001

| ITEM NO. a | MOD. NO. b | DESCRIPTION CONTRACT LINE ITEMS c | CONTRACT QUANTITY AND UNIT d | CONTRACT UNIT PRICE e | CONTRACT AMOUNT f | TOTAL TO DATE QUANTITY AND UNIT g | TOTAL TO DATE AMOUNT h |
|---|---|---|---|---|---|---|---|
| 0001 | | Vehicle Operations Building | 1.00 LS | $458,086.00 | | | |
| | P00003 | Lump Sum Unit Price Increase | 1.00 LS | $25,000.00 | | | |
| | P00012 | Lump Sum Unit Price Increase | 1.00 LS | $10,296.00 | | | |
| | | Revised Amount CLIN 0001 | 1.00 LS | $493,382.00 | $493,382.00 | 57% | $285,592.00 |
| 0002 | | Site Work & Util. for Veh Ops Bldg | 1.00 LS | $150,000.00 | | | |
| | P00002 | Lump Sum Unit Price Increase | 1.00 LS | $10,000.00 | | | |
| | P00004 | Lump Sum Unit Price Increase | 1.00 LS | $1,077.00 | | | |
| | P00005 | Lump Sum Unit Price Decrease | 1.00 LS | -$500.00 | | | |
| | P00006 | Lump Sum Unit Price Increase | 1.00 LS | $15,000.00 | | | |
| | P00007 | Lump Sum Unit Price Decrease | 1.00 LS | -$193.00 | | | |
| | P00009 | Lump Sum Unit Price Increase | 1.00 LS | $3,500.00 | | | |
| | P00010 | Lump Sum Unit Price Decrease | 1.00 LS | -$7,580.49 | | | |
| | P00012 | Lump Sum Unit Price Increase | 1.00 LS | $6,864.00 | | | |
| | P00013 | Lump Sum Unit Price Increase | 1.00 LS | $5,000.00 | | | |
| | | Revised Amount CLIN 0002 | 1.00 LS | $183,167.51 | $183,167.51 | 54% | $100,103.00 |
| 0003 | | 457mm Diameter Piers | 63.00 LM | $125.00 | $7,875.00 | 0.00 LM | $0.00 |
| 0004 | | 610mm Diameter Piers | 12.00 LM | $300.00 | $3,600.00 | 0.00 LM | $0.00 |
| 0005 | | Vehicle Maintenance Bldg | 1.00 LS | $4,122,771.00 | $4,122,771.00 | 59% | $2,434,681.00 |
| 0006 | | Site Work & Util. Veh Maintenace Bldg | 1.00 LS | $1,050,000.00 | | | |
| | P00004 | Lump Sum Unit Price Increase | 1.00 LS | $2,240.00 | | | |
| | P00008 | Lump Sum Unit Price Increase | 1.00 LS | $980.00 | | | |
| | P00011 | Lump Sum Unit Price Increase | 1.00 LS | $4,175.00 | | | |
| | | Revised Amount CLIN 0006 | 1.00 LS | $1,057,395.00 | $1,057,395.00 | 86% | $918,750.00 |
| 0007 | | 457mm Diameter Piers | 81.00 LM | $125.00 | $10,125.00 | 81.00 LM | $10,125.00 |
| 0008 | | 610mm Diameter Piers | 126.00 LM | $300.00 | $37,800.00 | 126.00 LM | $37,800.00 |
| 0009 | | Paint Spray Booth | 1.00 LS | $20,000.00 | $20,000.00 | 0% | $0.00 |
| 0010 | | Opt 1, Site Preparation for CNG Station | 1.00 LS | $93,000.00 | | | |
| | P00004 | Lump Sum Unit Price Increase | 1.00 LS | $991.00 | | | |
| | | Revised Amount CLIN 0010 | 1.00 LS | $93,991.00 | $93,991.00 | 35% | $33,700.00 |
| 0011 | | Opt 2, Expansion of Existing POV Lot | 1.00 LS | $77,000.00 | $77,000.00 | 99% | $76,500.00 |
| 0012 | | Opt 3, Construct Storage Building | 1.00 LS | $47,000.00 | $47,000.00 | 66% | $31,225.00 |
| | | TOTALS THIS PAGE | | | 6,154,106.51 | | 3,928,476.00 |

ORM 93
IAR 78

PREVIOUS EDITION OF THIS FORM IS OBSOLETE

**(USE REVERSE SIDE FOR DETAILED EXLANATION AND -OR REMARKS)

159

## ıENT ESTIMATE - CONTRACT PERFORMANCE (Continua
OBLIGATION ACCOUNT SUMMARY

2. CONTRACT NO. DACA63-99-C-0039 NA

Sheet f 1

3. CONTRACTOR AND ADDRESS Sedona Contracting, Inc.
6800 Park Ten Blvd, Ste 135E, San Antonio, TX 78213

4. PERIOD COVERED BY THIS ESTIMATE
FROM 01 Nov 2000 THRU 28 Feb 2001

| LINE ITEM a | DESCRIPTION OBLIGATION LINE ITEMS b | DELIVERY c | CONTRACT AMOUNT d | PREVIOUS EARNINGS e | EARNINGS TO DATE f | EARNINGS THIS PERIOD g | PERCENT COMPLETE h |
|---|---|---|---|---|---|---|---|
| 0001 | BC - VEHICLE OPERATIONS/MAINTENANCE COMPLEX, | L | $6,154,106.51 | $2,676,965.00 | $4,098,482.07 | $1,421,517.07 | 67% |
| | TOTALS THIS PAGE | | 6,154,106.51 | 2,676,965.00 | 4,098,482.07 | 1,421,517.07 | 67% |

IG FORM 93
1 MAR 78

PREVIOUS EDITION OF THIS FORM IS OBSOLETE

**(USE REVERSE SIDE FOR DETAILED EXLANATION AND -OR REMARKS)