WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW
7929 Westpark Drive, Suite 400
McLean, Virginia 22102-4224

Telephone: 703-749-1000
Facsimile: 703-893-8029
www.wthf.com

Writer's Direct Dial
No. 703/749-1022

John B. Tieder, Jr.
Robert G. Watt
Julian F. Hoffar
Robert M. Fitzgerald
Robert K. Cox
Lewis J. Baker
Benjamin T. Riddles, II
Wayne G. Tatusko
Richard G. Mann, Jr.
Henry D. Danforth
Carter B. Reid
Mark A. Sgarlata
Michael G. Long*
Thomas J. Powell
Edward J. Parrott
Steven J. Weber
Paul A. Varela
Vivian Katsant
Kathleen O. Barnes
Shelly L. Ewald
Christopher J. Brasco
John G. Lavoie
Robert C. Niesley*
Colin J. Smith
Jean V. Miller
Gregory J. Dukellis*
Fred A. Mendicino
William J. Burch*
Michael D. Germain*
Robert G. Barbour
Keith C. Phillips
Marybeth Z. Gaul
Timothy E. Heffernan*
W. Drew Mallender
James M. Donahue
Bennett J. Lee*
Todd R. Metz*
Michael R. Gandee*
Michael P. Hutchins*
Joseph S. Guarino
Lewis I. Askew, Jr.
Erica S. Beardsley
Erica B. Robinett*
David F. McPherson*
Harish Mirchandani*
William H. Kennedy, Jr.
Michael J. Kirwin
David R. Johnson*
Scott W. Kowalski
C. Kelly Skrabak
J. Brian Cashmere
Joseph C. McGowan*
Daniel J. Alexander*
Geoffrey A. Graves*
John R. Marking*
Nicholas M. Sarris
S. Jerome Rosenbaum
Sherri D. Martinelli*
Gwynne W. Guzzeau
Christopher M. Anzidei
Michelle G. Hicks
Laura A. Shelkey
Akin Alcitepe
Jason D. Blatt
Michelle R. Depuy
Alexander N. Lamme
Timothy E. Elliott*
James M. Phelps
Eric Yeo
Justin S. Hawkins
*Not Admitted in Virginia

December 12, 2000

**Via Facsimile and U.S. Mail**

DEC 1 3 2000
CESWF-OC

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Fort Worth District Corps of Engineers
P.O. Box 17300
Fort Worth, TX 76102-0300

| | | |
|---|---|---|
| Re: | Principal: | Sedona Contracting, Inc. |
| | Surety: | Fidelity and Deposit Company of Maryland |
| | Bond No.: | PRF08131152 |
| | Obligee: | United States of America, Department of Army, Fort Worth District Corps of Engineers |
| | Project: | Contract No. DACW63-98-C-0048; Laredo Border Patrol Station |

Dear Mr. Crosswhite:

Our law firm has been retained by Fidelity and Deposit Company of Maryland ("F&D") in connection with the above-referenced project (the "Project") and, specifically, to investigate the Fort Worth District Corps of Engineer's (the "Corps") arbitrary refusal to escrow contract funds related to the Project. In that regard, this letter is written to formally demand that the Corps immediately stop making payments to F&D's principal, Sedona Contracting, Inc. ("Sedona"), and to request that, in order to protect the interests of all parties concerned, the Corps place all earned and unpaid contract balances related to the Project (at least to the extent of F&D's bond losses) into an escrow account until such time as the parties' rights to those funds can be determined. Please be advised that, based on the facts and circumstances set forth below, it is our opinion that the Corps' failure to honor the voluntary letter of default and its attendant failure to escrow contract funds is an abuse of its discretion and raises questions concerning F&D's obligations under the bonds it issued with the Corps as the Obligee.

Additionally, this letter serves as formal notice to the Corps that F&D is asserting its right to setoff the payment and performance bond losses it incurs on other projects, which Sedona has contracted with the Federal Government to complete and F&D has bonded, against the contract funds retained by the Corps on this Project.

Based upon our review of the facts, it is evident that Sedona is in default on its contractual obligations on the Project. In that regard, Sedona has failed to pay its subcontractors as required by the clear terms of its contract with the Corps. As a result of this default, Sedona's subcontractors and suppliers have made claims on F&D in excess of Five Hundred Fifty Thousand Dollars ($550,000). Moreover, Sedona's financial condition continues to deteriorate, and F&D's consultants have performed an investigation and determined that Sedona will be unable to complete the Project with the remaining contract funds, thereby exacerbating the current nonpayment problem.

Based upon Sedona's precarious financial condition, its resulting failure to pay its subcontractors, F&D's bond losses, and F&D's concerns that Sedona's actions will further prejudice both the Corps and F&D, F&D concluded that it was necessary to advise the Corps of Sedona's default. Accordingly, on November 8, 2000, F&D released to the Corps Sedona's voluntary letter of default and F&D's letter demanding that the Corps release no further funds to Sedona. The notice of Sedona's default was given to the Corps so that F&D could take advantage of the doctrine of equitable subrogation. The Federal Circuit has applied the doctrine of equitable subrogation, even in the absence of a takeover by the surety, in order to allow the surety "to attempt to recover progress payments or the final payment when it notifies the Government that its principal is in default, or is about to go into default." Ranson v. U.S., 17 Cl.Ct. 263, 267-68 (1989). When this notification is made, "the United States in effect becomes a stakeholder for remaining contract proceeds." Id. at 268 (citing Balboa, 775 F.2d at 1162). Accordingly, upon giving notice to the Corps of Sedona's default, F&D expected that the Corps would thoroughly investigate and consider all relevant factors before making a determination of whether to discontinue releasing contract funds to Sedona.

To F&D's astonishment, on November 16, 2000, barely a week after having received notice of Sedona's default, you informed Darrell Leonard, F&D's Claims Counsel, that the Corps had decided against defaulting Sedona. The Corps' position, which clearly disregarded the facts leading up to F&D's decision, was that it was not obligated to honor the voluntary letter of default or the stop payment notice. Subsequently, at a meeting on November 20, 2000, you were advised by Mr. Leonard that because of Sedona's financial condition, the Corps would ultimately be harmed by its failure to terminate and stop payments to Sedona. Mr. Leonard reiterated the fact that Sedona's was in default and that

its financial condition was continuing to deteriorate as determined by F&D's consultants. Additionally, Mr. Leonard advised the Corps that F&D disagreed with its position that it was not obligated to honor the voluntary letter of default or the stop payment notice and cautioned the Corps that its position might affect F&D's obligations under the bonds issued for the Project. Remarkably, the Corps' stated position was that Sedona's failure to pay its subcontractors, the attendant bond claims made on F&D, and Sedona's consent to a voluntary default were not sufficient reasons to find Sedona in default under the contract.

With all due respect, we believe the Corps' position is arbitrary, unreasonable and simply wrong. While the Corps has discretion in making the determination of whether to declare Sedona in default and whether to continue to release contract funds to Sedona, the Corps may not abuse that discretion. Several courts have emphasized that the Government has a duty to take the interests of the surety into account in wielding its discretion. See, e.g., Balboa Ins. Co. v. U.S., 775 F.2d 1158, 1164 (Fed. Cir. 1985). Argonaut Ins. Co. v. U.S., 434 F.2d 1362, 1368 (Ct.Cl. 1970); Ohio Casualty Ins. Co. v. U.S., 12 Cl.Ct. 590 (1987). In Argonaut, the court held that while the Government has discretion, the Government's discretion is limited by its "*duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract*." 434 F.2d at 1368 (emphasis added). In determining whether the Government has exercised reasonable discretion in distributing funds to the contractor after notice from the surety that the contractor is in default, a court will consider the following eight factors:

(1) Attempts by the Government after notification by the surety, to determine that the contractor had the capacity and intent to complete the job. Balboa, 775 F.2d at 1164 (citing United States Fidelity and Guaranty Co. v. U.S., 676 F.2d 628, 631; Royal Indemnity Co. v. U.S., 529 F.2d 1312, 1321 (Ct. Cl. 1970); Argonaut, 434 F.2d at 1366, 1369; Fireman's Fund Ins. Co. v. U.S., 362 F.Supp. 842, 848 (D.Kan. 1973)).

(2) Percentage of contract performance completed at the time of notification by the surety. Id. (citing United States Fidelity and Guaranty Co, 676 F.2d at 631; United States Fidelity and Guaranty Co. v. U.S., 475 F.2d 1377, 1385 (Ct. Cl. 1973); Argonaut, 434 F.2d at 1366).

(3) Efforts of the Government to determine the progress made on the contract after notice by the surety. Id. (citing United States Fidelity and Guaranty Co., 676 F.2d at 631; Royal Indemnity, 529 F.2d at 1320-21. See United States Fidelity and Guaranty, 475 F.2d at 1385).

(4) Whether the contract was subsequently completed by the contractor (not conclusive but relevant to show the reasonableness of the progress on the project). Id. at 1164-65. (citing Argonaut, 434 F.2d at 1369).

(5) Whether the payments to the contractor subsequently reached the subcontractors and materialmen (this goes to the equitable obligation of the Government to subcontractors and others to see that they will be paid; also, because the surety is liable to the subcontractors, any money that reaches them furthers the objectives of the surety as well as the Government. Id. at 1165 (citing United States Fidelity and Guaranty, 475 F.2d at 1385; Argonaut, 434 F.2d at 1369).

(6) Whether the Government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the Government. Id. (citing United States Fidelity and Guaranty, 475 F.2d at 1385).

(7) Whether the Government's action violates one of its own statutes or regulations. Id. (citing United States Fidelity and Guaranty, 676 F.2d at 630).

(8) Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor. Id (citing United States Fidelity and Guaranty, 676 F.2d at 631; Royal Indemnity, 529 F.2d at 1321; Argonaut 434 F.2d at 1369).

Based on the above enumerated factors, we can come to no other conclusion but that the Corps' decision to continue to release contract funds to Sedona is an abuse of its

discretion. In that regard, it is apparent that the Corps has completely disregarded F&D's interests in its present determination. It seems clear that the Corps failed to undertake any type of investigation into Sedona's financial condition before proclaiming that it would continue releasing contract funds to Sedona. Rather, the Corps has apparently taken Sedona at its word with regard to its financial capacity and intent to complete the Project. As previously noted, Sedona is experiencing severe financial problems, and even the most cursory investigation by the Corps would elucidate this fact. The Corps' failure to investigate this matter makes its decision arbitrary. Additionally, the Corps apparently made no effort, after receiving notice from F&D, to perform a cost benefit analysis on whether the contract could be completed as quickly or cheaply by a successor contractor. The Corps' failure, after receiving notice from F&D, to determine whether Sedona has the financial capacity and intent to complete the Project and its failure to carefully investigate other relevant matters makes its decision to continue to release contract funds to Sedona arbitrary and injudicious, and provides further evidence of the Corps' failure to properly exercise its discretion.

Unfortunately, the Corp's abuse of discretion does not end with its failure, after receiving notice from F&D of Sedona's default, to ascertain whether Sedona has the capacity and intent to complete the Project. For whatever reason, the Corps has ignored Sedona's failure to pay its subcontractors and the resulting bond losses incurred by F&D. After receiving the voluntary letter of default and F&D's letter demanding that no further contract funds be released to Sedona, the Corps took no steps to investigate or ascertain whether the subcontractors, which Sedona was required to pay under the express terms of its contract with the Corps, were in fact being paid. Rather, the Corps decided, a little more than a week after having received notice, that it would continue to release contract funds to Sedona. The decision not to thoroughly investigate Sedona's nonpayment of its subcontractors demonstrates the Corps' complete failure to consider F&D's interests, as they are *required to do by law*. The Corps' conduct in coming to its conclusion about whether to continue to release contract funds to Sedona was not based on judgment and reason after a careful evaluation of all of the facts and circumstances, but was, rather, a hasty and careless decision indicative of an abuse of discretion.

After having been notified of Sedona's bleak financial condition, its failure to pay its subcontractors, Sedona's consent to a voluntary default, and F&D's mounting payment bond losses, the Corps has amazingly shirked its duties and investigative responsibilities clearly owed to F&D. Unquestionably, Sedona has defaulted on this contract and, based on F&D's consultant's investigation, will not be able to complete the Project with the remaining contract funds. The Corps' decision to continue to pay Sedona, and its refusal to honor Sedona's voluntary letter of default, will ultimately harm both F&D and the Corps. It is within the Corps' power and responsibility to prevent this eventuality.

Please be advised that, should the Corps continue to arbitrarily insist on making payments to Sedona, F&D intends to hold the Corps responsible for its resulting bond losses. In order to protect the interests of all of the concerned parties, we respectfully request that you reconsider your current position based on a thoughtful and reasoned analysis and investigation of the facts and circumstances.

As previously noted, this letter also serves as formal notice of F&D's intention to setoff bond losses it incurs on Sedona's other projects with the Federal Government which F&D has bonded against the contract funds retained by the Corps on this Project, and other projects that Sedona is performing for the Corps including the construction of the Vehicle Operations and Maintenance project. As you may know, the right of a surety to compel an obligee to setoff contract proceeds to reduce the surety's losses comes from the surety's right of equitable subrogation. Upon satisfaction of its obligations under its performance bond where a contractor has defaulted, the law is clear that a surety is subrogated to the rights of both the obligee and the contractor. In re Larbar Corp., 177 F.3d at 443; Pearlman v. Reliance Ins. Co., 371 U.S. 132, 141, 83 S.Ct. 232 (1962); Prairie State Bank v. U.S., 164 U.S. 227, 240, 17 S.Ct. 142 (1896). Importantly, several courts have recognized the right of a surety, as subrogee of the Government, to setoff excess funds due the defaulting contractor on one Government contract to reimburse the surety for losses incurred on another contract. See, e.g. Transamerica Ins. Co. v. U.S., 989 F.2d 1188 (Fed. Cir. 1993); In re Larbar Corp., 177 F.3d at 439; Merritt Commercial Savings & Loan, Inc. v. Guinee, 766 F.2d 850 (4th Cir. 1985); District of Columbia v. Aetna Ins. Co., 462 A.2d 428 (D.C. Ct. App. 1983).

In Transamerica, the Court of Appeals for the Federal Circuit held that the doctrine of equitable subrogation allowed a surety to setoff funds held by the Government that were owed to the defaulting contractor under a contract that was different from the one that created the surety's claim. 989 F.2d at 1188. In this case, Transamerica was the performance bond surety on two government construction contracts, the second of which was defaulted on by the contractor. Id. at 1189. The contractor completed construction on the first project and was owed over $500,000 from the Federal Government. Id. Based on its obligations under the performance bond, Transamerica completed the second project and in doing so sustained losses of over $1,000,000. Id. Transamerica notified the Government of its intention to exercise its right of equitable subrogation to setoff the losses, incurred completing the project pursuant to its bond, against the amount that the Government owed the contractor. Id. Despite this notification, the Government disbursed the funds to the contractor. Id. Transamerica then sued the Government claiming that it was entitled to damages because of the Government's disregard for Transamerica's right

of equitable subrogation. Id. On review, the Federal Circuit held that a surety that has satisfied its obligations under a bond is subrogated to all of the Government's rights, including the right to setoff monies retained by the Government on a contract that is different from the one on which the surety's bond loss was incurred. Id. at 1194.

Similarly, F&D issued payment and performance bonds for a variety of projects that Sedona contracted to perform for various departments of the Federal Government. F&D has incurred substantial losses with regard to these bonds and, based on F&D's analysis of Sedona's financial condition, these losses will continue to mount. Having satisfied its obligations under the bonds, F&D is subrogated to all of the Federal Government's rights. In that regard, F&D is asserting its right to setoff retained contract funds on the Project to reimburse F&D for its bond losses incurred on other projects that Sedona has with the Federal Government. Accordingly, F&D demands that the Corps take no action with regard to the contract funds retained by the Corps, on any Project Sedona is performing for the Corps, that could prejudice F&D's rights to these funds. Specifically, F&D demands that the Corps discontinue making payments to Sedona and that it place into an escrow account the retained contract funds on all projects that Sedona is performing for the Corps at least until such time as a court determines the parties' rights to those contract funds.

Again, F&D is interested in reaching a conclusion to these matters that is in all parties' best interests. Towards that end, we would also like to discuss this letter and this Corps Contract during our conference call scheduled for Wednesday, December 13, 2001 at 2:30 p.m. EST. Hopefully, we can work towards a resolution of this matter that will be in the best interests of all parties involved.

If you do require any further information in connection with our above request, please do not hesitate to call me. I will plan on calling you before our December 13th conference call.

Very truly yours,

**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**

Robert G. Watt

RGW/mmb
cc: Darrell Leonard, Esquire

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW
7929 Westpark Drive, Suite 400
McLean, Virginia 22102-4224

Telephone: 703-749-1000
Facsimile: 703-893-8029
www.wthf.com

Writer's Direct Dial
No. 703/749-1022

John B. Tieder, Jr.
Robert G. Watt
Julian F. Hoffar
Robert M. Fitzgerald
Robert K. Cox
Lewis J. Baker
Benjamin T. Riddles, II
Wayne G. Tatusko
Richard G. Mann, Jr.
Henry D. Danforth
Carter B. Reid
Mark A. Sgarlata
Michael G. Long*
Thomas J. Powell
Edward J. Parrott
Steven J. Weber
Paul A. Varela
Vivian Katsantis
Kathleen O. Barnes
Shelly L. Ewald
Christopher J. Brasco
John G. Lavoie
Robert C. Niesley*
Colin J. Smith
Jean V. Miller
Gregory J. Dukellis*
Fred A. Mendicino
William J. Burch*
Michael D. Germain*
Robert G. Barbour
Keith C. Phillips
Marybeth Z. Gaul
Timothy E. Heffernan*
W. Drew Mallender
James M. Donahue
Bennett J. Lee*
Todd R. Metz*
Michael R. Gandee*
Michael P. Hutchins*
Joseph S. Guarino
Lewis I. Askew, Jr.
Erica S. Beardsley
Erica B. Robinett*
David F. McPherson*
Harish Mirchandani*
William H. Kennedy, Jr.
Michael J. Kirwin
David R. Johnson*
Scott W. Kowalski
C. Kelly Skrabak
J. Brian Cashmere
Joseph C. McGowan*
Daniel J. Alexander*
Geoffrey A. Graves*
John R. Marking*
Nicholas M. Sarris
S. Jerome Rosenbaum
Sherri D. Martinelli*
Gwynne W. Guzzeau
Christopher M. Anzidei
Michelle G. Hicks
Laura A. Shelkey
Akin Alcitepe
Jason D. Blatt
Michelle R. Depuy
Alexander N. Lamme
Timothy E. Elliott*
James M. Phelps
Eric Yeo
Justin S. Hawkins
*Not Admitted In Virginia

December 20, 2000

**Via Facsimile and U.S. Mail**

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Forth Worth District Corps of Engineers
P.O. Box 17300
Fort Worth, TX 76102-0300

JAN 02 2001
CESWF-OC

Re: Sedona Contracting, Inc. Financial Information

Dear Mr. Crosswhite:

Pursuant to your request, we are providing you with a summary of F&D's outside accountant's (Bill Allen of Forcon) evaluation of the financial condition of Sedona Contracting, Inc. ("Sedona"). The analysis is based on financial documents and information received from Sedona's bookkeeper showing its financial condition as of September 30, 2000. A copy of this information is attached.

There are certain items that we believe must be considered in reaching an accurate picture of Sedona's financial position. First, you will note that Sedona's record's show a current account receivable from the Texas Department of Transportation in the amount of Four Hundred Forty Four Thousand Nine Hundred Sixty Seven Dollars and Thirty Four Cents ($444,967.34). These funds should no longer be treated as an account receivable because Sedona was terminated by the Texas Department of Transportation.

Additionally, Sedona lists an account receivable from a shareholder which is inappropriate. According to admissions by Hector Trinidad, owner of Sedona, he borrowed One Million Two Hundred Thousand Dollars ($1,200,000.00) from the corporation in order to cover calls made as a result of his investments in the commodities market. Sedona's accountant has indicated that Sedona intends to pay bonuses to Mr. Trinidad over the next several years, purportedly to "repay" the loan. Obviously, this is a highly questionable asset and F&D does not believe there will be positive cash flow to pay bonuses to anyone.

Further, it should be noted that there are several negative numbers in the list of Sedona's current assets. It is our understanding that these numbers represent checks drawn off accounts set up by Great American for the completion of its bonded projects. Accordingly, these items should be considered liabilities rather than negative assets.

Taking the above factors into consideration, the analysis of Sedona's financial condition by F&D's accountant shows that as of September 30, 2000, Sedona had a negative net worth of approximately One Million Four Hundred Thousand Dollars ($1,400,000.00). This value ignores Sedona's liability to F&D for its current payment bond losses and its future bond losses which are projected to exceed Three Million Four Hundred Thousand Dollars ($3,400,000.00) on other projects F&D bonded for Sedona. Additionally, the analysis demonstrates that Sedona will be unable to meet its current obligations because it has short term liabilities of Three Million Two Hundred Eighty Five Thousand Three Hundred Eighty Six Dollars ($3,285,386.00) and liquid assets of only Two Million Eight Hundred Eighty Seven Thousand Three Hundred Thirty One Dollars ($2,887,331.00).

We trust that this letter adequately responds to your request for information on Sedona's financial condition. Again, we would like to stress our strong belief that Sedona has defaulted on its projects with the Corps. We continue to assert that based on its financial condition, Sedona will not be able to complete the projects that it has contracted with the Corps to perform. Accordingly, we again request that the Corps discontinue releasing contract funds to Sedona and that it place all such funds into an escrow account until such time as the parties' rights in those funds can be determined.

We look forward to our conference call this morning.

Very truly yours,

**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**

Robert G. Watt

Robert G. Watt

RGW/mmb
cc: Darrell Leonard, Esquire

Sedona Contracting, Inc.

** BALANCE SHEET **
As of September 30, 2000

ASSETS

| | | |
|---|---|---|
| CURRENT ASSETS | | |
| Trust Acct -Payroll | 70,000.00 | |
| Trust Acct - Home Office | 410,000.00 | |
| Trust Acct. - Superintenden | 371,174.40 | |
| Trust Acct. - Sub/Material | 100,000.00 | |
| Cash in Bank Payroll Fros | 5,495.07 | |
| Cash in Bank - Operating Fr | 226,201.21 | |
| Cash in Bank - G & A and Se | 800.53 | |
| Cash in Bank - Frost/CD | 45.59 | |
| Cash F&D - Randolph Duplexe | 38,364.67 | |
| Cash F&D - Laredo Border Pa | 8,971.58 | |
| Cash F&D - TEXDOT | 1,437.85 | |
| Cash F&D - Aafees Troop Mal | 46,395.35 | |
| Cash F&D - Vehicle Operatio | 464,306.64 | |
| Cash in Bank - Security | 292.84 | |
| Cash from GA - Southside | -374,231.79 | |
| Cash from G A - Mission | -1,027,220.20 | |
| Cash from G A - Commissary | -208,561.75 | |
| Cash from GA - Fannin | -202.50 | |
| Cash from GA - JPATS | -2,882.00 | |
| Cash in Bank - Smith Barney | 105,515.13 | |
| Special Acct. #1 | 881.16 | |
| S.B. Fund #570-770350133 | 336.25 | |
| S.B. Fund #564-770270053 | 473.36 | |
| Phoenix Strageic Theme Fund | 24,243.99 | |
| Cert. of Deposit - Frost | 19,000.00 | |
| Accts Receivable- Jobs | 1,427,018.43 | |
| Accts Receiv- Retentions | 1,390,716.97 | |
| Accts. Receiv. - Shareholde | 1,271,818.73 | |
| Employee Advance | 3,538.93 | |
| Valuation Allowance | -3,750.90 | |
| Investments | 70,200.00 | |
| Deffered Tax Benefit | 84,267.00 | |
| Refundable Deposits | 6,420.50 | |
| Prepaid Insurance | 1,068.40 | |
| Prepaid Taxes | 85,404.00 | |
| | -------------- | |
| TOTAL CURRENT ASSETS | | 4,617,539.44 |
| FIXED ASSETS | | |
| Land | 30,584.00 | |
| Leasehold Improvements | 2,812.91 | |
| Furniture, Fixtures | 13,785.06 | |
| Shop Equipment | 53,031.21 | |
| Autos, Trucks | 194,293.28 | |
| Construction Equipment | 14,500.00 | |
| Accumulated Depreciation To | -168,870.53 | |
| Organizational Costs | 5,060.30 | |
| | -------------- | |
| TOTAL FIXED ASSETS | | 145,196.23 |

00519

Sedona Contracting, Inc.

** BALANCE SHEET **
As of September 30, 2000

| | |
|---|---|
| TOTAL ASSETS | 4,762,735.67 |

Sedona Contracting, Inc.

** BALANCE SHEET **
As of September 30, 2000

LIABILITIES & EQUITIES

| | | |
|---|---|---|
| LIABILITIES | | |
| SHORT TERM LIABILITIES | | |
| Accounts Payable | 4,320,021.61 | |
| N/P - Shareholder | 26,896.12 | |
| Deferred Franschise Tax | 5,784.00 | |
| Billing in Excess | 122,238.00 | |
| Payroll Taxes Payable | 282.13 | |
| General Liability Payable | 2,644.96 | |
| TOTAL SHORT TERM LIABILITIES | | 4,477,866.82 |
| LONG TERM LIABILITIES | | |
| N/P - Arven Saunders | 15,538.85 | |
| TOTAL LONG TERM LIABILITIES | | 15,538.85 |
| TOTAL LIABILITIES | | 4,493,405.67 |
| EQUITIES | | |
| Capital Stock | 1,000.00 | |
| Paid-in Capital | 100,000.00 | |
| Retained Earnings | 434,915.95 | |
| Net Profit, Year-to-Date | -266,585.95 | |
| TOTAL EQUITIES | | 269,330.00 |
| TOTAL LIABILITIES & EQUITIES | | 4,762,735.67 |

Seonna Contracting, Inc.

** ACCOUNTS RECEIVABLE AGEING **
September 2000

Page 1
10/10/00

AGING DATE: 09/30/00

| ID # | NAME | TOTAL DUE | RETENTION | CURRENT | OVERDUE | OVER 30 | OVER 60 | OVER 90 |
|---|---|---|---|---|---|---|---|---|
| LCC | AETC CONS/LGCR | 64.147.91 | 0.00 | 64,147.91 | 0.00 | 0.00 | 0.00 | 0.00 |
| AAF | ARMY AND AIR FORCE EXCHANGE | 514.537.80 | 231,177.30 | 283,360.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| FS | FACILITIES SERVICE OFFICE | 3.000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3.000.00 |
| RC | RANDOLPH CONTRACTING SQUADRON | 123.906.93 | 0.00 | 123.906.93 | 0.00 | 0.00 | 0.00 | 0.00 |
| SAA | SAN ANTONIO HOUSING AUTHORITY | 687.437.95 | 557.841.15 | 0.00 | 0.00 | 0.00 | 129,596.80 | 0.00 |
| SA | SAN ANTONIO INDEPENDENT | 151,368.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151,368.61 |
| SSISD | SOUTHSIDE INDEPENDENT SCHOOL | 441.525.91 | 375,571.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65,954.91 |
| TDA | TEXAS DEPT. OF TRANS. AUSTIN | 444.967.34 | 226.127.52 | 0.00 | 0.00 | 218,839.82 | 0.00 | 0.00 |
| UH | UNIVERSITY HOSPITAL | 40,799.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.799.00 |
| CORP | US ARMY CORP OF ENGINEERS | 411.383.95 | 0.00 | 411.383.95 | 0.00 | 0.00 | 0.00 | 0.00 |
| | TOTALS AS OF 09/30/00: | 2.883.075.40 | 1.390.716.97 | 882,799.29 | 0.00 | 218,839.82 | 129,596.80 | 261,122.52 |

< >
1,492,358.43

00522

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF
CESWF-CT-C

December 22, 2000

Sedona Contracting, Inc.
Attn: Hector Trinidad
6800 Park Ten Blvd., Suite 135E
San Antonio, Texas 78213

Dear Mr. Trinidad:

Reference is made to your Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance Complex, Lackland Air Force Base, Texas.

Your surety on subject contract, Fidelity and Deposit Company of Maryland (F&D) has advised me that due to the degradation of Sedona's financial assets, it will not be able to complete subject contract and should therefore be terminated by the Government for default. Additionally, I received today from F&D's counsel a financial evaluation of Sedona which supports F&D's conclusions that Sedona may not have sufficient financial assets to complete the project. A copy of this evaluation is hereby furnished for your review.

We have been advised by your structural steel supplier that Sedona has billed the Government $233,000.00 for structural steel and has failed to make payment to the supplier after receiving payment from the Government. We have further been advised by F&D that they have paid the structural supplier $200,000.00 under their Miller Act Payment Bond. By virtue of the payment bond payment, F&D has demanded that the Government make no further payment to Sedona. Under Balboa Ins. Co. v U.S. 775 F2d 1158, 1164 (Fed. Cir. 1985), I have discretion, as contracting officer, to continue making payments to the contractor, subsequent to a demand by a surety that no further payments be issued. However, the Court in Balboa placed certain responsibilities on the Contracting Officer before exercising his/her discretion that payment should be made to the contractor. Included in the responsibilities placed on the contracting officer was the requirement to determine that the contractor had the capacity and intent to complete the job and whether payments to the contractor subsequently reached the subcontractors and suppliers. In order to fulfill this responsibility, I would like to meet with you in my office on January 10, 2001, at 10:00 AM to discuss these issues. You should come prepared to provide me with documentation establishing that your company has sufficient financial resources to complete the project and that your company fully intends to complete this project. F&D will be invited to attend this meeting.

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "*Return Receipt Requested*" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

SEDONA CONTRACTING, INC.
Attn: Hector Trinidad
6800 PARK TEN BLVD., STE 135E
SAN ANTONIO TX 78213

4a. Article Number
7000 0520 0020 0721 5096

4b. Service Type
☐ Registered ☒ Certified
☐ Express Mail ☐ Insured
☐ Return Receipt for Merchandise ☐ COD

7. Date of Delivery
1-2-1

5. Received By: (*Print Name*)
LAVOIA GONZALEZ

6. Signature: (*Addressee or Agent*)
X [signature]

8. Addressee's Address (*Only if requested and fee is paid*)

Thank you for using Return Receipt Service.

PS Form **3811**, December 1994 Domestic Return Receipt

294

THEODORE M. BAILEY, P.C.
MILAM BUILDING, SUITE 711
115 EAST TRAVIS STREET
SAN ANTONIO, TEXAS 78205-1611
TELEPHONE NO. (210) 225-7747
FACSIMILE NO. (210) 225-8246
E-MAIL: TMBPC@IDWORLD.NET

THEODORE M. BAILEY
JOHNATHAN M. BAILEY
JACQUELINE Z. NIKODYM

January 8, 2001

[TELEFAXED 01/08/01]

Department of the Army
Corps of Engineers, Fort Worth District
Mr. John Rodgers, Contracting Officer
Office of Counsel
Post Office Box 17300
Fort Worth, Texas 76102-0300

Re: Sedona Contracting, Inc.
Contract No. DACA63-99-C-0039
Vehicle Operations/Maintenance Complex
File No. 533.22

Dear Mr. Rodgers:

I represent Sedona Contracting, Inc. with regards to this contract. This letter is in response to your December 22, 2000 letter and your request for a meeting. By this letter I am also furnishing you a response to F&D's financial evaluation of Sedona Contracting. The purpose of this letter is to address your concerns as to whether Sedona will have sufficient financial resources to complete the project. The simple answer is that Sedona clearly does, as F&D well knows. Regardless of the overall financial condition of Sedona, Sedona has sufficient financial assets to complete the project because all payments to Sedona on this contract and payments for expenses to complete the project will be made through a joint account on which both F&D and Sedona are signatories. As explained in more detail below, the use of this account is mandated by court order and, thus, there should be no concern on your part that Sedona will not have sufficient assets to complete the project. Sedona is fully and completely committed to perform this project to full completion and will do so.

Sedona and F&D at the start of this project entered into a Joint Control Trust Account Agreement ["JCTAA"] which provided for, among other things, the setting up of a joint banking

Mr. John Rodgers
FWCOE
Re: Sedona Contracting
Vehicle Operations
January 8, 2001
Page 2

account for this specific project. That joint account was actually set up in August, 2000, after which time subsequent payments by the Government were deposited into this account until a dispute arose between Sedona and F&D. Payments were being made out of that account until that time also. A recent court order by the United States District Court for the Western District directed that all remaining project funds are either presently in the joint account, in the possession of Sedona which are being paid into the joint account and all future Government payments are to be made into this joint account. Therefore, the Government has assurance that the money will be there and that it will be used only for the performance of this contract.

In addition, the surety verifies and approves all checks to take money out of the account. Since the checks require the signature of the surety, the Government has assurance that any payments out of this account will be agreed to by the surety.

Attached is a cash flow projection for this contract, showing the existing funds available for this contract, plus the balance of the contract, less the projected costs to complete. This projection shows a positive cash flow for this project, indicating that the project will be finished with the funds that are or will be available in the joint account. This cash flow does not include money presently in the joint account or that will be deposited into the account shortly. Therefore, regardless of the overall financial situation of Sedona, there is sufficient assets to complete this project. Furthermore, since the Court has ordered Sedona and F&D to use this account, the Government has more assurance, in fact, on this project than it would normally have on a project that the project will be completed. In addition, it should be pointed out that the Court specifically approved a provision of the Joint Control Trust Account Agreement with the surety that $30,000 of overhead expenses for Sedona per month will be funded. Thus, you can be assured that Sedona will have sufficient monies available for it to complete the work, as well as to support its operation.

Since the court order is recent and the past issues have now been resolved by the court order, you should not have concern at this time.

As to the structural steel supplier, originally after Sedona had billed the Government $233,000 for structural steel, Sedona's quality control determined that there was some corrective work that had to be done. As a result, certain corrections were to be

Mr. John Rodgers
FWCOE
Re: Sedona Contracting
Vehicle Operations
January 8, 2001
Page 3

made by the structural steel supplier before it was to be paid the full amount. Sedona prepared a joint control trust account check for F&D's signature for $200,000. This check was presented to the surety to sign. The money was in the account, as the progress payment which included the $233,000 had been made and was deposited in the joint control account. The surety, as a result of a dispute on other matters, refused to sign this check and ultimately paid with its own check the structural steel supplier the $200,000. There was no reason or basis for this, since there were joint control funds available in the account and a check had been prepared by Sedona for this payment.

F&D, of course, at this point is entitled to be reimbursed out of the joint control account for this payment and we fully expect F&D to do so, as provided for in the Joint Control Trust Account Agreement. Therefore, there is no basis for F&D to demand that no further payment be made to Sedona. In fact, this request has been superceded by the court order which directs Sedona to request that the Government take all actions possible to get the Government to pay directly into the joint control account. A copy of the court's order previously was furnished to your attorney. Thus, this court order has superceded F&D's request. The Court has made it clear that the future payments on this contract are not to be made directly to Sedona but are to be made to the joint control account for this project. The same would be true on the Laredo project. You should have already received a separate recent request from Sedona to change the payments on the contract to go directly to that account. Please honor that request as soon as possible, so that Sedona can be in compliance with the court order.

While recognizing that the Contracting Officer has reasonable discretion in this situation under Balboa Insurance Company v. United States, 775 Fed.2d 1158, because of the JCTAA, the joint control trust account already set up, and the court order directing that future payments go into this account, there are provisions for an adequate fund with which to complete the contract, as shown by the attached cash flow analysis. Since there is an adequate cash flow through this joint account to complete the project and since the surety will be cosigning all of the payments out of the joint account, there should be no reason to be concerned. The surety's letters, of course, were written before the court order which resolved some disputes between Sedona and F&D. Since the project funds will be controlled and since there are sufficient contract funds, enough to complete the job, then Sedona has shown the capacity and

intent to complete the job. These payments which will be in the joint control account, even in the event that Sedona were to fail for some reason, the funds would still be available to be used to pay subcontractors and suppliers on the project and to complete the project.

I believe the court order and the enclosed information sufficiently address your issue. Sedona hopes that we can avoid the necessity of an in-person meeting, as that is an expense that Sedona does not need to incur at this point and Sedona prefers to utilize its efforts ensuring that the work is done onsite. Therefore, we request that the meeting be cancelled at this time.

Sincerely,

THEODORE M. BAILEY, P.C.

Theodore M. Bailey

TMB/jeb
Enclosure
VIA Telefax and U. S. Mail
cc: Sedona Contracting, Inc.
Mr. Hector Trinidad, President
6800 Park Ten Boulevard, Suite 135 East
San Antonio, Texas 78213
[with enclosure]

Department of the Army
Corps of Engineers, Fort Worth District
Mr. Rex Crosswhite
Office of Counsel
Post Office Box 17300
Fort Worth, Texas 76102-0300
[with enclosure]
[VIA Telefax and U. S. Mail]

FROM : THEODOREBAILEYPC FAX NO. : 2102258245 Jan. 08 2001 05:00PM P6

## JOB COST REPORT: VEHICLE OPERATIONS

| | | |
|---|---|---|
| A | CONTRACT AMOUNT | $6,103,445.00 |
| B | RECEIVED FROM OWNER | $2,407,492.00 |
| | BALANCE LEFT FROM OWNER | $3,695,953.00 |
| C | JOB ESTIMATE | $5,628,875.00 |
| D | PAID UP TO DATE | $2,158,471.86 |
| | BALANCE LEFT TO COMPLETE PROJECT | $3,470,403.14 |
| | BALANCE FROM OWNER | $3,695,953.00 |
| | BALANCE TO COMPLETE PROJECT | $3,470,403.14 |
| | ENDING BALANCE | $225,549.86 |

THEODORE M. BAILEY, P.C.
MILAM BUILDING, SUITE 711
115 EAST TRAVIS STREET
SAN ANTONIO, TEXAS 78205-1611
TELEPHONE NO. (210) 225-7747
FACSIMILE NO. (210) 225-8246
E-MAIL: TMBPC@IDWORLD.NET

JAN 17 2001
CESWF-OC

THEODORE M. BAILEY
JOHNATHAN M. BAILEY
JACQUELINE Z. NIKODYM

January 11, 2001

Ms Elizann Carroll
Strasburger & Price, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202

Re: Sedona Contracting, Inc. and
The Fidelity and Deposit Companies
Contract F41691-99-D-0002 - Randolph Duplexes
Contract No. DACW63-98-C-0048 - Laredo
Contract No. HQ 99-PZC-060 - AAFES Troop Mall
Contract NO. DACA63-99-C-0039 - Vehicle Operations
Our File No. 533.22

Dear Ms Carroll:

Enclosed please find copies of the letters of direction from Sedona to the Contracting Officer for each of the above contracts.

Sincerely,

THEODORE M. BAILEY, P.C.

Theodore M. Bailey

Theodore M. Bailey

TMB/jeb
Enclosure
cc: Sedona Contracting, Inc.
Mr. Hector Trinidad, President
6800 Park Ten Boulevard, Suite 135 East
San Antonio, Texas 78213

bcc Alex Crosschutz

**SEDONA CONTRACTING, INC.**
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78213
(210) 736-5335 / Fax 736-1927

January 3, 2001

Department of the Army
Corps of Engineers, Fort Worth District
Post Office Box 17300, Contracting
819 Taylor Street, Room 2A19
Fort Worth, Texas 76102-0300

Re: Principal: Sedona Contracting, Inc.
Obligee: Department of the Army, Corps of Engineers, Fort Worth District
Contract No.: DACW63-98-C-0048
Project: No. 79, Laredo Border Patrol Station
Performance Bond: PRF08131152
Surety: The Fidelity & Deposit Companies

Dear Sir:

Sedona Contracting, Inc. requests that all future payments under contract number DACW63-98-C-0048 be made to Account No. 384453 at Broadway National Bank. Please implement this change immediately. Sedona will sign all necessary documents to accomplish this change in payment. If there is any problem with making this change, please contact the undersigned or our attorney, Theodore M. Bailey, at (210) 225-7747, immediately.

Very truly yours,

SEDONA CONTRACTING, INC.,

Hector Trinidad, President

HT/jb
cc: Ms Elizann Carroll
Strasburger & Price, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202

**SEDONA CONTRACTING, INC.**
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78213
(210) 736-3335 / Fax 736-1927

January 3, 2001

Department of the Army
Corps of Engineers, Fort Worth District
Contracting Division
Post Office Box 17300
819 Taylor Street, Room 2A19
Fort Worth, Texas 76102-0300

Re: Principal: Sedona Contracting, Inc.
Obligee: Department of the Army, Corps of Engineers, Fort Worth District.
Contract No.: DACA63-99-C-0039
Project: No. 89, BC - Vehicle Operations/Maintenance Complex
Performance Bond:
Surety: The Fidelity & Deposit Companies

Dear Sir:

Sedona Contracting, Inc. requests that all future payments under contract number DACA63-99-C-0039 be made to Account No. 394488 at Broadway National Bank. Please implement this change immediately. Sedona will sign all necessary documents to accomplish this change in payment. If there is any problem with making this change, please contact the undersigned or our attorney, Theodore M. Bailey, at (210) 225-7747, immediately.

Very truly yours,

SEDONA CONTRACTING, INC.,

Hector Trinidad, President

HT/jb
cc: Ms Elizann Carroll
Strasburger & Price, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

February 8, 2001

Office of Counsel

SUBJECT: Sedona Construction Under Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance Complex, Lackland Air Force Base, Texas

Elizann Carroll
Strasburger & Price
Suite 4300
901 Main Street
Dallas, Texas 76202-3794

Dear Ms. Carroll:

In the meeting held between representatives of the Corps of Engineers, Fidelity and Deposit Company of Maryland (F&D), and Sedona Contracting, Inc. (Sedona), on January 10, 2001, I requested letters of direction from representatives of Sedona and F&D directing that payment be made to a joint control account pursuant to the Order issued by the U.S. District Court for the Western District of Texas. Mr. Bailey, in a letter dated January 11, 2001, submitted a letter from Sedona dated January 3, 2001, directing that payments be made to the joint account. Subsequent to the receipt of this letter representatives of the Fort Worth District's Contracting Division contacted Mr. Trinidad requesting that he execute the necessary forms in order to facilitate payment to the joint account. It is my understanding that Mr. Trinidad refused to execute the forms necessary in order to change the place of payment. I have contacted Mr. Bailey and advised him of his client's refusal to abide by the agreements made in the January 10, 2001 meeting.

Mr. Trinidad's refusal to abide by the terms of the agreement reached on January 10, 2001, has placed the Corps of Engineers in a precarious position balancing its obligations to Sedona under the contract against its obligations to protect the interest of the surety. We have reexamined the factors mandated under

D. Smith



Balboa v. United States, 775 F.2d 1158 (Fed. Cir. 1985), and have determined at this time, that payment will continue to be made to Sedona. Although Sedona's failure to abide by the January 10, 2001 agreement is disturbing, other than the failure to pay subcontractors, they are not in breach of their contractual obligations. We will continue to closely monitor this matter and shall continue to withhold payment from Sedona, under the Prompt Payment Clause of the contract, when they request payment from the Government and subsequently fail to pay their subcontractors.

Sincerely,

Rex Crosswhite
Deputy District Counsel

Copy Furnished:

Theodore M. Bailey, Esq.
Milam Building, Suite 711
115 E. Travis
San Antonio, Texas 78205-1611

Robert T. Watt
Watt, Tieder, Hoffar,
and Fitzgerald, LLP
7929 W. Park Drive
Suite 400
Mclean, Virginia 22102-4224

CROSSWHITE

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW
7929 Westpark Drive, Suite 400
McLean, Virginia 22102-4224

Telephone: 703-749-1000
Facsimile: 703-893-8029
www.wthf.com

Writer's Direct Dial
No. 703/749-1022

John B. Tieder, Jr.
Robert G. Watt
Julian F. Hoffar
Robert M. Fitzgerald
Robert K. Cox
Lewis J. Baker
Benjamin T. Riddles, II
Wayne G. Tatusko
Richard G. Mann, Jr.
Henry D. Danforth
Carter B. Reid
Mark A. Sgarlata
Michael G. Long*
Thomas J. Powell
Edward J. Parrott
Steven J. Weber
Paul A. Varela
Vivian Katsantonis
Kathleen O. Barnes
Shelly L. Ewald
Christopher J. Brasco
John G. Lavoie
Robert C. Niesley*
Colin J. Smith
Jean V. Miller
Gregory J. Dukellis*
Fred A. Mendicino
William J. Burch*
Michael D. Germain*
Robert G. Barbour
Keith C. Phillips
Marybeth Z. Gaul
Timothy E. Heffernan*
W. Drew Mallender
James M. Donahue
Bennett J. Lee*
Todd R. Metz*
Michael R. Gandee*
Michael P. Hutchins*
Joseph S. Guarino
Lewis I. Askew, Jr.
Erica S. Beardsley
Erica B. Robinett*
David F. McPherson*
Harish Mirchandani*
William H. Kennedy, Jr.
Michael J. Kirwin
David R. Johnson*
Scott W. Kowalski
C. Kelly Skrabak
J. Brian Cashmere
Joseph C. McGowan*
Daniel J. Alexander*
Geoffrey A. Graves*
John R. Merking*
Nicholas M. Sarris
S. Jerome Rosenbaum
Sherri D. Martinelli*
Gwynne W. Guzzeau
Christopher M. Anzidei
Michelle G. Hicks
Laura A. Shelkey
Akin Alcitepe
Jason D. Blatt
Michelle R. Depuy
Alexander N. Lemme
Timothy E. Elliott*
James M. Phelps
Eric Yeo
Justin S. Hawkins
*Not Admitted in Virginia

February 14, 2001

**Via Facsimile and U.S. Mail**

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Fort Worth District Corps of Engineers
P.O. Box 17300
Fort Worth, TX 76102-0300

| | | |
|---|---|---|
| Re: | Principal: | Sedona Contracting, Inc. |
| | Surety: | Fidelity and Deposit Company of Maryland |
| | Obligee: | United States of America, Department of Army, Fort Worth District Corps of Engineers |
| | Project: | Contract No. DACW63-98-C-0048, Laredo Border Patrol Station; and Contract No. DACA63-99-C-0039 Vehicle Operations-Maintenance Complex |

Dear Mr. Crosswhite:

As I am sure you must expect, my client, Fidelity and Deposit Company of Maryland ("F&D") and I are extremely disappointed with the Corps of Engineers' decision reflected in its February 8, 2001 letter to Elizann Carroll wherein the Government has refused to abide by the terms of an agreement reached on January 10, 2001 between representatives of Sedona Contracting, Inc., F&D, and the Corps of Engineers concerning Contract progress payments to be made to a Joint Control Account in accordance with a Court Order issued by the U.S. District Court for the Western District of Texas. We hereby provide further notification to the Corps of Engineers that its decision further evidences an abuse of discretion in regard to the Surety's interests, a violation of the Court Order obtained by F&D and another violation of its duty to the Surety as set forth in case law provided to you in previous correspondence.

Secondly, we want to advise the Corps of Engineers that Sedona Contracting has violated the Supervision provision of its two existing Contracts with the Corps of Engineers. Both COE Contracts with Sedona contained General Provision 90 (FAR 52.236-6) enclosed entitled "Superintendence by the Contractor" which specifically provides:

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Fort Worth District Corps of Engineers
February 14, 2001
Page 2

> At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the work site a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

F&D has recently obtained a copy of the attached Agreement between Sedona Contracting and 3TI, Inc. wherein Sedona has subcontracted the responsibility for supervision and superintendence for both Contracts for the sum of $99,404.00 through June 30, 2001. Without question, this is an additional violation of the two Corps of Engineers Contracts which supports F&D's position that the Contractor is in default and the failure of the Corps of Engineers to honor F&D's voluntary letter of default of its contractual obligations.

Finally, we are further concerned that the Corps of Engineers has failed to provide the documentation requested by my letter dated December 22, 2000 which is attached herewith. We again reiterate our request for the following information related to Sedona's two Contracts with the COE and hereby expand our request for payment requisitions to include those for the months of January and February 2001:

1. Copies of the payment requisitions submitted to the Corps by Sedona for the months of September, October, November and December, 2000, along with any back up documentation submitted with such payment requisitions;

2. Copies of the Corps' payment authorizations to Sedona reflecting a break down of what the Corps paid versus each payment requisition; and

3. A verification of what contract proceeds the Corps has retained on the Laredo Border Patrol Station project.

I would like for you to call me as soon as possible to discuss these critical matters as clearly the Corps should not continue in its policy of allowing Sedona to blatantly violate contractual provisions, Court Orders and Agreements that it has made with F&D and the Corps. As you know, we have previously asserted on behalf of F&D that the failure of the Corps of Engineers to honor F&D's voluntary letter of default and to make payments to a Joint Control Account constitutes a Government abuse of discretion.

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Fort Worth District Corps of Engineers
February 14, 2001
Page 3

Very truly yours,

**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**

Robert G. Watt

RGW:mb
Enclosures

STRASBURGER & PRICE, L.L.P.

ATTORNEYS AND COUNSELORS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

SUITE 4300
901 MAIN STREET
DALLAS, TEXAS 75202-3794
(214) 651-4300

FAX (214) 651-4330
www.strasburger.com

AUSTIN
HOUSTON
SAN ANTONIO
MEXICO CITY
PARIS

ELIZANN CARROLL
(214) 651-4873
Direct Fax: (214) 659-4161
elizann.carroll@strasburger.com

March 5, 2001

***Via Facsimile***
Rex Crosswhite, Esq.
Corps of Engineers
Fort Worth District
Office of Counsel
P.O. Box 17300
Fort Worth, Texas 76102-0300

RE: **Bond No.:** PRF 08121176
**Principal:** Sedona Contracting, Inc.
**Project:** Vehicle Operations/Maintenance Complex, Lackland Air Force Base,
**Contract No.:** DACA63-99-C-0039

Dear Mr. Crosswhite:

In preparation for our meeting on Tuesday, March 6, 2001 at noon, as well as your earlier meeting that day with Sedona Contracting, regarding payment issues on the above-referenced project, I wanted to provide you with certain information and documentation regarding these issues which The Fidelity and Deposit Companies ("F&D") believe are relevant to this discussion. While I believe you are well-aware of many of the issues between the parties, in light of Sedona's objection to F&D's attendance at a meeting, I want to ensure that you have an understanding of the current situation in advance of the meeting, so that you can properly evaluate Sedona's position.

I understand from a prior conversation with you that Sedona has not submitted a complete pay application since November 2000, thus has not been paid. In a recent telephone conversation, Mr. Shaw, Sedona's new counsel, indicted to me that Sedona's lapse was unintentional and that Sedona did not realize that any documentation was missing from the November pay application. Mr. Shaw also represented to me that Sedona was remedying this oversight. However, I now understand that Sedona still may not have submitted a complete pay request, and/or submitted a pay application and then instructed the Corps not to pay due to an alleged error that still has not been corrected. Needless to say, I do not understand why Sedona is not requesting payment. Regardless, Sedona's course of action is causing problems for F&D in responding to potential payment bond claimants and in reviewing the limited checks submitted by Sedona for payment on this project. Importantly, Sedona only submitted checks for three subcontractors on Vehicle Ops for the month of February,

670258.1/SP2/33310/0424/03052001

STRASBURGER & PRICE, L.L.P.

Rex Crosswhite, Esq.
March 5, 2001
Page 2

although we understand there were at least 21 subcontractors that may have performed work on the project. Many of these subcontractors have contacted F&D regarding payment, and have indicated that Sedona is blaming non-payment on the Corps' failure to pay Sedona. While it appears that Sedona is creating this situation, F&D is limited in its ability to respond. Without confirmation that the Corps has approved work performed by subcontractors, F&D does not have sufficient information to evaluate the limited checks from the joint control account submitted by Sedona for countersignature by F&D, nor to evaluate payment bond claims, to the extent such claims are submitted. Thus, Sedona has created a situation that could result in subcontractors abandoning the project due to lack of payment. F&D has not created, encouraged or approved of the situation that now exists on Vehicle Ops.

An issue currently pending before the Court is Sedona's failure to provide a proper budget, as required under the joint control trust account agreement ("JCTAA") with which the Court has ordered the parties to comply. A copy of the provision of the JCTAA and the "budget" submitted by Sedona are attached hereto as **Exhibits A-1** and **A-2**. As you can see, Sedona has not made a good faith effort to show anticipated revenue and expenses on a bi-weekly. Rather, they divided the contract balance by 12 and "anticipate" payment by the Government owners on a bi-weekly basis and equal expenses through the completion date of the projects. Despite at least four conversations between myself and counsel for Sedona on the content of the budget, and several letters to Sedona requesting the budget, Sedona declined to provide the requested information. F&D has consistently taken the position, in conversations and in writing, that no checks would be countersigned without full compliance with the JCTAA, including submission of a realistic budget. Checks 1148 and 1150-1152 were not signed for this reason.

Recently, Mr. Shaw provided the requested information in a letter, a copy of which is attached hereto as **Exhibit B**. F&D then reviewed checks it received from Sedona and countersigned the checks for which sufficient documentation was submitted. Sedona has complained that F&D has not signed all checks Sedona has submitted for signature. If F&D blindly signed checks, there would be no reason for the joint control accounts. Also, Sedona has submitted checks for which F&D has requested further information or explanation, but Sedona has refused to provide such additional information. Checks 1160 and 1170-72 were not signed for this reason.

Also, as you know from our last meeting, Sedona "pre-paid" employee salaries and expenses through June 30, 2001, in the total amount of $233,648. Accordingly, F&D will not be responsible for any overhead or administrative expenses until June 2001, at which time Sedona may request reimbursement or payment of up to $6,352.00 in overhead or administrative expenses for the month. Despite this fact, Sedona continues to submit checks for what appear to be overhead or administrative expenses and then, in at least one instance, refused to provide further explanation when F&D inquired into the purpose of the expenses to determine whether such expenses might, in fact, be project expenses. F&D has no obligation to pay overhead and administrative expenses at

670258.1/SP2/33310/0424/03052001

STRASBURGER & PRICE, LLP



this point, thus F&D is rightfully declining to sign checks 1162, 1165, 1166 and 1168 for such expenses.

While the administration of the JCTAA is a matter between Sedona and F&D, F&D is providing this information to the Corps so that the Corps is aware of these matters on which Sedona insists on involving the Corps. F&D is prepared to countersign checks submitted with proper backup documentation and has not acting unreasonably in requiring compliance with the Court's Order. Sedona acts as though the JCTAA sets forth obligations only applicable to F&D and/or believes that the Court's Order only applies to F&D. There are obligations for both parties and F&D will not unilaterally issue checks simply to ensure that Sedona remains on the project. While Sedona is apparently blaming F&D and the Corps for its non-payment of subcontractors and suppliers, it has only itself to blame for its predicament. Sedona is well-aware of the documents it must submit to the Corps to receive payment on the project, and to F&D to request payments from the joint control accounts. If Sedona chooses not to comply with the requirements, it must suffer the consequences.

F&D understands it obligations under its payment and performance bonds furnished for Sedona on this project and intends to comply with those obligations. F&D respectfully requests that the Corps hold Sedona to the same standards.

Sincerely,

Elizann Carroll

EC

670258.1/SP2/33310/0424/03052001

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

March 20, 2000

Office of Counsel

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance Complex, Lackland Air Force Base

Mr. Robert G. Watt
Watt, Tieder, Hoffar,
and Fitzgerald, LLP
7929 West Park Drive
Suite 400
McLean, Virginia 22102-4224

Dear Mr. Watt:

Please excuse our delay in answering your letter dated February 14, 2001. We had two difficulties in obtaining some of the documents that you requested--locating the documents and formatting the diskettes which contain the schedule in a manner in which they could be read.

Prior to the receipt of your letter we had reexamined our position regarding the method of payments under the subject contract. The Contracting Officer has made the determination that although we are not party to the litigation that Fidelity and Deposit Company filed against Sedona, we cannot ignore the order by the United States District Court requiring payment of contract proceeds to a joint control account. Therefore, in accordance with the court order, we have issued an administrative modification on each project (Encl 1) directing payments to the joint control account. We expect F&D to act in good faith in co-signing disbursements from the joint account in a timely manner and not arbitrarily refuse or delay co-signing the checks.

We take issue with and dispute any connotation contained in you letter that the Corps of Engineers has abused its discretion in regard to the surety's interest, has violated any court orders or has

violated any duty owed to F&D as set forth in case law. We have balanced both the duty owed by the Government to the surety in this matter with our obligations to Sedona under the contract. We have taken no actions in degradation of the surety's rights.

An investigation has been made regarding your allegations that Sedona is in breach of General Provision 90, Superintendence by the Contractor. We have determined that Jake Trinidad, who is an employee of 3TI, Inc., is superintending the project. The superintendence of construction clause requires the project to be superintended by the contractor or a competent superintendent who is satisfactory to the Contracting Officer and who has authority to act for the contractor. Mr. Trinidad has been vested with full authority to maintain progress pursuant to the schedule, direct the activities of Sedona's work force and that of their subcontractors and negotiate modifications. Since Mr. Trinidad is a competent superintendent who is authorized to act for the contract, we must conclude that Sedona, through the utilization of Mr. Trinidad as project superintendent, is in compliance with the requirements of the contract. The clause does not require the superintendent to be a direct employee of the contractor.

Pursuant to your request for contract fiscal data:

1. Enclosed are copies of Sedona's pay request (Encl 2) for the months of September 2000 through February 2001 on the Lackland project. No requests for payment were submitted during this period on the Laredo. No payment has been made on the Lackland pay requests for November and December 2000, and January 2001, due to improper contractor certification of the pay request. The back-up data for the pay requests is on the update of the CPM schedule. We are submitting diskettes with the update of the CPM schedules for September and October, 2000.

Mr. Crosswhite/dro/1145



We have had technical problems with copying the updates of the CPM schedules for November and December. Once we resolve the technical difficulties, we will make copies of the subsequent schedule updates and forward it to you.

2. COE payment authorizations for the pay request on the Lackland project are enclosed (Encl 3).

3. Our record indicates that the amount of $186,665.89 remains undispursed on the Border Patrol Station. The COE is assessing liquidated damages against the contract balance in the amount of $68,060.00 for late completion of the project.

Sincerely,

Rex Crosswhite
Deputy District Counsel

Enclosures

Copy Furnished:

Elizann Carroll, Esq.
Strausburger & Price, L.L.P.
Suite 4300
901 Main Street
Dallas, Texas 76202-3784

CESWF-OC/CROSSWHITE

CESWF-CT/ZIMMER

CESWF-CT/RODGERS

RETURN

CESWF-OC

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

March 22, 2001

Office of Counsel

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Operations Maintenance Complex, Lackland AFB, TX

Garreth E. Shaw, Esq.
411 Heimer Road
San Antonio, TX 78232

Dear Mr. Shaw;

Subsequent to our meeting on March 6, 2001, Sedona submitted a preliminary pay estimate in the amount of $410,264.15. The submission of a final pay estimate was conditioned on the Government assuming responsibility for distribution of contract funds to the subcontractors and suppliers in the event that the surety does not pay them. This condition exceeds the responsibilities placed on the Government by the contract and is not acceptable. The preliminary pay estimate is not a proper pay estimate due to the condition precedent placed on the Government by Sedona, and the contractor's failure to submit the certification required by the Payments clause of their subcontract.

We have been advised that several subcontractors are either refusing to return to work until they are paid or have threatened to walk off the job unless they are paid by a specific date. It is our understanding that the subcontractor's who are refusing to continue work on the project include the roofer, the structural steel erector, the waterproof subcontractor, the site work subcontractor, the fire protection subcontractor and the underground utilities subcontractor. We are concerned that subcontractor disruption has adversely affected your client's ability to complete the project in a timely manner. We do not believe that the submission of a pay estimate that is substantially below the amount that your client has earned on the project is inductive to

a resolution of the non-payment of subcontractor issues or the timely completion of the project. If your client falls behind its scheduled progress, endangering the completion of the project by the contract completion, the Contracting Officer will review all of his legal options, including the possible termination of the contract for default.

In the meeting held in the Fort Worth District on March 6, 2001, I asked representatives of Fidelity and Deposit Co. of Maryland (surety) as to whether they would be interested in taking over the project if Sedona agreed to a no-cost termination of their contractual rights. Ms. Carroll has advised me that the surety is interested in taking over the project and prosecuting it to completion. Prior to entering into a takeover agreement with the surety, the Contracting Officer will require a written agreement from your client agreeing to the take over and waiving any claim that your client may have to the remaining contract balance or against the Government as the result of either a novation or a termination for conveniences. If your client is in agreement with a no-cost termination of their rights under the contract, including the right to payment for any amounts earned to date, but which have not been disbursed, then we will pursue this matter with the surety. Due to the deterioration of the situation at the job-site, your client must notify us of their position regarding a no-cost termination of their contractual rights by the close of business on March 28, 2001.

Sincerely,

Rex Crosswhite
Deputy District Counsel

**SEDONA CONTRACTING, INC.**
**6800 Park Ten Blvd., Suite 135 East**
**San Antonio, Texas 78213**
**(210) 736-5335 / Fax 736-1927**

March 30, 2001

U.S. Army Corps of Engineers
Contracting Division, Fort Worth District
Post Office Box 17300
Ft. Worth, Texas 76102
Attn: Mr. John Rodgers

Ref: Lackland AFB Vehicle Operations
Contract Number DACA 63-99-C-0039

Sub: Refusal of Payments from Bonding Company

Mr. Rodgers,

We have submitted several direct job cost disbursement checks for signature to Fidelity and Deposit and they have refused to sign the checks (See Attachments A-G).

The following are the vendors:
1.Federal Express
2.Employee Reimbursements for this project
(Example: Attachment "A" Jose Palacio)
3.Blanco Blueprint-Drawings for this project
4.Waste Management0-Temporary Toilets, Dumpsters
5.Mobile Mini-Job Trailer
6.Ozarka-Water cooler as needed per specifications
7.Southwester Bell Invoices for jobsite phone and fax numbers

Your actions refusing our requests of payment process are now the subject of our concerns.

The options that you now have are as follows:

1. Force Fidelity and Deposit to pay these invoices immediately.

2. You the Owner pay the invoices.

If one of the two options are not executed to satisfy the vendors we will have no choice but to discontinue the services. The deadline date for resolution is Monday, April 9,

2001. After this date we will notify the vendors to retain their equipment or discontinue services.

Our main concern as stated in our requests for the processing of payments was and still is to have all suppliers and subcontractors paid on a timely basis for their scope of work and/or services. We, Sedona Contracting, Inc. made you aware that the consequence in paying directly into the joint account was that the bonding company will not sign our disbursement checks to pay our suppliers and subcontractors, and as you can see with the attached letters our concerns have been realized.

Your immediate response to this matter is greatly appreciated.

Sincerely,

Hector Trinidad
President

Cc: Mr. Thomas Armstrong, U.S. Corps of Engineers
Mr. Manuel Fano, U.S. Corps of Engineers
Mr. Gary Shaw

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

May 7, 2001

Contracting Division

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance Complex, Lackland Air Force Base, Texas

Mr. Hector Trinidad
President
Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 East
San Antonio, TX 78213

Dear Mr. Trinidad:

My job site representatives have advised me that numerous subcontractors, who are critical to the completion of the project, have left the project due to a failure by Sedona Contracting, Inc. (Sedona), to make timely payments. The failure of Sedona to make timely payments to subcontractors and suppliers is a breach of Sedona's contractual obligations. The subcontractors who are refusing to continue work on the project include the roofer, the structural steel erector, the waterproof subcontractor, the site work subcontractor, the fire protections subcontractor, the mason and the mechanical subcontractor.

The only work currently being performed on the project is the installation of electrical work. Interior finish work on the project cannot proceed due to the fact that the roof has not been installed. The current contract completion date is September 29, 2001. The original contract had a performance period of 669 calendar days. It has been extended 15 calendar days. The project is approximately 63% complete with critical activities unable to progress because the buildings are not dried in. With only 63% of the project completed with 79% of the contract duration expired, Sedona's ability to complete the remaining work within the remaining contract duration is doubtful. Under the Termination for Default Clause of the Contract if the "Contractor refuses or fails to prosecute the work or any separable part with the diligence that will insure its completion within the time specified in the contract including any extension, or fails to complete

the work within this time, the Government may by written notice to the Contractor, terminate the right to proceed with the work that has been delayed." Based on Sedona's failure to fully man the project, paying and employing subcontractors at the site whose work is critical to its completion, I must conclude that Sedona is failing to prosecute the work with diligence that will insure its completion within the time specified in the contract, as extended. Therefore, I must consider exercising the Government's option to terminate Sedona's right to proceed with the contract for default.

Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arises from causes beyond your control and without the fault or negligence by you, your subcontractors and suppliers. Therefore, you are directed to show why your contract should not be terminated for default. You are given this opportunity to present, in writing, any facts bearing on the question to me as Contracting Officer within 5 working days after receipt of this notice. Your failure to present any justification within this time may be considered an admission that none exist. In the event you are terminated for default you will be held responsible for any excess completion costs incurred by the Government together with any liquidated damages that might be accessed until the project is substantially complete.

Sincerely,

John H. Rodgers
Contracting Officer

Copies Furnished:

Mr. Darrell Leonard
Claims Counsel
The Fidelity and Deposit Companies
P.O. Box 17069
Baltimore, MD 21297-1089

Elizann Carroll, Esq.
Strasburger and Price, L.L.P.
901 Main Street, Suite 4300
Dallas, TX 75202-3794

Garreth E. Shaw, Esq., P.C.
411 Heimer Road
San Antonio, TX 78232

Bob Watts, Esq.
Watts, Tieder, Hoffar and Fitzgerald, L.L.P.
7929 Westpark Drive, Suite 400
McLean, VA 22102-4224