4. Admits that Sedona set forth the reasons stated in paragraph No. 4 of the Complaint as constituting grounds for excusable delay. Denies the validity of said allegations.

5. The allegations contained in paragraph No. 5 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

6. The allegations in paragraph No. 6 of the Complaint are denied. Respondent avers that it knows of only one subcontractor who was partially replaced.

7. The allegations in the first sentence of paragraph No. 7 are admitted. The allegations contained in the second sentence of paragraph No. 7 are denied. Respondent avers that work on items critical to the completion of the project such as installation of the roof and technical work stopped.

8. The allegations contained in paragraph No. 8 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

9. The allegations contained in the first sentence of paragraph No. 9 are admitted. The allegations contained in the second sentence of paragraph No. 9 are admitted. The allegations contained in the third sentence of paragraph No. 9 are denied as to lack of information sufficient to form a belief

as to their truth, except to aver that the COE deducted $233,200 from Appellant's pay request due to their certification in pay estimate No. 8 that payments to subcontractors and suppliers had been made from previous payments received under the contract, and the certification under pay estimate No. 6 that the pay request did not include any amounts which the prime contractor intended to retain or withhold from the subcontractor.

10. The allegations contained in the first two sentences of paragraph No. 10 are admitted. The allegations contained in the third sentence of paragraph No. 10 are denied. Respondent avers that pay request No. 9 was not initially submitted pursuant to the requirements of the payment clause of the contract. Subsequently the pay request was correctly submitted and Appellant was paid $132,982.50.

11. With respect to the allegations contained in paragraph No. 11 of the Complaint admits that Respondent agreed with the percentage being billed but denied that payment would not be made merely because a list of subcontractors was not provided and a change in the narrative report was required. Respondent avers that Appellant also failed to list the amounts included for the work performed by each subcontractor, failed to provide a listing of the total amount of each subcontract and a listing of the amounts previously paid to each subcontractor as required by the contract clauses. With respect to the allegations

contained in the second and third sentences of paragraph No. 11 of the Complaint, they are denied.

12. Respondent is unable to identify the submittal referenced in paragraph No. 12 of the Complaint, therefore the allegations contained in paragraph No. 12 are denied for a lack of knowledge or information sufficient to form a belief as to their truth.

13. The first sentence of paragraph No. 13 is admitted. The second sentence is denied. Appellant, in a letter dated February 23, 2001, advised Respondent that a mistake had been made in the "previously submitted pay request." Appellant indicated that a "corrected invoice" would be submitted. Therefore, Respondent's representatives considered Pay Estimate No. 11 withdrawn. In a letter dated February 23, 2001, Respondent acknowledged receipt of Appellants fax withdrawing pay request Nos. 9-11 and advised Appellant that no further actions would be taken on those pay requests.

14. The allegations contained in the first sentence of paragraph 14 are admitted. The allegations contained in the second sentence of paragraph No. 14 are denied for lack of knowledge or information sufficient to form a belief as to their truth.

15. The allegations contained in paragraph No. 15 of the Complaint are denied for lack of knowledge or information sufficient to form a belief as to their truth.

16. The allegations contained within the first sentence of paragraph No. 16 are admitted except to deny that Appellant was directed to file a combined pay request. The second sentence of paragraph No. 16 is denied for lack of knowledge or information sufficient to form a belief as to their truth. The allegations contained in the third sentence are denied. Respondent avers that it responded to the preliminary pay request in a letter dated March 22, 2001. The allegations contained in the fourth sentence of paragraph 16 of the Complaint are admitted. The allegations contained in the last sentence of paragraph No. 16 are denied.

17. The first sentence of paragraph No. 17 is admitted. The second sentence is denied. In a letter dated April 9, 2001, Respondent acknowledged receipt of the consolidated pay request and pointed out deficiencies wherein the pay request did not comply with the payments clause of the contract. Additionally, progress on certain activities was disallowed.

18. The allegations contained in paragraph No. 18 of the Complaint are denied.

19. The allegations contained in the first sentence of paragraph No. 19 are admitted except to deny the reasons why

Appellant resubmitted Pay Request No. 9 for lack of knowledge or information sufficient to form a belief as to their truth. The second sentence of paragraph No. 19 is admitted.

20. The allegations contained in the first sentence of paragraph No. 20 are denied for a lack of information or knowledge sufficient to form a belief as to their truth. The allegations contained in the second sentence of paragraph No. 20 are denied.

21. The allegations in paragraph No. 21 are denied due to Respondent's inability to identify what information Appellant is referring to as being faxed on May 10, 2001.

22. The allegations contained in paragraph No. 22 of the Complaint are admitted except to deny that Respondent started the time to process the pay request over due to the submission of supplement information. The time for processing the pay estimate was started over due to Appellant's correction of their previously defective pay request that was not submitted in conformation with the requirements of the contract.

23. The allegations contained in paragraph No. 23 of the Complaint are denied for a lack of information or knowledge sufficient to form a belief as to their truth, except to admit that the pay estimate was submitted on May 16. 2001.

24. The allegations contained in paragraph No. 24 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

25. The allegations contained in paragraph No. 25 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

26. The allegations contained in paragraph No. 26 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

27. The allegations contained in paragraph No. 27 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

28. The allegations contained in paragraph No. 28 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

29. The allegations contained in paragraph No. 29 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

30. The allegations contained in paragraph No. 30 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

31. The allegations contained in the first, and second sentences of paragraph No. 31 of the Complaint are denied. The allegations contained in the third sentence are admitted. The allegations contained in the fourth sentence of paragraph No. 31 of the Complaint are admitted except to deny that Respondent refused to hold the meetings.

32. The allegations contained in the first sentence of paragraph No. 32 are denied. The allegations contained in the second sentence are admitted. The allegations contained in the third sentence of paragraph No. 32 are denied. The allegations contained in the fourth sentence of paragraph No. 32 are denied. The allegations contained in the fifth sentence of paragraph No. 32 are admitted, to the extents supported by the documents referenced, which are the best evidence of their contents, otherwise, the allegations contained in this sentence of the Complaint are denied. The allegations contained in the last sentence of paragraph No. 32 are denied.

33. The allegations contained in the first sentence of paragraph No. 33 of the Complaint are admitted. The allegations contained in the second sentence of paragraph No. 22 are denied.

The pay requests for November and December 2000 were paid to Appellant.

34. The allegations contained in the first and second sentences of paragraph No. 34 are admitted. The allegations contained in the remainder of this paragraph are denied.

35. The allegations contained within the first sentence of paragraph No. 35 are denied due to Respondent's inability to ascertain what Appellant is characterizing as a "considerable amount of work." The last sentence of paragraph No. 35 is denied due to a lack of knowledge or information sufficient to form a belief as to their truth.

36. The allegations contained in paragraph No. 36 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

37. The allegations contained in paragraph No. 37 of the Complaint are conclusions of law or appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

38. The first sentence of paragraph No. 38 is denied. The second through tenth sentences of paragraph No. 38 of the Complaint are denied due to a lack of knowledge or information to form a belief as to their truth. The allegations contained in the last sentence of paragraph No. 38 of the Complaint are

conclusions of law or Appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

39. The first sentence of paragraph No. 39 is denied due to a lack of knowledge or information sufficient to form a belief as to their truth. The second and third sentences of paragraph No. 39 are denied.

40. The allegations contained in paragraph No. 40 are denied.

41. The allegations contained in the first sentence of paragraph No. 41 are admitted, except to deny that the involvement of the surety was related to the change in procedure. The second and third sentences of paragraph No. 41 are denied. The fourth sentence of paragraph No. 41 is admitted except to deny that the failure to require a list of subcontractors and a list of payments to subcontractors was a contemporaneous interpretation of the contract. Respondent avers that it initiated enforcement of this contract requirement based on complaints from subcontractors and suppliers that they were not receiving payment. The remainder of paragraph No. 41 is denied.

42. The allegations contained in the first sentence of paragraph No. 42 are denied. The second sentence of paragraph No. 42 is admitted to the extent supported by the document cited

therein, which is the best evidence of its contents, otherwise, the allegations contained in this sentence are denied. The allegations contained in the third and fourth sentences of paragraph No. 42 are admitted. With respect to allegations contained under subpart a. and c. of the fifth sentence of paragraph No. 42, Respondent denies the allegations contained therein. Respondent admits the allegations contained in subparts b., d., e., and f. of the fifth sentence of paragraph No. 42.

43. The allegations contained in paragraph No. 43 of the Complaint are denied.

44. The allegations contained in the first sentence of paragraph No. 44 of the Complaint are denied due to the fact that it is not a complete sentence to which Respondent can provide an answer. The allegations contained in the second sentence of paragraph No. 44 are admitted. Respondent avers that the reason only progress was reviewed was Appellants' failure to revise and submit a corrected schedule. The allegations contained in the third sentence of paragraph No. 44 are denied due to Appellant's failure to provide the activities described as "2 through 6 listed above." Respondent avers that there are no activities 2 through 6 listed in Appellant's Complaint. The last sentence of paragraph No. 44 is denied.

45. The allegations contained in paragraph No. 45 of the Complaint are conclusions of law or Appellant's characterization of this action to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

46. The allegations contained in the first, second and third sentences of paragraph No. 46 are admitted. The allegations contained in the last sentence of paragraph No. 46 are denied.

47. The allegations contained in the first sentence of paragraph No. 47 are denied except to admit that in February 2001, Appellant deleted the early finish. The allegations contained in the second and third sentences of paragraph No. 47 are denied. The allegations contained in the fourth sentence of paragraph No. 47 are admitted. The allegations contained in the last sentence of paragraph No. 47 are denied.

48. With regard to the allegations contained in the first sentence of paragraph No. 48, admits that Sedona requested a 144-day time extension, but denied that Appellant is entitled to the time extension or that the time extension was justified by the CPM. The allegations contained in the second sentence of paragraph No. 48 are admitted. The allegations contained in the third sentence are denied. The allegations contained in the fourth sentence of paragraph No. 48 are admitted. Respondent avers that at the outset of this meeting Appellant was advised

that due to scheduling conflicts, the meeting would only have a two-hour duration. The allegations contained in the fifth and sixth sentences of paragraph No. 48 are denied, except to admit that a second meeting was scheduled for May 5, 2001. Respondent avers that at the May 1, 2001 meeting, Mr. Cardenas advised Appellant that the fragnet presented by Mr. Whitehead appeared to justify a 144-day time extension. The allegations contained in the seventh sentence of paragraph No. 48 are admitted. The allegations contained within the eighth sentence of paragraph No. 49 are admitted except to deny that project delays existed. The allegations contained in the last sentence of paragraph No. 48 are denied based on a lack of knowledge or information sufficient to form a belief as to their truth.

49. The allegations contained in paragraph No. 49 are denied.

50. The allegations contained in paragraph No. 50 are denied.

51. The allegations contained in paragraph No. 51 are denied.

52. The allegations contained in paragraph No. 52 are denied.

53. The allegations contained in paragraph No. 53 are denied.

54. The allegations contained in paragraph No. 54 are denied.

55. The allegations contained in paragraph No. 55 are denied.

With respect to the last paragraph of Appellant's Complaint, which is serving as its prayer, denied that it is entitled to the relief requested.

**DEFENSES**

1. The contract, a Standard Form 1442-construction contract, required the construction of an vehicle operations building, a vehicle maintenance building, and associated site work. The contract duration was 669 calendar days. The original contract completion date was September 14, 2001. The contract completion date has been extended 15 days by modifications to September 29, 2001. The contract contained the mandatory general provisions required by the FAR for a domestic construction contract.

2. Sedona has failed to prosecute work under the contract to the point that there is a reasonable likelihood that it will be completed by the contract completion date. The project has virtually been abandoned. Respondent's representatives visited the site on May 24, 2001, and found only the electrical subcontractor working. The only work being performed on the site was electrical and the drilling of holes for the bollards.

A new steel erector did not start work on May 15, 2001, as promised. The mason worked only one day subsequent to April 30, 2001. The mechanical subcontractor advised Respondent's representatives that they have terminated their subcontract due to non-payment. The roofer advised Respondent's representatives that they refuse to work on the project due to non-payment. The site utility subcontractor advised Respondent's representatives that they refuse to work on the site due to non-payment. Sedona attempts to place responsibility for non-payment of subcontractors on the Respondent's refusal to process pay estimates. This allegation has no basis in fact. The reason the pay estimates have not been processed is Sedona's failure to submit estimates that comply with contract requirements.

3. Appellant failed to continue to make progress towards the completion of the project to insure its completion by the contract completion date. A review of the daily quality control reports indicates that Appellants progress was minimal and would not insure the completion of the contract by the contract completion date. During the first ten days of May 2001, the only work that was performed at the site was electrical, very incidental site work, concrete forming work, concrete curb and gutter, and the mason working on the project one day. Respondent's representatives observed less than 10 men working at the site on May 24, 2001. The daily quality assurance

reports indicate that the only work performed at the site during April 2001, was the EFIS, street repair, electrical work, installation of studs and sheathing and the forming and placement of concrete slabs. None of this work was on the project's critical path. No mechanical work has been performed at the site since March 2001.

4. The critical activities remaining to be completed for the project prior to Appellant's termination were the completion of the structural steel on both facilities, the installation of mechanical equipment on the maintenance facility, the installation of the roofs on both facilities, the installation of overhead doors, exterior doors, and the exterior brick veneer on the maintenance facility. No work was being accomplished to complete these critical items.

5. Appellant contends that they are entitled to a time extension of 144 days for the redesign of the operations facility slab, Modification P00003. The COE analysis of the schedule does not indicate that Modification P00003 delayed the contractor. The modification deleted the pier and beam foundation and substituted a ribbed mat foundation for the operations building. Notice to proceed on the modification was issued on July 21, 2000. A review of the daily quality control logs establishes that it took the contractor only 28 days to form, install slab reinforcement and place the slab. The

activities for the pier and beam foundation had been scheduled for 104 days. Any delay involved in the construction of the rib mat slab resulted from the contractor's failure to schedule and pursue to the work in a timely manner. Although the notice to proceed was issued on July 21, 2000, Sedona delayed start of the work on the slab until September 7, 2000. Sedona only worked sporadically on the slab until it was complete on January 24, 2001.

6. A review of the daily logs and the schedule indicates that in the fall and the summer of 2000, the project was not delayed by work on the operations building, but rather was delayed by a failure to complete the grade beams and the structural steel on the maintenance building. Sedona's schedule, data date June 29, 2000, indicates that the placement of the concrete in the grade beams for the maintenance building had an early completion date of July 28, 2000, and a late completion date of May 11, 2000, indicating that the activity was behind schedule. Placement of concrete in the grade beams was not finished until August 11, 2000. The structural steel activities were scheduled in the June 29, 2000 update of the CPM schedule to have a duration of 45 days and be completed by October 19, 2000. The erection of the structural steel on the maintenance building did not start until November 8, 2000. Based on Sedona's failure to complete the maintenance building

as scheduled and its failure to timely pursue work on the operations building, the contractor is not entitled to additional time under Modification P00003.

7. Sedona contends that they are entitled to a time extension of 60 days for the relocation of the communication line, and 235 to 321 days for modifying monitoring wells in Area A. Appellant also asserts that in issuing time extensions for unusually severe weather; the COE has failed to take into effect the impact of the weather. The work on the communications line was site work that was not on the critical path. Further, it did not delay any work on the critical path. Therefore, Appellant is not entitled to a time extension. The problem with the monitoring wells affects the site work at the operations building. It has not delayed any activities on the critical path. Therefore, Sedona's claim of a time extension is without merit. Respondent, in granting the contract time extensions for unusually severe weather, has granted a time extension for both the weather and its impact.

8. Appellant raised a number of issues in a May 17, 2001 submission alleging delays. These are:

- The grade adjacent to the sidewalk at the new POV area.
- Fabrication of a new column at column line D-6.
- Installation of horizontal metal suds between vertical studs.

- Installation of anodes at fire hydrants.
- Manifesting of haul dirt.

Appellant has failed to provide any analysis indicating that these issues delayed the critical path for construction of the facility. Respondent's analysis of these issues does not indicate that the issues contain any impact.

9. The termination for default was justified based on Appellant's failure to make sufficient progress on the project to insure its completion by the contract completion date. Appellant had been granted all contract time extensions to which it is entitled. Appellant failed to submit Pay Estimate Nos. 9-11 in the form and in the manner prescribed by the contract. Therefore, Respondent properly returned the pay estimates to Appellant for correction. Appellant failed to make payments to critical subcontractors resulting in the subcontractors refusing to perform additional work until they were paid. Appellant has no justifiable reason under the contract to excuse their lack of performance. Therefore, the termination for default should be upheld.

WHEREFORE, Respondent requests that the termination for default be upheld.

LLOYD R. CROSSWHITE
Engineer Trial Attorney
U.S. Army Corps of Engineers
Fort Worth District

ALBERT C. PROCTOR
District Counsel
U.S. Army Corps of Engineers
Fort Worth District

DSmith

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

August 15, 2001

Office of Counsel

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Opertaions/Maint. Complex, Lackland; Delay Claim and Claim submitted for unpaid Work

Theodore M. Bailey, Esq.
Milam Building, Suite 711
115 East Travis Street
San Antonio, TX 78205-1611

Dear Mr. Bailey;

We have received the two claims submitted on behalf of your client, Sedona Contracting, Inc. (Sedona), which were submitted under the Disputes clause of the contract. Both claims exceed $100,000.00 in value. Under the provisions of the Disputes Act of 1978, the Contracting Officer must either issue a decision on claims in excess of $100,000.00 within 60 days of the receipt of the claim or advise Sedona as to a reasonable time in which to expect a final decision of the Contracting Officer. The District workload, our staffing level, and the approach of the end of the fiscal year will prevent the issuance of a decision within 60 days after receipt of the claims. Please be advised that final decisions of the Contracting Officer will be issued on the delay claim and the failure to make payment claim on December 21, 2001.

Sincerely,

John H. Rodgers
Contracting Officer

CESWF-OC/CROSSWHITE

CESWF-CT/RODGERS JR

RETURN

CESWF-OC

THEODORE M. BAILEY, P.C.
MILAM BUILDING, SUITE 711
115 EAST TRAVIS STREET
SAN ANTONIO, TEXAS 78205-1611
TELEPHONE NO. (210) 225-7747
FACSIMILE NO. (210) 225-8246
E-MAIL: TMBPC@IDWORLD.NET

SEP 24 2001
CESWF-OC

THEODORE M. BAILEY
JOHNATHAN M. BAILEY
JACQUELINE Z. NIKODYM

September 18, 2001

ASBCA Recorder
Skyline Six
5109 Leesburg Pike, 7th Floor
Falls Church, Virginia 22041

Re: ASBCA No. 53429
Appeal of Sedona Contracting, Inc.
Under Contract No. DACA63-99-C-0039
File Bankrupcty
Our File No. 533.44

Dear Sir/Madam:

Sedona Contracting, Inc. filed for bankruptcy on August 31, 2001.

Sincerely,

THEODORE M. BAILEY, P.C.

Theodore M. Bailey

TMB/ll
cc: Sedona Contracting, Inc.
Mr. Hector Trinidad, President
6800 Park Ten Boulevard, Suite 135 East
San Antonio, Texas 78213

ARMED SERVICES BOARD OF CONTRACT APPEALS
SKYLINE 6
5109 LEESBURG PIKE
FALLS CHURCH VA 22041-3208

Telephone: (703) 681-8502

25 September 2001

OCT 02 2001
CESWF-OC

Theodore M. Bailey, Esq.
Theodore M. Bailey, P.C.
Milam Building, Suite 711
115 East Travis Street
San Antonio, TX 78205-1611

√ Lloyd R. Crosswhite, Esq.
Engineer Trial Attorney
U.S. Army Engineer District,
Fort Worth (CESWF-OC)
PO Box 17300
Fort Worth, TX 76102-0300

Re: ASBCA No. 53429
Appeal of Sedona Contracting, Inc.
Under Contract No. DACA63-99-C-0039

Dear Counsel:

The Board has been advised that appellant is in bankruptcy proceedings under Title 11 of the U.S. Code. Within 30 days of the date of this Order, the parties shall provide the Board the following information with copies of pertinent court documents:

a. Date of filing of petition with bankruptcy court.

b. Bankruptcy court and case docket number.

c. Type of bankruptcy case -- voluntary, joint, or involuntary.

d. Name and address of trustee where applicable.

e. Name and address of debtor in possession where applicable.

As an automatic stay pursuant to section 362(a) of Title 11 may be applicable to the instant proceeding, the parties are required to advise the Board within the same 30

Re: ASBCA No. 53429
Appeal of Sedona Contracting, Inc.

days of the date of this Order whether appellant is authorized to prosecute the instant appeal. If the stay has been modified or terminated with respect to the claim in the instant appeal, a copy of the Court order shall be furnished.

In the event the automatic stay applies to the instant appeal and relief from the stay has been denied or a request for relief is impracticable for reasons provided by the parties, the Board may dismiss the appeal without prejudice, in accordance with Board Rule 30.

By Order of the Board:

EDWARD S. ADAMKEWICZ
Recorder

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Sedona Contracting, Inc. | ) | ASBCA No. 53429 |
| | ) | |
| Under Contract No. DACA63-99-C-0039 | ) | |

APPEARANCE FOR THE APPELLANT: Theodore M. Bailey, Esq.
San Antonio, TX

APPEARANCES FOR THE GOVERNMENT: Frank Carr, Esq.
Engineer Chief Trial Attorney
Lloyd R. Crosswhite, Esq.
Engineer Trial Attorney
U.S. Army Engineer District, Fort Worth

ORDER OF DISMISSAL

On 18 September 2001, appellant's counsel informed the Board that appellant, Sedona Contracting, Inc., had filed for bankruptcy on 31 August 2001. Appellant subsequently agreed to dismiss the appeal under Board Rule 30 and the Government concurred in the proposed dismissal.

Accordingly, the above appeal is hereby dismissed, pursuant to Rule 30, without prejudice to its restoration. Appellant should advise the Board as soon as it is able to move forward with the processing of the appeal. The parties should note that unless either party or the Board acts to reinstate the appeal within 3 years from the date of this Order, the dismissal shall be deemed with prejudice.

Dated: 20 November 2001

/s/Edward S. Adamkewicz
EDWARD S. ADAMKEWICZ
Recorder, Armed Services
Board of Contract Appeals

DS

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF

October 9, 2001

Office of Counsel

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Opertaions/Maint. Complex, Lackland; Delay Claim and Claim submitted for unpaid Work

Theodore M. Bailey, Esq.
Milam Building, Suite 711
115 East Travis Street
San Antonio, TX 78205-1611

Dear Mr. Bailey;

In our telephone conversation on October 1, 2001, we discussed the status of the two claims submitted by Sedona relative to the bankruptcy proceeding. It is my understanding that you will be contacting the trustee to determine whether the trustee wishes to authorize you to pursue these claims. We agreed that the Government would suspend work on the two claims until the trustee determines whether to authorize proceeding with the submission of the claims. If my understanding is incorrect, or if you have additional questions or comments, please contact me at 817-978-3561, X-1145.

Sincerely,

Rex Crosswhite
Engineer Trial Attorney

CROSSWHITE

David W. Parham
State Bar No. 15459500
Elizann Carroll
State Bar No. 00787209
Wayne Barnes
State Bar No. 00793307
STRASBURGER & PRICE, L.L.P.
Suite 4300
901 Main Street
Dallas, Texas 75202-3794
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

ATTORNEYS FOR
FIDELITY AND DEPOSIT COMPANY OF MARYLAND

OCT 24 2001
CESWF-OC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SEDONA CONTRACTING, INC. | § | CASE NO. 01-54131-LMC |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS. IF NO TIMELY RESPONSE IS FILED WITHIN FIFTEEN (15) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

FIDELITY AND DEPOSIT COMPANY OF MARYLAND ("F&D), in accordance with Section 362(d) of the Bankruptcy Code, files this its Motion for Relief from The Automatic Stay, and in support thereof would show the Court as follows:

## I
## JURISDICTION

1. The Debtor filed a voluntary Chapter 7 petition on August 31, 2001, seeking relief under Chapter 7 of the Bankruptcy Code. Johnny Thomas is the duly appointed Chapter 7 Trustee for Debtor.

2. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 157(b)(2)(G).

3. Venue of this matter is proper in this Court pursuant to 28 U.S.C. § 1409.

## II
## FACTUAL BACKGROUND

4. On or around July 13, 1998, Debtor (or "Sedona") executed an Agreement of Indemnity ("Indemnity Agreement") with F&D in consideration for F&D issuing performance and payment bonds for Sedona as principal. A true and correct copy of the Indemnity Agreement, together with all modifications thereto, is attached as Exhibit "A".

5. F&D relied upon the Indemnity Agreement and issued payment and performance bonds for the benefit of Sedona, including bonds on various projects for agencies of the United States Government and the State of Texas on construction projects at the following locations, and under the following bond and contract numbers: TxDOT Research and Technology Building, Bond No. PRF8131172; Contract No. 47BCB2034 ("TxDOT Project"); Laredo Border Patrol Station, Bond No. PRF 8131152, Contract No. DACW63-98-C-0048 ("Border Patrol"); Randolph Duplexes, Bond No. PRF 08131154, Contract No. F41691-99-D-002 ("Randolph Duplexes"); AAFEES Troop Mall, Bond No. PRF 8131177, Contract No. HQ99-PZC-060 ("Troop Mall"); and Vehicle Operations/Maintenance Complex, Bond No. PRF 8131176, Contract No. DACA63-99-C-0039 ("Vehicle Ops") (collectively referred to as the "Bonded Contracts" or "Bonded Projects").

6. As of the date of the Chapter 7 filing, Sedona either had been terminated or otherwise replaced as general contractor on all of the Bonded Contracts except the Randolph Duplexes and Troop Mall Projects.

7. Under the Indemnity Agreement, in order to secure its obligations to F&D, Sedona assigned, transferred and set over to F&D (1) all the rights of Sedona in the Bonded Contracts; (2) all right, title and interest of Sedona in and to all machinery, equipment, tools and materials which are on the sites of any of the Bonded Projects or for the Bonded Contracts; (3) all rights, title and interest in and to all subcontracts in connection with any of the Bonded Contracts; (4) all causes of action, claims and demands which Sedona may have against any subcontractor, laborer or materialman in connection with the Bonded Contracts; and (5) any and all retainage and any other sums due or that may become due on account of any of the Bonded Contracts and all other contracts of Sedona, whether or not bonded.

8. In order to induce F&D to provide the bonds, Sedona agreed that funds received or due on the Bonded Contracts were trust funds for the payment of obligations incurred in the performance of the Bonded Contracts and that such trust inured to the benefit of F&D for any loss or liability it might suffer or incur under any of the bonds;

9. Further, pursuant to its obligation that funds paid pursuant to the Bonded Contracts were trust funds, Sedona agreed to deposit all funds received in certain joint control trust accounts;

10. Sedona entered into various subcontract and supply agreements in connection with the Bonded Projects, and has failed to pay numerous subcontractors and suppliers in accordance with those agreements. On the Bonded Projects other than the Troop Mall and Randolph Duplexes, F&D has been obligated under the performance and payment bonds to make payments to certain

subcontractors and suppliers in accordance with the Bonds, in satisfaction of Sedona's obligations. To date F&D has expended approximately $2.5 million in the effort to complete those jobs.

11. With respect to the Troop Mall and Randolph Duplexes, F&D desires the automatic stay to be modified or terminated so that the federal government can terminate Sedona as a contractor and allow F&D to step in pursuant to its bonds and complete those projects.

12. Sedona has been in and continues to be in default under the Indemnity Agreement and the various construction contracts, and as of the date of the voluntary filing, Sedona had ceased its business operations, and has failed to complete several of its remaining projects. Accordingly, the stay should be modified or terminated because Sedona does not have the ability to complete the Bonded Projects. Further, Sedona has no interest in unpaid contract balances (whether earned or unearned as of the Petition Date) or funds in joint control accounts since those funds are likely insufficient to complete the jobs and, if sufficient, would be subject to setoff by F&D against F&D's claim of approximately $2.5 million arising out of Bonded Projects which F&D has had to take over following Sedona's default and termination.

## III
## RELIEF REQUESTED AND BASIS THEREFOR

13. In order to allow F&D to protect its interest in the machinery, equipment, tools, and materials, and the funds and deposits in the joint trust account, and also to permit completion of the projects, F&D requests relief from the automatic stay to allow for immediate termination of Sedona's rights in the Troop Mall and Randolph Duplexes projects and to allow F&D to take control of the machinery, equipment, tools, or materials, and the funds and deposits in the joint trust accounts and remaining unpaid contract balances (whether earned or unearned on the Petition Date) and complete those projects, along with the other Bonded Projects. F&D asserts that all such funds, deposits, and unpaid contract balances may be constructive trust funds under applicable law, and therefore not

constitute property of the estate under section 541 of the Bankruptcy Code, rendering them not subject to the automatic stay. This motion is nevertheless brought, however, to the extent that such items are held to be property of the estate and thereby subject to the automatic stay. In particular, to the extent applicable, F&D seeks to modify or terminate the automatic stay to permit:

a. The taking by F& D of all funds in joint control accounts relating to any of the Bonded Projects;

b. The direction by F&D to the federal government and Texas Department of Transportation to pay any remaining unpaid contract funds (whether earned or unearned on the Petition Date) to F&D to be used to finish the Bonded Projects;

c. The use by F&D of all equipment, machinery and tools on the sites of the Bonded Projects;

d. The termination by the federal government of Sedona as general contractor on the Troop Mall and Randolph Duplexes projects; and

e. The setoff of funds received by F&D from the joint control accounts and owners, in excess of that paid to subcontractors on the Bonded Projects, against F&D's claims against Sedona.

14. F&D asserts that stay relief is appropriate because Sedona has no equity in any of the referenced funds or property described herein, and at this point it is not necessary to any reorganization. Alternatively, F&D asserts that cause exists to modify the stay, including but not necessarily limited to the fact that Sedona is unable to complete the Bonded Projects for the federal government and Texas Department of Transportation, and F&D's lack of adequate protection. Accordingly, stay relief is appropriate.

WHEREFORE, PREMISES CONSIDERED, F&D prays the automatic stay be modified to permit the actions described herein, and for such other and further relief to which F&D may show itself to be justly entitled.

Respectfully submitted,

David W. Parham by Wayne B

DAVID W. PARHAM
State Bar No. 15459500
ELIZANN CARROLL
State Bar No. 00787209
WAYNE BARNES
State Bar No. 00793307

**STRASBURGER & PRICE, L.L.P.**
901 Main Street, Suite 4300
Dallas, Texas 75202
Telephone: 214-651-4300
Facsimile: 214-651-4330

**ATTORNEYS FOR FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing has been served via First Class regular mail, postage prepaid, on this 18 day of October, 2001, to the parties on the attached service list, and to the following:

Sedona Contracting Inc
6800 Park Ten Blvd #135 East
San Antonio, TX 78213

Martin Warren Seidler
11107 Wurzbach Rd., #504
San Antonio, TX 78230

Johnny W Thomas
St Paul Square
1153 E Commerce
San Antonio, TX 78205

David W. Parham by Wayne B

DAVID W. PARHAM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HECTOR J. TRINIDAD and MONIQUE TRINIDAD, | § | CASE NO. 01-54128-LMC-7 |
| | § | |

**JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS. IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY (20) DAYS FROM THE DATE OF SERVICE, PLUS THREE DAYS FOR SERVICE BY MAIL, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

Fidelity and Deposit Company of Maryland and Colonial American Casualty & Surety Company (collectively referred to herein as "F&D"), joined by the Debtors Hector J. Trinidad and Monique Trinidad ("Debtors"), file this their Motion to Approve Compromise and Settlement Agreement Pursuant to Bankruptcy Rule 9019, and in support thereof would show the Court as follows:

**JURISDICTION AND VENUE**

1. The Debtors filed this Chapter 7 bankruptcy case no. 01-54128 on August 31, 2001. On this same date, Sedona Contracting, Inc. ("Sedona") filed its Chapter 7 bankruptcy case no. 01-54131 and Genz Electric, Inc. ("Genz") filed its Chapter 7 bankruptcy case no. 01-54126. One or both of the Trinidads are the primary principals of Sedona and Genz.

2. The Chapter 7 trustees in these cases are Johnny Thomas (Sedona), Jose Rodriguez (Trinidads), and John Patrick Lowe (Genz).

3. This is a core proceeding pursuant to 28 U.S.C. § 157.

4. Jurisdiction exists pursuant to 28 U.S.C. § 1334.

**BACKGROUND**

5. On or around July 13, 1998, Hector J. Trinidad, Monique Trinidad, Sedona, and Genz, each executed an Agreement of Indemnity ("Indemnity Agreement") with F&D in consideration for F&D issuing performance and payment bonds for Sedona as principal. F&D relied upon the Indemnity Agreement and issued payment and performance bonds for the benefit of Sedona, including bonds on various construction projects for agencies of the United States government and the State of Texas. Under the terms of the Indemnity Agreement, all of the parties are liable for all losses of F&D under the various bonds. F&D anticipates total losses on the various projects bonded for Sedona, and guaranteed by Hector J. Trinidad, Monique Trinidad and Genz Electric, Inc., in excess of $7.7 million.

6. Prior to any of the bankruptcy cases referenced herein, F&D had initiated that certain Federal district court litigation styled *Fidelity and Deposit Company of Maryland and Colonial American Casualty & Surety Company v. Sedona Contracting, Inc., Genz Electric, Inc., Hector J. Trinidad and Monique Trinidad*, No. SA00CA1242HG in the United States District Court for the Western District of Texas, San Antonio Division (the "Federal District Court Action"). Sedona, Genz, and the Trinidads have pending counterclaims against F&D in the Federal District Court Action.

7. On or about February 15, 2002, F & D commenced that certain Adversary Proceeding Number 02-5027C (the "Adversary Proceeding"), against Hector J. Trinidad and Monique Trinidad seeking a determination that amounts owed F & D are nondischargeable under section 523 of the Bankruptcy Code, seeking to deny the

discharge under section 727 of the Bankruptcy Code, and for other relief fully set forth in the Complaint. In the Adversary Proceeding, F&D alleges that the Trinidads made material misrepresentations to F&D, upon which F&D reasonably relied in issuing millions of dollars of credit to the Trinidads and their companies in the form of construction bonds. These alleged material misrepresentations include, but are not necessarily limited to, the failure of the Trinidads to disclose a loss of over $1 million in marketable securities prior to the issuance of such bonds. F&D asserts that it would not have issued certain bonds, and thus not have incurred the losses it sustained, had it known of these misrepresentations prior to the issuance of the bonds. Under the contract documents between F&D and the Trinidads, as well as applicable law governing construction funds, F&D asserts that a trust relationship existed between the Trinidads and F&D. F&D asserts that in excess of $1 million in trust funds were diverted by the Trinidads from the various bonded projects. The incurred or expected losses sustained by F&D under its bonds with the Trinidads and their companies is alleged to be approximately $7.7 million, the vast majority of which was incurred under bonds which F&D asserts it would not have issued had it known of the Trinidads' material omissions and misrepresentations.

8. The Adversary Proceeding also seeks alternative relief under subsections (a)(2), (a)(3), (a)(4), (a)(5) and (a)(7) of section 727 of the Bankruptcy Code, primarily relating to certain inappropriate expenditures from company funds in the one year prior to the bankruptcy filing, although these causes of action were also pleaded in the alternative to the section 523 causes of action. F&D asserts that, notwithstanding the potential applicability of section 727 to these transfers, that all of the transactions also affect the Trinidads' relationship with F&D and thus implicate section 523. Compared against the

context of the amount of debt sought to be held nondischargeable by F&D, the separate section 727 facts are somewhat less egregious. Moreover, the section 523 amounts are based on the contract documents, signed by F&D, Hector Trinidad and Monique Trinidad, and are based on allegations of fraud and breach of trust committed by the Trinidads against F&D. Notwithstanding the technical overlap between the relief sought by F&D under sections 523 and 727 of the Bankruptcy Code, respectively, based on the terms of the settlement as set forth below, and based on the serious degree of harm asserted by F&D under section 523 of the Bankruptcy Code, F&D believes that the proposed settlement in the context of section 523 is appropriate.

**RELIEF REQUESTED AND BASIS THEREFOR**

9. By this Motion, F&D and the Debtors seek the entry of an Order approving a settlement between them. In summary, F&D and the Trindads have agreed to resolve their disputes as follows:

a. F&D shall dismiss its claims objecting to the Trinidads' discharge under Section 727 of the Bankruptcy Code, and F&D shall recover a judgment against the Trinidads in the amount of $1,000,000, jointly and severally, which shall be nondischargeable pursuant to Section 523 of the Bankruptcy Code (the "Agreed Judgment").

b. F&D shall dismiss the Federal District Court Action without prejudice

c. The Trinidads will execute general releases in favor of F&D.

d. The Trinidads shall be entitled to a full release from the Agreed Judgment within seven years of the date this motion is approved by paying F&D the sum of $500,000. Moreover, the Trinidads shall be required to pay F&D $500 monthly during such seven year period, with the balance of the $500,000 to be paid not later than the end of the seven year period in order for the Trinidads to receive a release. During the initial seven year period, So long as the $500 per month is paid, no execution or abstract of judgment shall issue on the Agreed Judgment; provided, however, that F&D shall be entitled to take all necessary steps, and Hector J. Trinidad and Monique Trinidad shall

be required to cooperate with such steps, as are necessary so as to prevent the Agreed Judgment from becoming dormant under applicable state or federal law.

e. In the event F&D offers the Agreed Judgment to a third party for purchase, the Trinidads shall have the right of first refusal to purchase such judgment at the asking price.

f. The Trinidads agree not to contest F&D's rights to contract balances from any projects bonded by F&D, and on which Sedona was general contractor.

g. The Trinidads shall receive, dollar for dollar, full credit for any dividends received by F&D from the bankruptcy estate of Hector J. Trinidad and Monique Trinidad, attributable to the Trinidads' claims against RB&H Financial Services, L.P., whether in an arbitration or otherwise.

A true and correct copy of the proposed settlement agreement the parties propose to execute is attached as Exhibit "A". The parties agree that the Settlement is fair and reasonable, particularly in light of the potential attendant expense of litigation.

10. The settlement of controversies in the context of bankruptcy is governed by Fed. R. Bankr. P. 9019, which reads in pertinent part:

> (a) Compromise. On a motion by the trustee and after a hearing on notice to creditors, the United States Trustee, the debtor and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement.

11. The Fifth Circuit has stated that a settlement in bankruptcy requires review of three factors by the Bankruptcy Court in reviewing a proposed settlement:

(1) The probability of success in possible litigation, with due consideration for uncertainties of fact and law;

(2) The complexity and likely duration of conflict and attendant expense, inconvenience and delay; and

(3) All other factors bearing on the wisdom of the settlement.

*In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (applying *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). Additionally, the Court should make a determination that the settlement was a product of arms-length bargaining and not fraud and collusion. *See Connecticut General Life Ins. Co. v. United Cos. Fin. Corp (In re Foster Mortgage Corp.*), 68 F. 3d 914, 917 (5th Cir. 1995).

12. The settlement resolves the Adversary Proceeding against the Trinidads brought by F&D. The settlement fulfills the requirements set forth in *Protective Committee* because it resolves the litigation without the need for trial and will therefore save both parties and the Court time and resources that will be better spent on other matters. Moreover, the settlement has been reached through arms-length negotiations.

13. Therefore, given the circumstances, the settlement set forth herein meets the tests set forth by the United States Supreme Court, is well within a range of reasonableness and should therefore be approved. Notice of this Motion is being forwarded to all parties entitled to notice thereon.

WHEREFORE, PREMISES CONSIDERED, F&D and the Debtors pray that the Court approve the settlement described herein, and for such other and further relief to which they may show themselves to be justly entitled.

Dated: September 24, 2002

Respectfully submitted,

Wayne Barnes

WAYNE BARNES
State Bar No. 00793307

**STRASBURGER & PRICE, L.L.P.**
901 Main Street, Suite 4300
Dallas, Texas 75202
Telephone: 214-651-4300
Facsimile: 214-651-4330

and

JOHN M. PINCKNEY, III
State Bar No. 16013000

**STRASBURGER & PRICE, L.L.P.**
300 Convent Street
Suite 900
San Antonio, Texas 78205-3710
(210) 250-6000
(210) 250-6100 - Telecopier

**ATTORNEYS FOR FIDELITY AND DEPOSIT COMPANY OF MARYLAND AND COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**

Martin Seidler by Wayne Barnes w/ express permission (see attached)

MARTIN SEIDLER
State Bar No. 18000800
**LAW OFFICES OF MARTIN SEIDLER**
1 Elm Place, Suite 504
11107 Wurzbach Rd.
San Antonio, TX 78230
Telephone: (210) 694-0300
Fax: (210) 690-9886

**ATTORNEY FOR HECTOR J. TRINIDAD AND MONIQUE TRINIDAD**

Respectfully submitted,

WAYNE BARNES
State Bar No. 00793307

**STRASBURGER & PRICE, L.L.P.**
901 Main Street, Suite 4300
Dallas, Texas 75202
Telephone: 214-651-4300
Facsimile: 214-651-4330

and

JOHN M. PINCKNEY, III
State Bar No. 16013000

**STRASBURGER & PRICE, L.L.P.**
300 Convent Street
Suite 900
San Antonio, Texas 78205-3710
(210) 250-6000
(210) 250-6100 - Telecopier

**ATTORNEYS FOR FIDELITY AND DEPOSIT COMPANY OF MARYLAND AND COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**

MARTIN SEIDLER
State Bar No. 18000800
**LAW OFFICES OF MARTIN SEIDLER**
1 Elm Place, Suite 504
11107 Wurzbach Rd.
San Antonio, TX 78230
Telephone: (210) 694-0300
Fax: (210) 690-9886

**ATTORNEY FOR HECTOR J. TRINIDAD AND MONIQUE TRINIDAD**

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW

7929 Westpark Drive
Suite 400
McLean, Virginia 22102-4224

Telephone: 703-749-1076
Facsimile: 703-893-8029
www.wthf.com

Christopher J. Brasco
cbrasco@wthf.com

**FOR SETTLEMENT PURPOSES ONLY**

August 21, 2003

**Via Fedex**

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Fort Worth District Corps of Engineers
819 Taylor Street, Room 2A08
Fort Worth, TX 76102-0300

Re: Principal: Sedona Contracting, Inc.
Surety: Fidelity and Deposit Company of Maryland
Obligee: United States of America, Department of Army, Fort Worth District Corps of Engineers
Project: Contract No. DACA63-99-C-0039
Vehicle Operations-Maintenance Complex

Dear Mr. Crosswhite:

As we discussed, this letter provides an analysis of some of the significant legal issues raised in F&D's claim presentation. We have also enclosed a copy of our PowerPoint presentation for your review. Let us know if you have any difficulty in "reading" the enclosed disk, as we would be glad to forward it to you in whatever format is most convenient.

Section I of this letter addresses F&D's right to recover its entire bond loss because the Government acted to fundamentally alter the risk it assumed as project surety. Alternatively, Section II provides an analysis of why F&D is entitled to all losses caused by the Government's failure to timely terminate Sedona at the end of 2000.