# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 3

2. AMENDMENT/MODIFICATION NO.: P00031
3. EFFECTIVE DATE:
4. REQUISITION/PURCHASE REQ. NO.:
5. PROJECT NO. (If applicable): MJ027 II

6. ISSUED BY — CODE: DACA63
US ARMY ENGINEER DISTRICT, FTW
PO BOX 17300
819 TAYLOR ST
FT. WORTH TX 76102-0300

7. ADMINISTERED BY (If other than item 6) — CODE: M2M1JAA
SAN ANTONIO AREA OFFICE
COE FT WORTH DISTRICT
4204 WOODCOCK
SAN ANTONIO, TX 78228-1319

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
FIDELITY & DEPOSIT COMPANY OF MD
DARRELL LEONARD
3910 KESWICK ROAD
BALTIMORE MD 21211

CODE 1D3Z5 | FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.:
9B. DATED (SEE ITEM 11):
X 10A. MOD. OF CONTRACT/ORDER NO.: DACA63-99-C-0039
X 10B. DATED (SEE ITEM 13): 23-Sep-1999

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
**See Schedule**

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

X A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.
52.243-4 & 52.233-1

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This modification is for BC-Vehicle Ops/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas.

I. The above numbered contract is modified to provide for changes in the contract work within the general scope of the contract. This modification is being issued unilaterally to definitize time and pricing adjustments for work directed by this Unpriced Change Order No. P00027, dated 12 December 20001. This action has been taken by the Administrative Contracting Officer due to failure to reach agreement through negotiations. You are hereby notified of your rights pursuant to contract "Disputes Clause", to file a claim with the contracting Officer.

Accounting and Appropriation Data: W45XMA90888559 Mod Amount $1,313.00
97 NA X 0510.40E2 M2 1999 08 8073 1992064BJ00 41443 3200 0036Z3

The revised contract completion date is 12 January 2002

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)
15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY Thomas A Armstrong
(Signature of Contracting Officer)
16C. DATE SIGNED: 14 Feb 2002

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243



01537

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| J | 1 / 4 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(If applicable) |
|---|---|---|---|
| P00032 | | | MJ028 II & MJ029 II |

6. ISSUED BY CODE DACA63
ARMY ENGINEER DISTRICT, FTW
P O BOX 17300
819 TAYLOR ST
FT. WORTH TX 76102-0300

7. ADMINISTERED BY (If other than item 6) CODE M2M1JAA
SAN ANTONIO AREA OFFICE
COE FT WORTH DISTRICT
4204 WOODCOCK
SAN ANTONIO, TX 78228-1319

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
FIDELITY & DEPOSIT COMPANY OF MD
DARRELL LEONARD
3910 KESWICK ROAD
BALTIMORE MD 21211

CODE 1D3Z5 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MOD. OF CONTRACT/ORDER NO.
DACA63-99-C-0039

X 10B. DATED (SEE ITEM 13)
23-Sep-1999

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
**See Schedule**

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

X A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.
52.243-4

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This modification is for BC- Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

1. The above numbered contract is modified to provide for changes in the contract work within the general scope of the contract. This modification is issued to definitize time and pricing adjustments for contract modification DACA63-99-C-0039/P00030 dated 8 February 2002. This is a unilateral modification issued as an equitable adjustment in time and price for the following described work. This action has been taken by the Administrative Contracting Officer due to failure to reach agreement through negotiations. You are hereby notified of your rights pursuant to Contract Clause "Disputes", to file a claim with the contracting officer.

Accounting and Appropriation Data: W45XMA90888559 Mod Amount -$8,905.00
97 NA 0510.40E2 M2 1999 08 8073 1992074BJ00 41443 3200 0036Z3

The contract completion date of 12 January 2002 remains unchanged.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY [signature]<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>2 May 2002 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

# [A]MENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE: J | PAGE OF PAGES: 1 / 2 | | |
| [2. AMEND]MENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) MJ030 |

[6. ISSU]ED BY — CODE DACA63
ARMY ENGINEER DISTRICT, FTW
[P]O BOX 17300
[8]19 TAYLOR ST
FT. WORTH TX 76102-0300

7. ADMINISTERED BY (If other than item 6) — CODE M2M1JAA
SAN ANTONIO AREA OFFICE
COE FT WORTH DISTRICT
4204 WOODCOCK
SAN ANTONIO, TX 78228-1319

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
FIDELITY & DEPOSIT COMPANY OF MD
DARRELL LEONARD
3910 KESWICK ROAD
BALTIMORE MD 21211

CODE 1D3Z5 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MOD. OF CONTRACT/ORDER NO. DACA63-99-C-0039

X 10B. DATED (SEE ITEM 13) 23-Sep-1999

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

X A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.
52.243-4

[B.] THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This modification is for BC-Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

I. The above number contract is modified to provide for changes in the contract work within the general scope of the contract. This is a unilateral modification issued as an equitable adjustment in time and price for the following described work. This action has been taken by the Administrative Contracting Officer due to failure to reach agreement through negotiations. You are hereby notified of your rights pursuant to Contact Clause "Disputes", to file a claim with the contracting Officer.

Accounting and Appropriation Data: W45XMA90888559 Mod Amount $11,901.70.
97 NA 0510.40E2 M2 1999 08 8073 1992064BJ00 41443 3200 0036Z3

The contract completion date of 12 January 2002 remains unchanged.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>[S]ignature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY [signature]<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>10 June 2002 |

E[XC]EPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

**TAKEOVER AGREEMENT**

This Takeover Agreement is made this 26th day of June, 2001 by and between the United States of America, Department of the Army (hereinafter "the Obligee") and The Fidelity and Deposit Company of Maryland (hereinafter "Surety").

**WITNESSETH:**

WHEREAS, the Department of the Army entered into Contract No. DACA63-99-C-0039 (hereinafter "the Contract") with Sedona Contracting, Inc. (hereinafter "Sedona") for the Vehicle Operations and Maintenance Facility project at Lackland Air Force Base in San Antonio, Texas (hereinafter "the Project"), said Contract being incorporated herein by reference as if fully set forth; and

WHEREAS, in connection with the Contract, Sedona, as Principal, and the Surety made, executed and delivered to the Obligee a Performance Bond in the sum of $6,077,257.00 (Six Million Seventy-seven Thousand Two Hundred and Fifty-seven & 00/100 Dollars) and a Payment Bond in the sum of $2,500,000.00 (Two Million Five Hundred & 00/100 Dollars), as required by the Contract. The Performance Bond and Payment Bond are incorporated herein by reference as if fully set forth; and

WHEREAS, the Obligee declared Sedona in default of its obligation under the Contract, and terminated its right to proceed with the work on June 7, 2001; and

WHEREAS, the Obligee notified the Surety of its default termination of Sedona and demanded that the Surety satisfy its obligations under the Performance Bond; and

WHEREAS, with a complete and full reservation of all rights, claims, remedies, and defenses of itself and Sedona, the Surety has advised the Obligee that it will undertake completion of the Contract work;

NOW THEREFORE, in consideration of their mutual promises and agreements contained herein, the parties intending to be legally bound hereto agree as follows:

1. The Obligee confirms that the contract balance has been obligated under the Contract for the completion of the Contract work in accordance with its terms as modified by this Takeover Agreement. Obligee hereby agrees it will pay directly to the Surety, as the same shall become payable in accordance with the payment provisions of the Contract, as modified by this Takeover Agreement, all

sums due and payable under the Contract, including all unearned contract balances as they become earned and any and all monies contracted to be paid thereunder, as would have been payable to Sedona if there had been no default, but in no event more than the Contract amount, as modified in accordance with its terms. Within the requirements of the Anti-Deficiency Act, the Obligee agrees that, based on fiscal year availability, it has committed that adequate funding will be available for the contract price plus the negotiated amount of pending and any future modifications.

2. The Obligee represents to the Surety that the original amount of the Contract was $6,077,257.00 (Six Million Seventy-seven Thousand Two Hundred Fifty-seven & 00/100 Dollars); that the net change in the original contract amount is $64,854.51 (Sixty-four Thousand Eight Hundred Fifty-four & 51/100 Dollars); that the current contract amount including net change orders to date is $6,142,111.51 (Six Million One Hundred Forty-two Thousand One Hundred Eleven & 51/100 Dollars); that Sedona earned $3,196,396.00 (Three Million One Hundred Ninety-six Thousand Three Hundred Ninety-six & 00/100 Dollars) under the Contract; that the Obligee paid $2,886,371.00 (Two Million Eight Hundred Eighty-six Thousand Three Hundred Seventy-one & 00/100 Dollars) to Sedona and withheld $310,025.00 (Three Hundred Ten Thousand Twenty Five & 00/100 Dollars) under the Contract; and that $2,945,715.51 (Two Million Nine Hundred Forty-five Thousand Seven Hundred Fifteen & 51/100 Dollars) is the unpaid contract balance (including retainage). The Surety, Sedona and the Obligee reserve the right to challenge the accuracy of the amount of the contract balance when adjusted for all change orders, field orders, and any other extra work required under the Contract.

3. The Surety, as "completing Surety" under FAR 49.404, will perform or procure the performance of all work and other obligations of the Contract not presently completed or fulfilled, including the correction or repair of defective workmanship and nonconforming work. All of the provisions and clauses, plans and specifications of the Contract are hereby incorporated into this Takeover Agreement.

4. Pursuant to FAR 49.404(e), the Obligee will pay directly to the Surety the Contract balance unpaid at the time of default, but not in excess of the Surety's costs and expenses defined herein, in the manner provided by the Contract, subject to the following conditions;

(a) Pursuant to FAR 49.404(e)(1), any unpaid earnings of Sedona, including retained percentages and progress estimates for work accomplished before termination, shall be subject to debts due the Obligee by Sedona, and except to the extent such unpaid earnings may be required to permit

payment to Surety of its actual costs and expenses incurred in completion of the Contract work, exclusive of its payments and obligations under the Payment Bond given in connection with the Contract.

(b) Pursuant to FAR 49.404(e)(2), nothing contained in this Takeover Agreement waives or releases the Obligee's right to liquidated damages for delays in completion of the Contract work, except to the extent such delays are excusable under the Contract.

(c) Pursuant to FAR 49.404(e)(4), the Surety shall not be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging its liabilities under the Payment Bond. Furthermore, payments to the Surety to reimburse it for discharging its liabilities under the Payment Bond shall be only on the authority of:

(i) Mutual agreement among the Obligee, the Surety and Sedona; or

(ii) Determination of the Comptroller General as to payee and amount; or

(iii) Order of a court of competent jurisdiction.

(d) Except as used in the foregoing paragraph 4(a), "costs and expenses" is defined to mean all payments made by the Surety under the Performance Bond and Payment Bond.

(e) In the event that (i) the Surety has been paid its actual costs and expenses in completion of the Contract from the Contract proceeds and the Surety has been discharged of its liabilities under the Payment Bond, and (ii) there remains any Contract balance and/or unpaid earnings which are not withheld by Obligee, said monies shall be paid by the Obligee to Sedona by depositing funds in the Joint Control Account #384496 at Broadway Bank in San Antonio, Texas.

5. The Surety will, as "completing surety" under FAR 49.404, perform or procure the performance of all work and other obligations of the Contract not presently completed or fulfilled by entering into a contract with W.G. Yates & Sons Construction Co. All of the provisions and clauses, plans and specifications of the Contract are hereby incorporated into this Takeover Agreement. The Surety will complete the Contract according to the original Contract plans and specifications, as modified by bilateral or unilateral modifications by Obligee.

6. The Surety, who will have no employees or representatives on the jobsite, shall have no obligation to furnish any insurance under the Contract. W.G. Yates & Sons Construction Co. shall provide insurance coverage equivalent to that required under the Contract.

7. The current Contract Completion Date is September 29, 2001. Based on its understanding of the current status of completion, it is the Surety's intent to complete on or before that date. The Surety will prepare and submit an updated CPM schedule for the project by July 13, 2001, and will thereafter submit monthly reports of actual completion progress as contemplated under Paragraph 1.4.2 of Contract Specification Section 01010. The Surety expressly reserves its right and Sedona's right to contract time extensions for excusable delays prior to and after the termination for default as allowed under the terms of the Contract.

8. The Surety agrees to prepare, certify, and submit its requests for payment in accordance with the terms of the Contract. These requests for payment shall be submitted in the name of the Surety. The Obligee shall review all requests for payment and, if approved, forward payments to the Surety as the sole payee. The Surety will furnish records, documents, and information reasonably necessary to verify claimed completion costs. All payments will name The Fidelity and Deposit Company of Maryland as Payee and be wire transferred into Account #3800267212 at LaSalle Bank, 135 S. LaSalle, Chicago, IL 60603 (ABA number for wire transfer: 071000505). Should payment be made by check, it will be forwarded to the following address: 3901 Keswick Road, 5th Floor, Baltimore, MD 21211 Attention: Darrell Leonard. Vouchers or other evidence of the Surety's disbursements shall be prima facie evidence of the fact and extent of the Surety's costs of completion.

9. The Obligee shall not be bound to any contractor as a result of this Takeover Agreement and shall look only to the Surety for completion in accordance with the terms of this Takeover Agreement and the Contract. In that regard, any change orders or directions of the Obligee which would (a) decrease the Contract balance payable to the Surety hereunder; or (b) increase the performance obligations of the Surety hereunder; or (c) materially change the scope, manner or time of performance hereunder shall not be binding upon the Surety unless communicated in writing by the Obligee to the Surety. Changes in the scope of work to complete the Project shall be made in accordance with the Contract. Nothing in this paragraph shall be construed to restrict or modify the Obligee's rights to issue change orders in accordance with the Contract Documents.

10. The Surety acknowledges and agrees that its Performance Bond and Payment Bond for the Contract remain in full force and effect. The Obligee acknowledges that nothing contained in this Takeover Agreement shall waive, limit, alter or amend any of the Surety's obligations, rights, defenses, or liabilities under the Performance and Payment Bonds issued under the Contract.

11. The Surety's liability hereunder is strictly limited to the penal amount of the Performance Bond. In no event, in connection with its Performance Bond undertaking, will the Surety be required to expend, in addition to the balance of the funds remaining under the Contract, more than the penal amount of its Performance Bond.

12. The parties hereto acknowledge that the Surety's covenants and obligations of performance under this Takeover Agreement are undertaken pursuant to its obligations under the Performance Bond, and that all payments made by the Surety for performance of the Contract, including, but not limited to, any payments made by the Surety during the interim period after default and before remobilization and start up of the Project will be credited against and reduce the penal sum of the Performance Bond.

13. Neither W.G. Yates & Sons Construction Co. nor any subcontractor has the authority to obligate the Surety with respect to change orders, credits, back charges, or deductions from the contract balance without the Surety's prior written approval. Any agreements regarding warranty work as to materials supplied or work performed by Sedona or its subcontractors prior to termination or correction of latent defects in the work performed or materials supplied by Sedona or its subcontractors prior to termination shall require the written approval of the Surety.

14. The parties herein agree to cooperate fully with each other to the end that the Project may be completed as efficiently and quickly as reasonably possible under the circumstances. On-Site representatives of the Surety and the Obligee shall have bi-weekly partnering meetings to resolve in good faith technical and other issues regarding completion of the Contract.

15. The Surety expressly reserves all prior rights, equitable liens and subrogation rights under the Contract, at law, or in equity, of the Obligee, Sedona, Sedona's subcontractors, suppliers, materialmen and laborers, as well as the Surety's own rights dating back to the execution of the Performance Bond and the Payment Bond to include, but not limited to, those rights and remedies that accrued prior to the termination of Sedona and those rights and remedies that may accrue during the completion of the Contract. No waiver of such rights is agreed to or implied or intended, regardless of any provisions of this Takeover Agreement to the contrary. Nothing contained herein shall be construed to waive or modify any right, claim, defense and/or remedy of Sedona related to the Contract or to the Obligee's termination thereof, and all such rights of Sedona are hereby expressly reserved.

Furthermore, nothing contained herein shall create or be construed to create any new or additional rights against Sedona or Sedona's subcontractors, suppliers, materialmen or laborers.

16. The Obligee hereby acknowledges and consents to the assignment of all of Sedona's claims to Surety under the Contract, including, but not limited to, the right of the Surety to assert, in Surety's name and for its own benefit, all of Sedona's claims for equitable adjustment to Contract price or time under the subject Contract, whether arising prior to or after the default termination, as set forth in the General Agreement of Indemnity dated July 13, 1998, and the Obligee acknowledges that it has received a copy of said General Agreement of Indemnity and consents to the assignment to Surety contained therein. The Obligee specifically acknowledges that the claims assigned to the Surety in the General Agreement of Indemnity are those of Sedona arising under the Contract.

17. The Obligee expressly reserves any and all prior rights under the Contract or at law. No waiver of such rights is agreed to or implied or intended, regardless of any provisions of this Takeover Agreement to the contrary.

19. Nothing in this Takeover Agreement shall be construed as creating any rights for third parties arising out of the Performance or Payment Bonds.

20. This Takeover Agreement shall bind the parties and their successors, and shall not be modified except by a written document duly executed by the parties or their successors.

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement as of the date and year written above.

Zurich North America
for The Fidelity and Deposit Company of Maryland

Date: 6/26/01 By: [signature]

Title: Claims Counsel

DEPARTMENT OF THE ARMY

Date: 6/28/01 By: [signature]

Title: JOHN H. RODGERS
CONTRACTING OFFICER

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| J | 1 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(If applicable) |
|---|---|---|---|
| P00020 | 06-Aug-2001 | | |

6. ISSUED BY CODE DACA63
ARMY ENGINEER DISTRICT, FTW
PO BOX 17300
819 TAYLOR ST
FT. WORTH TX 76102-0300

7. ADMINISTERED BY (If other than item 6) CODE
**See Item 6**

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
FIDELITY & DEPOSIT COMPANY OF MD
DARRELL LEONARD
3910 KESWICK ROAD
BALTIMORE MD 21211

CODE 1D3Z5 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MOD. OF CONTRACT/ORDER NO.
DACA63-99-C-0039

X 10B. DATED (SEE ITEM 13)
23-Sep-1999

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
FAR 52.249-10

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Pursuant to the attached "Takeover Agreement," signed by all concerned parties, the contract is modified to change contractor's name and address as follows:

From: Sedona Contracting, Inc.
6800 Park Ten Blvd
San Antonio, TX 78213

To: Fidelity & Deposit Company of Maryland
3910 Keswick Road
Baltimore, MD 21211

All other terms and conditions remain the same.

"Reviewed for legal sufficiency
(AFARS 1-602-2)"

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>SEE ATTACHED FAX<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY<br>(Signature of Contracting Officer) | 16C. DATE SIGNED |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

# The United States Government

# Central Contractor Registration (CCR)

# DUNS / CAGE Code Inquiry

Return to CCR Home Page

---

## INQUIRY RESULTS

**Current Registration Status: Active in CCR; Registration valid until 08/01/2002.**

**General Information:**

| | |
|---|---|
| DUNS: | 006950000 |
| Duns+4: | |
| CAGE Code | 1D3Z5 |
| Legal Business Name : | FIDELITY & DEPOSIT CO OF MD |
| Doing Business As : | |
| Street Address 1 : | 3910 KESWICK ROAD |
| Street Address 2 : | |
| City: | BALTIMORE |
| State: | MD |
| Zip or Postal Code: | 21211 |
| Country: | USA |
| Division Name: | |
| Division Number: | |
| Bus Start Date: | 01/01/1890 |
| Corporate Web Page URL: | |

---

**Corporate Status:**

**Corporate Entity, Not Tax Exempt - State of Incorporation is MD**

---

**Business Types:**

- ☐ Tribal Government
- ☐ Research Institute
- ☐ Educational Institution
- ☐ Municipality

- ☐ Sheltered workshop
- ☐ Nonprofit Institution
- ☐ Historically Black College/University
- ☐ Foreign Supplier
- ☐ 8(a) Program Participant
- ☐ Service Location
- ☐ Manufacturer
- ☐ HUB Zone Business
- ☐ Subgroup
- ☑ Labor Surplus Area Firm
- ☐ Emerging Business /Other unlisted type
- ☐ Construction Firm
- ☐ S Corporation
- ☐ Limited Liability Company
- ☐ Minority Owned
- ☐ Woman Owned
- ☐ Small Disadvantaged Business
- ☐ Veteran Owned
- ☐ American Indian Owned
- ☐ Small Business

**Goods and Services:**

**NAICS Codes**

524126 Direct Property and Casualty Insurance Carriers

**Standard Industrial Codes**

6331 FIRE, MARINE, AND CASUALTY INSURANC
6351 SURETY INSURANCE

Enter DUNS Number for another query

DUNS: [ ] Plus 4: [ ]

[Reset] [Click Here to Submit]

**Return to the CCR Home Page**
**Return to DLIS Home Page**
**Return to DLA Home Page**

ccrinq1;CCR:A,A;TCCR:,; 03/27/01

52

00746

SECTION 01451

CONTRACTOR QUALITY CONTROL
**04/97**

PART 1 GENERAL

1.1 REFERENCES

The publications listed below form a part of this specification to the extent referenced. The publications are referred to in the text by basic designation only.

AMERICAN SOCIETY FOR TESTING AND MATERIALS (ASTM)

| | |
|---|---|
| ASTM D 3740 | (1994a) Minimum Requirements for Agencies Engaged in the Testing and/or Inspection of Soil and Rock as Used in Engineering Design and Construction |
| ASTM E 329 | (1995b) Agencies Engaged in the Testing and/or Inspection of Materials Used in Construction |

1.2 PAYMENT

Separate payment will not be made for providing and maintaining an effective Quality Control program, and all costs associated therewith shall be included in the applicable unit prices or lump-sum prices contained in the Bidding Schedule.

PART 2 PRODUCTS (Not Applicable)

PART 3 EXECUTION

3.1 GENERAL

The Contractor is responsible for quality control and shall establish and maintain an effective quality control system in compliance with the Contract Clause titled "Inspection of Construction." The quality control system shall consist of plans, procedures, and organization necessary to produce an end product which complies with the contract requirements. The system shall cover all construction operations, both onsite and offsite, and shall be keyed to the proposed construction sequence. The project superintendent will be held responsible for the quality of work on the job and is subject to removal by the Contracting Officer for non-compliance with quality requirements specified in the contract. The project superintendent in this context shall mean the individual with the responsibility for the overall management of the project including quality and production.

3.2 QUALITY CONTROL PLAN

3.2.1 General

The Contractor shall furnish for review by the Government, not later than 5

days after receipt of notice to proceed, the Contractor Quality Control (CQC) Plan proposed to implement the requirements of the Contract Clause titled "Inspection of Construction." The plan shall identify personnel, procedures, control, instructions, test, records, and forms to be used. The Government will consider an interim plan for the first 60 days of operation. Construction will be permitted to begin only after acceptance of the CQC Plan or acceptance of an interim plan applicable to the particular feature of work to be started. Work outside of the features of work included in an accepted interim plan will not be permitted to begin until acceptance of a CQC Plan or another interim plan containing the additional features of work to be started.

3.2.2 Content of the CQC Plan

The CQC Plan shall include, as a minimum, the following to cover all construction operations, both onsite and offsite, including work by subcontractors, fabricators, suppliers, and purchasing agents:

a. A description of the quality control organization, including a chart showing lines of authority and acknowledgment that the CQC staff shall implement the three phase control system for all aspects of the work specified. The staff shall include a CQC System Manager who shall report to the project superintendent.

b. The name, qualifications (in resume format), duties, responsibilities, and authorities of each person assigned a CQC function.

c. A copy of the letter to the CQC System Manager signed by an authorized official of the firm which describes the responsibilities and delegates sufficient authorities to adequately perform the functions of the CQC System Manager, including authority to stop work which is not in compliance with the contract. The CQC System Manager shall issue letters of direction to all other various quality control representatives outlining duties, authorities, and responsibilities. Copies of these letters shall also be furnished to the Government.

d. Procedures for scheduling, reviewing, certifying, and managing submittals, including those of subcontractors, offsite fabricators, suppliers, and purchasing agents. These procedures shall be in accordance with Section 01330 SUBMITTAL PROCEDURES.

e. Control, verification, and acceptance testing procedures for each specific test to include the test name, specification paragraph requiring test, feature of work to be tested, test frequency, and person responsible for each test. (Laboratory facilities will be approved by the Contracting Officer.)

f. Procedures for tracking preparatory, initial, and follow-up control phases and control, verification, and acceptance tests including documentation.

g. Procedures for tracking construction deficiencies from identification through acceptable corrective action. These procedures shall establish verification that identified deficiencies have been corrected.

h. Reporting procedures, including proposed reporting formats.

Stangeland/te

December 8, 1999
Serial No. 99-0039-0002

Lackland Resident Office

SUBJECT: Quality Control Plan, Contract No. DACA63-99-C-0039, BC - Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78228

Gentlemen:

Reference your Quality Control Program submitted by your serial letter DACA63-99-C-0039-0008 dated December 2, 1999. Your plan has been given an interim acceptance. Please be advised that no payment will be made until all deficiencies have been corrected.

The following program deficiencies have been noted:

a. The letter of direction to the CQCSM paragraph 3C states that all test results shall be submitted in triplicate no later than 3 days after the test. Results of all tests taken, both passing and failing tests, shall be recorded on the CQC report for the date taken. Reference specification section 01451, paragraph 3.7.1.e. You only need to submit a single copy of the results.

b. Your paragraph 4.4 states that the CQCM or other Sedona personnel will perform inspection of material received. This is not acceptable. Material inspection is specifically a CQC function and is required to be accomplished and documented in specification section 01451, paragraph 3.9.e.

c. Your paragraph 4.5 states that you will record off site inspections on an appropriate form. What form will be used?

d. Paragraph 4.6. What form will be used?

e. Paragraphs 5.4.A and 5.4.B say the same thing.

f. Paragraph 5.6 references some specific ASTM that you will follow for concrete testing procedures. You may follow these procedures as long as they are not in conflict with the contract requirements. For instance you state you will use ASTM

C 173-73 to check the air content of concrete, but the contract requires you to use ASTM C 231-91. Please provide references for statements 5.7.B & 5.7.C.

g. Paragraph 6.3 states that surveillance of suppliers is covered in the submittal review process. No information could be found on the submittal review process within your plan.

h. paragraph 7.2.E references the Discrepancy Report Log. Please include a copy of this log as an attachment to your plan.

i. Definable features of construction list features that are not applicable to this job. Please review this section and tailor to this contract.

j. Contractors Daily Quality Control Report Form needs to include space for the NAS activity. Reference specification section 01451, paragraph 3.9.c.

k. Contractors Daily Quality Control Report Form needs to include space to record who accomplished the work listed. Reference specification section 01451, paragraph 3.9.c.

l. Contractors Daily Quality Control Report Form needs to include space for submittals reviewed each day. Reference specification section 01451, paragraph 3.9.f.

m. The resume of Michael Harrell needs to include dates to show he has adequate experience.

n. Paragraph 9.2 does not list all attachments.

o. Your paragraph 5.5.A indicates that you will assign a quality control function to subcontractor personnel. Please include a copy of their resumes in this plan. Reference specification section 01451, paragraph 3.2.2.b.

p. Please include copies of the letters of direction to the additional CQC personnel. Reference specification section 01451, paragraph 3.2.2.c.

q. No information could be found for scheduling, reviewing, certifying, and managing submittals. Reference specification section 01451, paragraph 3.2.2.d.

r. Your section 5.0 does not contain information for each specific test to include the test name, specification paragraph requiring test, feature of work to be tested, test frequency, and person responsible for each test. Reference specification section 01451, paragraph 3.2.2.e.

s. You have not included procedures for tracking preparatory, initial, and follow-up control phases. Reference specification section 01451, paragraph 3.2.2.f. This can be as

simple as posting a list on the wall and checking off the appropriate items.

t. An alternate for the CQC System Manager shall be identified in the plan to serve in the event of the System Manager's absence. Reference specification section 01451, paragraph 3.2.4. Include a resume showing his qualifications and a copy of certificate of attendance at "Construction Quality Management For Contractors" course.

u. Please submit a copy of certificate of attendance at "Construction Quality Management For Contractors" course for Mr. Harrell. Reference specification section 01451, paragraph 3.9.f.

v. Your paragraph 4.1.A has left out many requirements for the preparatory phase including:

1. A physical examination of required materials, equipment, and sample work to assure that they are on hand, conform to approved shop drawings or submitted data, and are properly stored.

2. Discussion of procedures for controlling quality of the work including repetitive deficiencies. Document construction tolerances and workmanship standards for that feature of work.

3. A check to ensure that the portion of the plan for the work to be performed has been accepted by the Contracting Officer.

4. Discussion of the initial control phase.

Reference specification section 01451, paragraph 3.6.1.

w. Your paragraph 4.1.B has left out the requirement for the initial phase to review the activity analysis with each worker.

x. No reference could be found addressing the requirement for additional preparatory and initial phases. Reference specification section 01451, paragraph 3.6.4.

If you have any questions concerning the above, please do not hesitate to contact my Project Engineer, Mr. George Cardinas at (210) 675-7712/7713.

Sincerely,

Manuel Fano
Contracting Officer's Representative

Rcvd. 12/2/99.

SEDONA CONTRACTING, INC.
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78213
(210) 736-5335 / Fax 736-1927

December 2, 1999

U.S. Corps of Engineers
4204 Woodcock Street
Suite 245
San Antonio, Texas 78228
Attn: Mr. Manuel Fano

Serial Number: 99-0039-0008

Ref: Lackland AFB Vehicle Operations and Maintenance Complex
Contract Number: DACA63-99-C-0039

Sub: Quality Control Plan

Mr. Fano,

We hereby submit the Quality Control Plan for the above referenced project.

If you have any questions or need further information please do not hesitate to call.

Sincerely,

Michael Harrell
Quality Control Manager

Enclosures

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 E
San Antonio, Texas 78213

November 24, 1999

Area Engineer
U.S. Army Corps of Engineers
4204 Woodcock St., Suite 245
San Antonio, Texas 78228

Re.: Project Superintendent
Lackland AFB Vehicle Operations and Maintenance Complex
Contract No.: DACA63-99-C-0039

Gentlenmen:

This is to introduce Eddie Stuart as our representative for the Project Superintendent position at the above referenced project.

Very truly yours,

Hector Trinidad, President

Cc: Field file
Office File