# Sidney Whitehead Consulting

January 24, 2000

Hector Trinidad
Sedona Contracting, Inc.
San Antonio, Texas

Project: Vehicle Maintenance/Operations

Mr. Trinidad,

Thank you for the opportunity to work with you and Sedona on your current construction projects. I look forward to assisting Sedona in analysis of the construction progress on the above referenced project. I see no reason why I cannot effectively analyze delays to progress and resulting impact on this project. Following is a brief outline my experience in this field.

I have been in construction and construction related business most of my adult life, in the craft, supervision, management, and consulting levels. I have used computerized scheduling to plan, construct, manage, and analyze construction projects on a regular basis since the mid 1980's. I have used Primavera software for over five years, and have been involved in developing the specified CPM schedules approved and used on federal contracts as large or larger than this one for over three years. I am currently the designated scheduler on four San Antonio Area Corps of Engineers projects and two other federal projects.

The San Antonio Area Office has referred contractors to me. Bill Cooper, Gary Strangland, Butch Roseman, and Tom Armstrong are familiar with my abilities. Royce Colley, Ed Morgan, and Gary Hames (all former COE employees in the San Antonio Area or the Fort Worth District) are also familiar with my capabilities. As you are aware, Sedona Contracting has used my services on several projects including the current Laredo Border Patrol Station project managed by the Corps of Engineers at Lackland AFB, Texas.

Sincerely,

Sidney Whitehead

p. 1

Vehicle Operations Maintenence Cmplx
Randolph AFB
Report: Update turnaround

# Sedona Contracting

Run Date: 12JUL00
Data Date 28APR00

| Act ID | Activity Description | Orig Dur | Rem Dur | Rev Dur | Actual Start | Actual Finish | Early Start | Prev % | Scheduled Value | Prev Earned | Rev % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Vehicle Operations Maintenence Cmplx | | | | | | | | | | | |
| COVERS ALL BID ITEMS | | | | | | | | | | | |
| 010010.P | PROJECT START | 0 | 0 | | 15NOV99 | 15NOV99 | 15NOV99 A | 100 | 0 | 0 | |
| 010025.P | SUBMIT QC PLAN | 20 | 0 | | 15NOV99 | 09DEC99 | 15NOV99 A | 100 | 0 | 0 | |
| 010030.P | COORDINATION MEETING | 1 | 1 | | | | 28APR00 | 0 | 0 | 0 | |
| 010031.P | SUBMIT SWPP PLAN | 7 | 0 | | 15NOV99 | 24NOV99 | 15NOV99 A | 100 | 0 | 0 | |
| 010035.P | SUBMIT SAFETY PLAN | 25 | 0 | | 15NOV99 | 07DEC99 | 15NOV99 A | 100 | 0 | 0 | |
| 010055.P | REVIEW QC PLAN | 10 | 0 | | 05DEC99 | 13DEC99 | 05DEC99 A | 100 | 0 | 0 | |
| 010210.P | SUBMIT SITEWORK | 15 | 0 | | 16DEC99 | 28DEC99 | 16DEC99 A | 100 | 0 | 0 | |
| 010215.P | SUBMIT DRILLED PIERS | 15 | 0 | | 16DEC99 | 28DEC99 | 16DEC99 A | 100 | 0 | 0 | |
| 010217.P | SUBMIT WATER UTILITIES | 25 | 0 | | 16DEC99 | 28DEC99 | 16DEC99 A | 100 | 0 | 0 | |
| 010225.P | SUBMIT STROM DRAINAGE | 25 | 0 | | 16DEC99 | 18JAN00 | 16DEC99 A | 100 | 0 | 0 | |
| 010230.P | SUBMIT GAS DISTRIBUTION | 25 | 15 | | 28NOV99 | | 28NOV99 A | 40 | 0 | 0 | |
| 010235.P | SUBMIT SEWER UTILITIES | 25 | 0 | | 24DEC99 | 07JAN00 | 24DEC99 A | 100 | 0 | 0 | |
| 010250.P | REVIEW SITE WORK | 60 | 0 | | 24DEC99 | 07JAN00 | 24DEC99 A | 100 | 0 | 0 | |
| 010255.P | REVIEW DRILLED PIERS | 60 | 0 | | 28DEC99 | 28DEC99 | 28DEC99 A | 100 | 0 | 0 | |
| 010257.P | REVIEW WATER UTILITIES | 10 | 0 | | 29DEC99 | 15FEB00 | 29DEC99 A | 100 | 0 | 0 | |
| 010265.P | REVIEW STROM DRAINAGE | 10 | 0 | | 18JAN00 | 01FEB00 | 18JAN00 A | 100 | 0 | 0 | |
| 010270.P | REVIEW GAS DISTRIBUTION | 60 | 60 | | | | 14MAY00 | 0 | 0 | 0 | |
| 010275.P | REVIEW SEWER UTILITIES | 10 | 0 | | 07JAN00 | 18JAN00 | 07JAN00 A | 100 | 0 | 0 | |
| 010280.P | SUBMIT LANDSCAPE | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010285.P | REVIEW LANDSCAPE | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010315.P | SUBMIT REINFORCEMENT | 15 | 0 | | 11JAN00 | 21JAN00 | 11JAN00 A | 100 | 0 | 0 | |
| 010320.P | SUBMIT CONCRETE | 15 | 0 | | 27DEC99 | 10JAN00 | 27DEC99 A | 100 | 0 | 0 | |
| 010325.P | SUBMIT PRECAST | 45 | 0 | | 24JAN00 | 08MAR00 | 24JAN00 A | 100 | 0 | 0 | |
| 010330.P | REVIEW PRECAST | 60 | 60 | | | | 29APR00 | 0 | 0 | 0 | |
| 010335.P | REVIEW REINFORCEMENT | 60 | 1 | | 21JAN00 | | 21JAN00 A | 99 | 0 | 0 | |
| 010340.P | REVIEW CONCRETE | 60 | 0 | | 10JAN00 | 10JAN00 | 10JAN00 A | 100 | 0 | 0 | |
| 010410.P | SUBMIT MASONRY | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010420.P | REVIEW MASONRY | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010510.P | SUBMIT STRUCTURAL STEEL | 50 | 0 | | 25JAN00 | 23MAR00 | 25JAN00 A | 100 | 0 | 0 | |
| 010515.P | REVIEW STRUCTURAL STEEL | 60 | 54 | | 23MAR00 | | 23MAR00 A | 10 | 0 | 0 | |
| 010520.P | FAB/DEL STRUCT STEEL (INCL | 45 | 45 | | | | 22JUN00 | 0 | 0 | 0 | |
| 010600.P | SUBMIT CUSTOM CASEWORK | 60 | 60 | | | | 29APR00 | 0 | 0 | 0 | |
| 010605.P | REVIEW CUSTOM CASEWORK | 60 | 60 | | | | 28JUN00 | 0 | 0 | 0 | |
| 010610.P | FAB/DELIVER CUSTOM CASEWORK | 45 | 45 | | | | 27AUG00 | 0 | 0 | 0 | |
| 010700.P | SUBMIT EIFS | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010705.P | REVIEW EFIS | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010710.P | SUBMIT SSMR | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010715.P | REVIEW SSMR | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010720.P | FAB/DELIVER SSMR | 21 | 21 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010800.P | SUBMIT STEEL DOORS/FRAMES | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010805.P | REVIEW STEEL DOORS/FRAMES | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010808.P | FAB/DELIVER STEEL DOORS/FRAMES | 21 | 21 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010810.P | SUBMIT ALUMINUM & STOREFRONT | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010815.P | REVIEW ALUMINUM & STOREFRONT | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010820.P | SUBMIT STEEL WINDOWS | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010825.P | REVIEW STEEL WINDOWS | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010826.P | FAB/DELIVER STEEL WINDOWS | 21 | 21 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010830.P | SUBMIT OVERHEAD DOORS | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010835.P | REVIEW OVERHEAD DOORS | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010836.P | FAB/DELIVER OVERHEAD DOORS | 45 | 45 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010840.P | SUBIMIT WOOD DOORS | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010845.P | REVIEW WOOD DOORS | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010846.P | FAB/DELIVER WOOD DOORS | 21 | 21 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010850.P | SUBMIT ALUMINUM WINDOWS | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010855.P | REVIEW ALUMINUM WINDOWS | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010856.P | FAB/DELVER ALUMINUM WINDOWS | 14 | 14 | | | | 12AUG00 | 0 | 0 | 0 | |

Page 1A

| Act ID | Activity Description | Orig Dur | Rem Dur | Rev Dur | Actual Start | Actual Finish | Early Start | Prev % | Scheduled Value | Prev Earned | Rev % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 010860.P | SUBMIT BUILDER'S HARDWARE | 45 | 0 | | 03FEB00 | 08MAR00 | 03FEB00 A | 100 | 0 | 0 | |
| 010865.P | REVIEW BUILDER'S HARDWARE | 60 | 35 | | 08MAR00 | | 08MAR00 A | 40 | 0 | 0 | |
| 010875.P | FAB/DELLIVER HARDWARE | 45 | 45 | | | | 03JUN00 | 0 | 0 | 0 | |
| 010910.P | SUBMIT CERAMIC TILE | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010915.P | REVIEW CERAMIC TILE | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010916.P | FAB/DELIVER CERAMIC TILE | 50 | 50 | | | | 25NOV00 | 0 | 0 | 0 | |
| 010920.P | SUBMIT RESILIENT FLOORS | 45 | 0 | | 30MAR00 | 26APR00 | 30MAR00 A | 100 | 0 | 0 | |
| 010925.P | REVIEW RESILIENT FLOORS | 60 | 55 | | 26APR00 | | 26APR00 A | 10 | 0 | 0 | |
| 010926.P | FAB/DELIVER RESILIENT FLOOR | 28 | 28 | | | | 23JUN00 | 0 | 0 | 0 | |
| 010930.P | SUBMIT CARPET | 45 | 0 | | 30MAR00 | 17APR00 | 30MAR00 A | 100 | 0 | 0 | |
| 010935.P | REVIEW CARPET | 60 | 46 | | 17APR00 | | 17APR00 A | 24 | 0 | 0 | |
| 010936.P | FAB/DELIVER CARPET | 28 | 28 | | | | 25NOV00 | 0 | 0 | 0 | |
| 010940.P | SUBMIT CONDUCTIVE FLOOR | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 010945.P | REVIEW CONDUCTIVE FLOOR | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 010946.P | FAB/DELIVER CONDUCTIVE FLOOR | 21 | 21 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010950.P | SUBMIT PAINTING | 45 | 40 | | 28APR00 | | 28APR00 A | 10 | 0 | 0 | |
| 010955.P | REVIEW PAINTING | 60 | 60 | | | | 08JUN00 | 0 | 0 | 0 | |
| 010960.P | SUBMIT COLOR BOARD | 45 | 45 | | | | 12AUG00 | 0 | 0 | 0 | |
| 010965.P | REVIEW COLOR BOARD | 60 | 60 | | | | 26SEP00 | 0 | 0 | 0 | |
| 011000.P | SUBMIT SPECIALTIES | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 011005.P | REVIEW SPECIALTIES | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 011010.P | SUBMIT LOCKERS | 45 | 0 | | 24FEB00 | 14MAR00 | 24FEB00 A | 100 | 0 | 0 | |
| 011020.P | REVIEW LOCKERS | 60 | 45 | | 14MAR00 | | 14MAR00 A | 25 | 0 | 0 | |
| 011025.P | FAB/DELIVER LOCKERS | 21 | 21 | | | | 13JUN00 | 0 | 0 | 0 | |
| 011200.P | SUBMIT FURNISHINGS | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 011205.P | REVIEW FURNISHINGS | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 011206.P | FAB/DELIVER FURNISHINGS | 28 | 28 | | | | 12AUG00 | 0 | 0 | 0 | |
| 011300.P | SUBMIT FIRE ALARM, ADDRESSABLE | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 011305.P | REVIEW FIRE ALARM, ADDRESSABLE | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 011306.P | FAB/DELIVER FIRE ALARM SYSTEM | 21 | 21 | | | | 12AUG00 | 0 | 0 | 0 | |
| 011500.P | SUBMIT FIRE SPRINKLER SYSTEM | 45 | 45 | | | | 29APR00 | 0 | 0 | 0 | |
| 011505.P | REVIEW FIRE SPRINKLER SYSTEM | 60 | 60 | | | | 13JUN00 | 0 | 0 | 0 | |
| 011510.P | SUBMIT PLUMBING | 45 | 0 | | 30MAR00 | 11APR00 | 30MAR00 A | 100 | 0 | 0 | |
| 011515.P | REVIEW PLUMBING | 60 | 42 | | 11APR00 | | 11APR00 A | 30 | 0 | 0 | |
| 011520.P | SUBMIT HVAC | 45 | 0 | | 16MAR00 | 12APR00 | 16MAR00 A | 100 | 0 | 0 | |
| 011525.P | REVIEW HVAC | 60 | 42 | | 12APR00 | | 12APR00 A | 30 | 0 | 0 | |
| 011526.P | FAB/DELIVER HVAC EQUIPMENT | 45 | 45 | | | | 16JUN00 | 0 | 0 | 0 | |
| 011530.P | SUBMIT DUCTWORK | 28 | 28 | | | | 29APR00 | 0 | 0 | 0 | |
| 011535.P | REVIEW DUCTWORK | 60 | 60 | | | | 27MAY00 | 0 | 0 | 0 | |
| 011536.P | FAB/DELIVER DUCTWORK | 14 | 14 | | | | 26JUL00 | 0 | 0 | 0 | |
| 011540.P | SUBMIT CONTROLS | 50 | 50 | | | | 29APR00 | 0 | 0 | 0 | |
| 011545.P | REVIEW CONTROLS | 60 | 60 | | | | 18JUN00 | 0 | 0 | 0 | |
| 011546.P | FAB/DELIVER CONTROLS | 28 | 28 | | | | 17AUG00 | 0 | 0 | 0 | |
| 011550.P | SUBMIT T&B | 60 | 0 | | 30MAR00 | 12APR00 | 30MAR00 A | 100 | 0 | 0 | |
| 011555.P | REVIEW T&B | 60 | 42 | | 12APR00 | | 12APR00 A | 30 | 0 | 0 | |
| 011560.P | SUBMIT COMMISSIONING | 60 | 60 | | | | 18JUN00 | 0 | 0 | 0 | |
| 011565.P | REVIEW COMMISSIONING | 60 | 60 | | | | 17AUG00 | 0 | 0 | 0 | |
| 011600.P | SUBMIT ELECTRICAL DISTRIBUTION | 14 | 0 | | 27MAR00 | 01MAR00 | 27MAR00 A | 100 | 0 | 0 | |
| 011605.P | REVIEW ELECTRICAL DISTRIBUTION | 60 | 30 | | 01MAR00 | | 01MAR00 A | 50 | 0 | 0 | |
| 011610.P | SUBMIT ELECTRICAL | 45 | 14 | | 27JAN00 | | 27JAN00 A | 70 | 0 | 0 | |
| 011615.P | REVIEW ELECTRICAL | 60 | 60 | | | | 13MAY00 | 0 | 0 | 0 | |
| 011620.P | FAB/DELIVER ELECTRICAL EQUIPMENT | 28 | 28 | | | | 12JUL00 | 0 | 0 | 0 | |
| 011625.P | FAB/DELIVER TRANSFORMERS | 35 | 35 | | | | 12JUL00 | 0 | 0 | 0 | |
| | | 426 | 261 | | 15NOV99 | | 15NOV99 A | 24 | 0 | 0 | |
| VEHICLE OPS BUILDING | | | | | | | | | | | |
| 020020.A | ESTABLISH BUILDING SUBGRADE | 10 | 0 | | 23MAR00 | 27MAR00 | 23MAR00 A | 100 | 13,566 | 13,566 | |
| 020030.A | SELECT FILL | 13 | 13 | | | | 10JUN00 | 0 | 6,480 | 0 | |
| 030020.A | FORM / REINFORCE BEAMS | 27 | 27 | | | | 21JUL00 | 0 | 52,500 | 0 | |
| 030030.A | PLACE BEAM CONCRETE | 14 | 14 | | | | 17AUG00 | 0 | 73,000 | 0 | |
| 030035.A | SET CONCRETE PRECAST | 21 | 21 | | | | 31AUG00 | 0 | 59,000 | 0 | |
| 030040.A | FORM/PLACE CONCRETE SLAB | 14 | 14 | | | | 21SEP00 | 0 | 56,960 | 0 | |
| 040000.A | SET MASONRY | 10 | 10 | | | | 23NOV00 | 0 | 12,000 | 0 | |

| Act ID | Activity Description | Orig Dur | Rem Dur | Rev Dur | Actual Start | Actual Finish | Early Start | Prev % | Scheduled Value | Prev Earned | Rev % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 050000.A | UNLOAD STRUCTURAL STEEL (INCL | 2 | 2 | | | | 06AUG00 | 0 | 0 | 0 | |
| 050005.A | ERECT STRUCTURAL STEEL (INCLUDE | 15 | 15 | | | | 12OCT00 | 0 | 42,000 | 0 | |
| 050010.A | EXTERIOR STEEL STUDS | 14 | 14 | | | | 06NOV00 | 0 | 10,000 | 0 | |
| 050015.A | INTERIOR STEEL STUDS | 7 | 7 | | | | 18NOV00 | 0 | 8,100 | 0 | |
| 050020.A | ERECT JOIST/DECK | 10 | 10 | | | | 27OCT00 | 0 | 7,000 | 0 | |
| 050025.A | INSTALL MISC METALS | 7 | 7 | | | | 03DEC00 | 0 | 1,000 | 0 | |
| 060005.A | CUSTOM CASEWORK | 5 | 5 | | | | 28DEC00 | 0 | 1,000 | 0 | |
| 070000.A | DAMPPROOFING | 3 | 3 | | | | 20NOV00 | 0 | 3,100 | 0 | |
| 070005.A | INSTALL EIFS SYSTEM | 12 | 12 | | | | 12DEC00 | 0 | 4,200 | 0 | |
| 070010.A | INSTALL SSMR | 10 | 10 | | | | 08NOV00 | 0 | 4,900 | 0 | |
| 070015.A | INSTALL METAL PANELS | 4 | 4 | | | | 16NOV00 | 0 | 3,500 | 0 | |
| 080000.A | SET METAL DOOR FRAMES | 5 | 5 | | | | 20NOV00 | 0 | 2,500 | 0 | |
| 080005.A | SET METAL DOORS | 5 | 5 | | | | 25NOV00 | 0 | 1,000 | 0 | |
| 080010.A | SET WOOD DOORS | 2 | 2 | | | | 16DEC00 | 0 | 1,000 | 0 | |
| 080020.A | SET STEEL WINDOWS | 5 | 5 | | | | 25NOV00 | 0 | 1,500 | 0 | |
| 080025.A | SET ALUMINUM WINDOWS | 4 | 4 | | | | 30NOV00 | 0 | 1,500 | 0 | |
| 080030.A | INSTALL BUIDER'S HARDWARE | 14 | 14 | | | | 04DEC00 | 0 | 2,500 | 0 | |
| 090000.A | INSTALL GYPSUM BOARD | 15 | 15 | | | | 03DEC00 | 0 | 1,000 | 0 | |
| 090005.A | TAPE/FLOAT | 10 | 10 | | | | 18DEC00 | 0 | 1,000 | 0 | |
| 090010.A | PAINT | 10 | 10 | | | | 28DEC00 | 0 | 1,000 | 0 | |
| 090015.A | SET SAT GRID | 7 | 7 | | | | 07JAN01 | 0 | 1,000 | 0 | |
| 090020.A | SET SAT | 5 | 5 | | | | 23JAN01 | 0 | 800 | 0 | |
| 090025.A | RESILIENT FLOORS | 5 | 5 | | | | 14JAN01 | 0 | 1,400 | 0 | |
| 090030.A | CONDUCTIVE FLOORS | 3 | 3 | | | | 19JAN01 | 0 | 1,500 | 0 | |
| 090035.A | CARPET | 4 | 4 | | | | 18JAN01 | 0 | 1,400 | 0 | |
| 090045.A | CERAMIC TILE | 4 | 4 | | | | 28DEC00 | 0 | 1,400 | 0 | |
| 100000.A | TOILET PARTITIONS | 2 | 2 | | | | 08JAN01 | 0 | 600 | 0 | |
| 100005.A | INSTALL MISC SPECIALTY ITEMS/EQ | 2 | 2 | | | | 07JAN01 | 0 | 600 | 0 | |
| 100010.A | WALL AND CORNER GUARD | 2 | 2 | | | | 07JAN01 | 0 | 600 | 0 | |
| 100015.A | SIGNAGE | 2 | 2 | | | | 23JAN01 | 0 | 600 | 0 | |
| 100020.A | INSTALL LOCKERS | 2 | 2 | | | | 07JAN01 | 0 | 1,400 | 0 | |
| 100200.A | SET LABORATORY CASEWORK | 3 | 3 | | | | 18DEC00 | 0 | 1,000 | 0 | |
| 120005.A | SET MISC FURNISHINGS | 3 | 3 | | | | 23JAN01 | 0 | 1,000 | 0 | |
| 120030.A | FIRE DETECTION AND ALARM GEAR | 3 | 3 | | | | 21NOV00 | 0 | 1,800 | 0 | |
| 120035.A | FIRE DETECTION AND ALARM DEVICES | 2 | 2 | | | | 07JAN01 | 0 | 1,000 | 0 | |
| 120040.A | TEST FIRE ALARM/PROTECTION | 2 | 2 | | | | 09JAN01 | 0 | 800 | 0 | |
| 150020.A | R/I IN/UNDER SLAB PLUMBING | 14 | 14 | | | | 27MAY00 | 0 | 12,000 | 0 | |
| 150025.A | R/I & TEST ABOVE SLAB PLUMBING | 7 | 7 | | | | 20NOV00 | 0 | 2,000 | 0 | |
| 150030.A | SET PLUMBING FIXTURES | 7 | 7 | | | | 01JAN01 | 0 | 1,400 | 0 | |
| 150035.A | PLUMBING TRIM | 2 | 2 | | | | 08JAN01 | 0 | 1,000 | 0 | |
| 150040.A | R/I FIRE SPRINKLER RISER/VALVES | 5 | 5 | | | | 12AUG00 | 0 | 2,000 | 0 | |
| 150045.A | R/I FIRE PROTECTION | 10 | 10 | | | | 06NOV00 | 0 | 2,000 | 0 | |
| 150050.A | FIRE PROTECTION DROPS | 7 | 7 | | | | 16NOV00 | 0 | 1,000 | 0 | |
| 150055.A | FIRE PROTECTION HEADS | 7 | 7 | | | | 23NOV00 | 0 | 1,200 | 0 | |
| 150060.A | FIRE PROTECTION TEST | 2 | 2 | | | | 30NOV00 | 0 | 1,000 | 0 | |
| 150070.A | SET AHU'S | 2 | 2 | | | | 18DEC00 | 0 | 1,000 | 0 | |
| 150075.A | SET CONDENSORS | 2 | 2 | | | | 13DEC00 | 0 | 1,000 | 0 | |
| 150080.A | R/I DUCTWORK | 15 | 15 | | | | 05DEC00 | 0 | 1,000 | 0 | |
| 150085.A | AIR DEVICES | 5 | 5 | | | | 14JAN01 | 0 | 1,000 | 0 | |
| 150090.A | SET HVAC CONTROLS PANELS | 3 | 3 | | | | 18DEC00 | 0 | 1,700 | 0 | |
| 150095.A | SET HVAC CONTROL DEVICES | 7 | 7 | | | | 07JAN01 | 0 | 1,000 | 0 | |
| 150100.A | TEST AND BALANCE W/REPORT | 14 | 14 | | | | 28JAN01 | 0 | 1,000 | 0 | |
| 150105.A | PRE-COMMISION ACTIVITY | 22 | 22 | | | | 18FEB01 | 0 | 1,000 | 0 | |
| 150110.A | TEST & START UP HVAC | 2 | 2 | | | | 19JAN01 | 0 | 1,000 | 0 | |
| 150115.A | WARRANTY TAGS | 7 | 7 | | | | 20DEC00 | 0 | 1,000 | 0 | |
| 160020.A | R/I IN/UNDER SLAB ELECTRIC | 10 | 10 | | | | 31AUG00 | 0 | 15,000 | 0 | |
| 160025.A | R/ I WALL ELECTRIC | 10 | 10 | | | | 06NOV00 | 0 | 2,000 | 0 | |
| 160030.A | R/I CEILING ELECTRIC | 5 | 5 | | | | 16NOV00 | 0 | 2,000 | 0 | |
| 160035.A | SET LIGHTS | 7 | 7 | | | | 14JAN01 | 0 | 1,800 | 0 | |
| 160040.A | ELECTRIC DEVICES | 4 | 4 | | | | 07JAN01 | 0 | 1,700 | 0 | |
| 160045.A | INSTALL LIGHTNING PROTECTION | 10 | 10 | | | | 06NOV00 | 0 | 1,500 | 0 | |
| 160050.A | INSTALL TELEPHONE SYSTEM | 4 | 4 | | | | 18DEC00 | 0 | 1,800 | 0 | |

| Act ID | Activity Description | Orig Dur | Rem Dur | Rev Dur | Actual Start | Actual Finish | Early Start | Prev % | Scheduled Value | Prev Earned | Rev % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 160055.A | INSTALL PA AUDIO SYSTEM | 4 | 4 | | | | 22DEC00 | 0 | 1,800 | 0 | |
| 160060.A | SET TRANSFORMER | 2 | 2 | | | | 18AUG00 | 0 | 2,000 | 0 | |
| 160065.A | SET INT ELCT GEAR | 2 | 2 | | | | 18DEC00 | 0 | 2,000 | 0 | |
| 160075.A | TEST & START UP ELECTRICAL | 2 | 2 | | | | 11JAN01 | 0 | 1,000 | 0 | |
| 160080.P | ELECTRICAL TRAINING | 3 | 3 | | | | 18FEB01 | 0 | 1,000 | 0 | |
| 950000.A | QC PUNCLIST | 10 | 10 | | | | 10JAN01 | 0 | 0 | 0 | |
| 960005.A | PREFINAL INSPECTION | 2 | 2 | | | | 12MAR01 | 0 | 0 | 0 | |
| 960010.P | FINAL INSPECTION NOTICE | 14 | 14 | | | | 14MAR01 | 0 | 0 | 0 | |
| 960015.P | FINAL INSPECTION | 3 | 3 | | | | 22APR01 | 0 | 0 | 0 | |
| 990000.A | COMPLETE VEHICLE OPS | 1 | 1 | | | | 03FEB01 | 0 | 0 | 0 | |
| 990000.P | PROJECT COMPLETE | 0 | 0 | | | | 15OCT01 | 0 | 0 | 0 | |
| | | 542 | 506 | | 23MAR00 | | 23MAR00 A | 2 | 458,088 | 13,586 | |
| VEHICLE OPS SUPPORT/SITE WORK | | | | | | | | | | | |
| 020010.A | SITE CUT FILL | 16 | 16 | | | | 11MAY00 | 0 | 38,760 | 0 | |
| 020015.A | SITE DEMO | 1 | 0 | | 04JAN00 | 08JAN00 | 04JAN00 A | 100 | 27,000 | 27,000 | |
| 020060.A | SITE WATER UTILITIES | 21 | 0 | | 13MAR00 | 13MAR00 | 13MAR00 A | 100 | 14,500 | 14,500 | |
| 020070.A | SITE FIRELINE | 21 | 0 | | 13MAR00 | 20MAR00 | 13MAR00 A | 100 | 14,000 | 14,000 | |
| 020075.A | SITE STORM DRAIN UTILITY | 21 | 5 | | 29MAR00 | | 29MAR00 A | 75 | 14,000 | 10,500 | |
| 020080.A | SITE SANITARY UTILITY | 21 | 0 | | 20MAR00 | 27APR00 | 20MAR00 A | 100 | 14,000 | 14,000 | |
| 020095.A | LIME TREATMENT | 7 | 7 | | | | 11AUG00 | 0 | 1,840 | 0 | |
| 020100.A | PREP SITE SUBGRADE | 7 | 7 | | | | 04AUG00 | 0 | 1,000 | 0 | |
| 020110.A | LAY BASE COURSE | 10 | 10 | | | | 19DEC00 | 0 | 2,500 | 0 | |
| 020120.A | SET WALKS AND CURBS | 10 | 10 | | | | 03DEC00 | 0 | 1,200 | 0 | |
| 020130.A | BITUMINOUS PAVING | 7 | 7 | | | | 28DEC00 | 0 | 2,500 | 0 | |
| 020140.A | INSTALL IRRIGARION | 5 | 5 | | | | 05JAN01 | 0 | 2,000 | 0 | |
| 020150.A | LAY TOPSOIL | 3 | 3 | | | | 10JAN01 | 0 | 1,600 | 0 | |
| 020160.A | SET FENCING | 10 | 10 | | | | 13JAN01 | 0 | 1,600 | 0 | |
| 020170.A | SET LANDSCAPE | 3 | 3 | | | | 01APR01 | 0 | 1,000 | 0 | |
| 020180.A | ESTABLISH / MAINTAIN TURFF | 92 | 92 | | | | 04APR01 | 0 | 1,000 | 0 | |
| 021670.A | IINSTALL ELECTRIC DISTRIBUTION | 25 | 25 | | | | 29MAY00 | 0 | 10,000 | 0 | |
| 122000.A | CATHODIC PROTECTION & TEST | 8 | 8 | | | | 27MAY00 | 0 | 1,500 | 0 | |
| | | 535 | 420 | | 04JAN00 | | 04JAN00 A | 28 | 150,000 | 80,000 | |
| VEHICLE OPS 457 mm PIERS | | | | | | | | | | | |
| 020050.A | DRILLED PIERS 457 mm | 14 | 14 | | | | 07JUL00 | 0 | 7,875 | 0 | |
| | | 14 | 14 | | | | 07JUL00 | 0 | 7,875 | 0 | |
| VEHICLE OPS 610 mm PIERS | | | | | | | | | | | |
| 020040.A | DRILLED PIERS 610 mm | 14 | 14 | | | | 23JUN00 | 0 | 3,600 | 0 | |
| | | 14 | 14 | | | | 23JUN00 | 0 | 3,600 | 0 | |
| VEHICLE MAINT BUILDING | | | | | | | | | | | |
| 010020.P | GENERAL CONTRACTOR MOBILIZE | 20 | 0 | | 15NOV99 | 04DEC99 | 15NOV99 A | 100 | 25,000 | 25,000 | |
| 020005.P | SITE MOBILIZE | 15 | 0 | | 27DEC99 | 05JAN00 | 27DEC99 A | 100 | 20,000 | 20,000 | |
| 020020.C | ESTABLISH BUILDING SUBGRADE | 14 | 0 | | 29DEC99 | 14JAN00 | 29DEC99 A | 100 | 83,980 | 83,980 | |
| 020030.C | SUBGRADE/FILL | 17 | 17 | | | | 27JUN00 | 0 | 78,812 | 0 | |
| 030020.C | FORM / REINFORCE BEAMS | 27 | 22 | | 22MAR00 | | 22MAR00 A | 20 | 203,279 | 40,856 | |
| 030030.C | PLACE BEAM CONCRETE | 14 | 10 | | 18APR00 | | 18APR00 A | 30 | 270,000 | 81,000 | |
| 030035.C | SET CONCRETE PRECAST | 14 | 14 | | | | 28JUN00 | 0 | 93,000 | 0 | |
| 030040.C | FORM/PLACE CONCRETE SLAB | 21 | 21 | | | | 14JUL00 | 0 | 280,000 | 0 | |
| 030045.C | FORM/PLACE CONCRETE @ PRECAST | 14 | 14 | | | | 12JUL00 | 0 | 105,000 | 0 | |
| 040000.C | SET MASONRY | 28 | 28 | | | | 24OCT00 | 0 | 225,000 | 0 | |
| 050000.C | UNLOAD STRUCTURAL STEEL (INCL | 3 | 3 | | | | 08AUG00 | 0 | 0 | 0 | |
| 050005.C | ERECT STRUCTURAL STEEL (INCLUDE | 30 | 30 | | | | 09AUG00 | 0 | 583,000 | 0 | |
| 050010.C | EXTERIOR STEEL STUDS | 21 | 21 | | | | 23SEP00 | 0 | 95,500 | 0 | |
| 050015.C | INTERIOR STEEL STUDS | 15 | 15 | | | | 14OCT00 | 0 | 42,000 | 0 | |
| 050020.C | ERECT JOIST/DECK | 15 | 15 | | | | 08SEP00 | 0 | 52,500 | 0 | |
| 050025.C | INSTALL MISC METALS | 21 | 21 | | | | 21NOV00 | 0 | 3,000 | 0 | |
| 060005.C | CUSTOM CASEWORK | 9 | 9 | | | | 31DEC00 | 0 | 2,000 | 0 | |
| 070000.C | DAMPPROOFING | 10 | 10 | | | | 14OCT00 | 0 | 13,500 | 0 | |
| 070005.C | INSTALL EIFS SYSTEM | 21 | 21 | | | | 21NOV00 | 0 | 25,500 | 0 | |
| 070010.C | INSTALL SSMR | 20 | 20 | | | | 23SEP00 | 0 | 447,500 | 0 | |
| 070015.C | INSTALL METAL PANELS | 10 | 10 | | | | 13OCT00 | 0 | 24,000 | 0 | |
| 080000.C | SET METAL DOOR FRAMES | 10 | 10 | | | | 14OCT00 | 0 | 9,000 | 0 | |
| 080005.C | SET METAL DOORS | 10 | 10 | | | | 24OCT00 | 0 | 2,000 | 0 | |

| Act ID | Activity Description | Orig Dur | Rem Dur | Rev Dur | Actual Start | Actual Finish | Early Start | Prev % | Scheduled Value | Prev Earned | Rev % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 080010.C | SET WOOD DOORS | 4 | 4 | | | | 01DEC00 | 0 | 2,000 | 0 | |
| 080015.C | SET OVERHEAD DOORS | 4 | 4 | | | | 03NOV00 | 0 | 74,500 | 0 | |
| 080020.C | SET STEEL WINDOWS | 10 | 10 | | | | 29OCT00 | 0 | 8,000 | 0 | |
| 080025.C | SET ALUMINUM WINDOWS | 7 | 7 | | | | 08NOV00 | 0 | 8,000 | 0 | |
| 080030.C | INSTALL BUIDER'S HARDWARE | 20 | 20 | | | | 15NOV00 | 0 | 9,500 | 0 | |
| 090000.C | INSTALL GYPSUM BOARD | 20 | 20 | | | | 21NOV00 | 0 | 11,500 | 0 | |
| 090005.C | TAPE/FLOAT | 20 | 20 | | | | 11DEC00 | 0 | 11,000 | 0 | |
| 090010.C | PAINT | 24 | 24 | | | | 31DEC00 | 0 | 11,000 | 0 | |
| 090015.C | SET SAT GRID | 10 | 10 | | | | 05JAN01 | 0 | 2,100 | 0 | |
| 090020.C | SET SAT | 7 | 7 | | | | 24JAN01 | 0 | 2,100 | 0 | |
| 090025.C | RESILIENT FLOORS | 7 | 7 | | | | 15JAN01 | 0 | 15,000 | 0 | |
| 090030.C | CONDUCTIVE FLOORS | 3 | 3 | | | | 22JAN01 | 0 | 15,000 | 0 | |
| 090045.C | CERAMIC TILE | 10 | 10 | | | | 14JAN01 | 0 | 12,500 | 0 | |
| 100000.C | TOILET PARTITIONS | 4 | 4 | | | | 03FEB01 | 0 | 1,100 | 0 | |
| 100005.C | INSTALL MISC SPECIALTY ITEMS/EQ | 4 | 4 | | | | 24JAN01 | 0 | 1,300 | 0 | |
| 100010.C | WALL AND CORNER GUARD | 3 | 3 | | | | 24JAN01 | 0 | 1,600 | 0 | |
| 100015.C | SIGNAGE | 3 | 3 | | | | 31JAN01 | 0 | 1,800 | 0 | |
| 100020.C | INSTALL LOCKERS | 3 | 3 | | | | 24JAN01 | 0 | 8,000 | 0 | |
| 100200.C | SET LABORATORY CASEWORK | 5 | 5 | | | | 11DEC00 | 0 | 1,000 | 0 | |
| 120005.C | SET MISC FURNISHINGS | 5 | 5 | | | | 09SEP00 | 0 | 1,900 | 0 | |
| 120030.C | FIRE DETECTION AND ALARM GEAR | 4 | 4 | | | | 18OCT00 | 0 | 3,000 | 0 | |
| 120035.C | FIRE DETECTION AND ALARM DEVICES | 2 | 2 | | | | 24JAN01 | 0 | 3,000 | 0 | |
| 120040.C | TEST FIRE ALARM/PROTECTION | 3 | 3 | | | | 28JAN01 | 0 | 1,000 | 0 | |
| 121000.C | SET PREWIRED WORK STATIONS | 6 | 6 | | | | 24JAN01 | 0 | 2,200 | 0 | |
| 150010.C | MOBILIZE PLUMBING | 15 | 15 | | | | 28APR00 | 0 | 5,000 | 0 | |
| 150020.C | R/I IN/UNDER SLAB PLUMBING | 17 | 17 | | | | 10JUN00 | 0 | 24,000 | 0 | |
| 150025.C | R/I & TEST ABOVE SLAB PLUMBING | 10 | 10 | | | | 14OCT00 | 0 | 272,000 | 0 | |
| 150030.C | SET PLUMBING FIXTURES | 10 | 10 | | | | 24JAN01 | 0 | 5,000 | 0 | |
| 150035.C | PLUMBING TRIM | 4 | 4 | | | | 03FEB01 | 0 | 2,000 | 0 | |
| 150040.C | R/I FIRE SPRINKLER RISER/VALVES | 7 | 7 | | | | 08SEP00 | 0 | 7,000 | 0 | |
| 150045.C | R/I FIRE PROTECTION | 28 | 28 | | | | 23SEP00 | 0 | 35,000 | 0 | |
| 150050.C | FIRE PROTECTION DROPS | 10 | 10 | | | | 21OCT00 | 0 | 2,000 | 0 | |
| 150055.C | FIRE PROTECTION HEADS | 10 | 10 | | | | 31OCT00 | 0 | 1,000 | 0 | |
| 150060.C | FIRE PROTECTION TEST | 3 | 3 | | | | 10NOV00 | 0 | 1,800 | 0 | |
| 150065.C | GAS FIRED HEATERS | 5 | 5 | | | | 11DEC00 | 0 | 1,800 | 0 | |
| 150070.C | SET AHU'S | 5 | 5 | | | | 11DEC00 | 0 | 40,000 | 0 | |
| 150075.C | SET CONDENSORS | 3 | 3 | | | | 05DEC00 | 0 | 40,000 | 0 | |
| 150080.C | R/I DUCTWORK | 25 | 25 | | | | 18NOV00 | 0 | 350,000 | 0 | |
| 150085.C | AIR DEVICES | 9 | 9 | | | | 15JAN01 | 0 | 4,000 | 0 | |
| 150090.C | SET HVAC CONTROLS PANELS | 5 | 5 | | | | 11DEC00 | 0 | 2,000 | 0 | |
| 150095.C | SET HVAC CONTROL DEVICES | 14 | 14 | | | | 10JAN01 | 0 | 3,000 | 0 | |
| 150100.C | TEST AND BALANCE W/REPORT | 30 | 30 | | | | 31JAN01 | 0 | 3,000 | 0 | |
| 150105.C | PRE-COMMISION ACTIVITY | 48 | 48 | | | | 02MAR01 | 0 | 2,000 | 0 | |
| 150110.C | TEST & START UP HVAC | 4 | 4 | | | | 24JAN01 | 0 | 1,000 | 0 | |
| 160010.C | MOBILIZE ELECTRIC | 15 | 0 | | 04JAN00 | 17JAN00 | 04JAN00 A | 100 | 10,000 | 10,000 | |
| 160020.C | R/I IN/UNDER SLAB ELECTRIC | 10 | 6 | | 20APR00 | | 20APR00 A | 40 | 12,000 | 4,800 | |
| 160025.C | R/I WALL ELECTRIC | 15 | 15 | | | | 23SEP00 | 0 | 176,100 | 0 | |
| 160030.C | R/I CEILING ELECTRIC | 10 | 10 | | | | 08OCT00 | 0 | 170,000 | 0 | |
| 160035.C | SET LIGHTS | 7 | 7 | | | | 15JAN01 | 0 | 6,000 | 0 | |
| 160040.C | ELECTRIC DEVICES | 7 | 7 | | | | 01JAN01 | 0 | 6,000 | 0 | |
| 160045.C | INSTALL LIGHTNING PROTECTION | 14 | 14 | | | | 23SEP00 | 0 | 20,000 | 0 | |
| 160050.C | INSTALL TELEPHONE SYSTEM | 4 | 4 | | | | 11DEC00 | 0 | 4,500 | 0 | |
| 160055.C | INSTALL PA AUDIO SYSTEM | 4 | 4 | | | | 15DEC00 | 0 | 1,900 | 0 | |
| 160060.C | SET TRANSFORMER | 2 | 2 | | | | 05DEC00 | 0 | 9,000 | 0 | |
| 160065.C | SET INT ELCT GEAR | 3 | 3 | | | | 11DEC00 | 0 | 9,000 | 0 | |
| 160075.C | TEST & START UP ELECTRICAL | 3 | 3 | | | | 08JAN01 | 0 | 1,000 | 0 | |
| 970005.P | O&M MANUALS | 60 | 60 | | | | 20DEC00 | 0 | 1,000 | 0 | |
| 980000.C | QC PUNCLIST | 14 | 14 | | | | 07FEB01 | 0 | 0 | 0 | |
| 980005.C | PREFINAL INSPECTION | 2 | 2 | | | | 19APR01 | 0 | 0 | 0 | |
| 980005.P | DEMOBILIZE | 1 | 1 | | | | 21APR01 | 0 | 5,000 | 0 | |
| 980010.C | COMPLETE VEHICLE MAINT. | 1 | 1 | | | | 21APR01 | 0 | 0 | 0 | |
| | | 524 | 359 | | 15NOV99 | | 15NOV99 A | 8 | 4,122,771 | 265,436 | |

Page 5A

| Act ID | Activity Description | Orig Dur | Rem Dur | Rev Dur | Actual Start | Actual Finish | Early Start | Prev % | Scheduled Value | Prev Earned | Rev % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VEHICLE MAINT SITE SUPPORT | | | | | | | | | | | |
| 020010.C | SITE CUT FILL | 25 | 13 | | 01MAR00 | | 01MAR00 A | 50 | 387,500 | 193,800 | |
| 020015.C | AREA DEMO | 15 | 0 | | 20DEC99 | 18APR00 | 20DEC99 A | 100 | 46,000 | 46,000 | |
| 020060.C | SITE WATER UTILITIES | 28 | 0 | | 06MAR00 | 25APR00 | 06MAR00 A | 100 | 99,400 | 99,400 | |
| 020070.C | SITE FIRELINE | 28 | 3 | | 06MAR00 | | 06MAR00 A | 90 | 98,500 | 88,650 | |
| 020075.C | SITE STORM DRAIN UTILITY | 28 | 28 | | | | 11MAY00 | 0 | 98,500 | 0 | |
| 020080.C | SITE SANITARY UTILITY | 28 | 0 | | 15MAR00 | 28APR00 | 15MAR00 A | 100 | 98,500 | 98,500 | |
| 020085.C | SITE GAS UTILITIES | 28 | 22 | | 06MAR00 | | 06MAR00 A | 20 | 62,000 | 12,400 | |
| 020095.C | LIME TREATMENT | 14 | 14 | | | | 04AUG00 | 0 | 15,000 | 0 | |
| 020100.C | PREP SITE SUBGRADE | 14 | 14 | | | | 08JUN00 | 0 | 15,000 | 0 | |
| 020110.C | LAY BASE COURSE | 14 | 14 | | | | 05DEC00 | 0 | 15,500 | 0 | |
| 020120.C | SET WALKS AND CURBS | 14 | 14 | | | | 21NOV00 | 0 | 12,000 | 0 | |
| 020130.C | BITUMINOUS PAVING | 10 | 10 | | | | 19DEC00 | 0 | 14,500 | 0 | |
| 020140.C | INSTALL IRRIGARION | 9 | 9 | | | | 29DEC00 | 0 | 4,000 | 0 | |
| 020150.C | LAY TOPSOIL | 5 | 5 | | | | 07JAN01 | 0 | 2,500 | 0 | |
| 020160.C | SET FENCING | 14 | 14 | | | | 12JAN01 | 0 | 2,500 | 0 | |
| 020170.C | SET LANDSCAPE | 5 | 5 | | | | 01APR01 * | 0 | 1,500 | 0 | |
| 020180.C | ESTABLISH TURFF / MAINTAIN | 92 | 92 | | | | 06APR01 | 0 | 1,500 | 0 | |
| 021670.C | IINSTALL ELECTRIC DISTRIBUTION | 45 | 45 | | | | 08JUN00 | 0 | 72,000 | 0 | |
| 122000.C | CATHODIC PROTECTION & TEST | 14 | 14 | | | | 11MAY00 | 0 | 3,500 | 0 | |
| | | 585 | 435 | | 20DEC99 | | 20DEC99 A | 27 | 1,050,000 | 538,750 | |
| VEHICLE MAINT 457mm PIERS | | | | | | | | | | | |
| 020050.C | DRILLED PIERS 457 mm | 14 | 0 | | 05FEB00 | 11FEB00 | 05FEB00 A | 100 | 10,125 | 10,125 | |
| | | 14 | 0 | | 05FEB00 | 11FEB00 | 05FEB00 A | 100 | 10,125 | 10,125 | |
| VEHICLE MAINT 610mm PIERS | | | | | | | | | | | |
| 020040.C | DRILLED PIERS 610 mm | 14 | 0 | | 24JAN00 | 09FEB00 | 24JAN00 A | 100 | 37,800 | 37,800 | |
| | | 14 | 0 | | 24JAN00 | 09FEB00 | 24JAN00 A | 100 | 37,800 | 37,800 | |
| PAINT BOOTH | | | | | | | | | | | |
| 070040.C | SET PAINT BOOTH | 3 | 3 | | | | 14OCT00 | 0 | 16,500 | 0 | |
| 070045.C | INSTALL/TRIM PAINT BOOTH | 15 | 15 | | | | 17OCT00 | 0 | 3,500 | 0 | |
| | | 18 | 18 | | | | 14OCT00 | 0 | 20,000 | 0 | |
| BID OPTION 1 | | | | | | | | | | | |
| 020095.1 | CNG SITE PREP | 21 | 21 | | | | 14JUL00 | 0 | 12,000 | 0 | |
| 020105.1 | CNG UG MEP R/I | 21 | 21 | | | | 01JAN01 | 0 | 23,500 | 0 | |
| 020110.1 | CNG CONCRETE | 14 | 14 | | | | 22JAN01 | 0 | 10,000 | 0 | |
| 020115.1 | SET CNG EQUIPMENT | 2 | 2 | | | | 05FEB01 | 0 | 44,000 | 0 | |
| 020120.1 | CONNECT CHG EQUIPENT | 14 | 14 | | | | 07FEB01 | 0 | 3,500 | 0 | |
| | | 222 | 222 | | | | 14JUL00 | 0 | 93,000 | 0 | |
| BID OPTION 2 | | | | | | | | | | | |
| 020100.2 | POV ROUGH GRADE/SITE PREP | 28 | 3 | | 13MAR00 | | 13MAR00 A | 90 | 29,500 | 26,550 | |
| 020105.2 | POV BASECOURSE | 21 | 21 | | | | 05FEB01 | 0 | 25,000 | 0 | |
| 020110.2 | POV PAVING | 10 | 10 | | | | 19FEB01 | 0 | 22,000 | 0 | |
| 020115.2 | POV PAVEMENT MARKING | 3 | 3 | | | | 26FEB01 | 0 | 500 | 0 | |
| | | 108 | 62 | | 13MAR00 | | 13MAR00 A | 40 | 77,000 | 26,550 | |
| BID OPTION 3 | | | | | | | | | | | |
| 020100.3 | STORAGE FOUNDATION | 15 | 12 | | 11DEC00 | | 11DEC00 A | 20 | 17,500 | 3,500 | |
| 020110.3 | STORAGE BUILDING SHELL | 28 | 28 | | | | 18JAN01 | 0 | 20,500 | 0 | |
| 020120.3 | STORAGE BUILDING DOORS/WINDOWS | 14 | 14 | | | | 13FEB01 | 0 | 6,000 | 0 | |
| 020130.3 | STORAGE BUILDING TRIM | 14 | 14 | | | | 13FEB01 | 0 | 3,000 | 0 | |
| | | 57 | 57 | | 11DEC00 | | 11DEC00 A | 4 | 47,000 | 3,500 | |
| | | 700 | 535 | | 15NOV99 | | 15NOV99 A | 20 | 6,077,257 | 975,727 | |

Page 6A

CARDENAS/mld

November 29, 2000
Serial No. 99-0039-0055

Lackland Resident Office

SUBJECT: Progress Schedule, Contract Number [redacted] BC - Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78228

Gentlemen:

Reference your latest Progress Schedule with a data date of September 29, 2000 submitted with your Pay Request Number 7 received on October 10, 2000.

Upon review of your progress schedule, we noted several construction activities with negative total float indicating that your progress on this project is less than satisfactory. Some of the activities listed on the enclosed report were discussed in a meeting held on Friday, November 17, 2000 in my office. In attendance at this meeting were Mr. Jake Trinidad of your office, Mr. Sydney Whitehead, your Project Scheduler, and Mr. George Cardenas of my office.

Here are some examples of activities on the project's critical path showing negative total float:

a. Activity 010030.P Coordination Meeting: This activity indicates 135 days of negative float. Mr. Whitehead indicated that you had not notified him that this activity had been completed. Mr. Whitehead, I assume speaking on behalf of Sedona Contracting, stated that this meeting was not an official meeting because the "Authorized Representative of the Contracting Officer" was not in attendance. This Quality Assurance/Quality Control Mutual Understanding meeting was coordinated and conducted by my Project Engineer and was held in my office on December 6, 1999. This date must be inputted in your schedule.

b. Several Activities for review of submittals indicate negative float time. These activities representing the submittal process should only represent submittals requiring Government approval as required by paragraph 3.4.5 of Contract Specification section 01320. As an example, Activity 011515.P Review Plumbing shows 118 days of negative float. All Plumbing submittals in the contract are designated "For Information Only" therefore, this activity 011515.P and other associated Plumbing activities need to be deleted. Please verify the accuracy of the dates currently shown in your schedule for those submittals activities showing negative float. See the enclosed report.

c. Activity 030020.C Form/Reinforce Beams was completed on or about August 13, 2000, 3 months behind what you initially scheduled.

d. Activity 030035.C Set Concrete Precast shows 130 days of negative float.

e. Activity 030040.C Form/Place Concrete Slab shows 119 days of negative float.

f. Activity 050005.C Erect Structural Steel shows 130 days of negative float.

Please insure that you review and correct your schedule deficiencies prior to scheduling a progress review meeting with Mr. Bill Reese, our Quality Assurance Inspector, for submission of your November 2000 pay request. If these deficiencies are not corrected, we will retain 10% of your November 2000 pay request in accordance with Contract Clause 79 of Contract Section 00700, due to your schedule showing unsatisfactory progress.

If you have any questions concerning the above, please do not hesitate to contact my Project Engineer, George Cardenas at (210) 675-7712/7713.

Sincerely,

Manuel Fano
Contracting Officer Representative

Enclosures

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW
7929 Westpark Drive, Suite 400
McLean, Virginia 22102-4224

Telephone: 703-749-1000
Facsimile: 703-893-8029
www.wthf.com

Writer's Direct Dial
No. 703/749-1022

John B. Tieder, Jr.
Robert G. Watt
Julian F. Hoffar
Robert M. Fitzgerald
Robert K. Cox
Lewis J. Baker
Benjamin T. Riddles, II
Wayne G. Tatusko
Richard G. Mann, Jr.
Henry D. Danforth
Carter B. Reid
Mark A. Sgarlata
Michael G. Long*
Thomas J. Powell
Edward J. Parrott
Steven J. Weber
Paul A. Varela
Vivian Katsantonis
Kathleen O. Barnes
Shelly L. Ewald
Christopher J. Brasco
John G. Lavoie
Robert C. Niesley*
Colin J. Smith
Jean V. Miller
Gregory J. Dukellis*
Fred A. Mendicino
William J. Burch*
Michael D. Germain*
Robert G. Barbour
Keith C. Phillips
Marybeth Z. Gaul
Timothy E. Heffernan*
W. Drew Mallender
James M. Donahue
Bennett J. Lee*
Todd R. Metz*
Michael R. Gandee*
Michael P. Hutchins*
Joseph S. Guarino
Lewis I. Askew, Jr.
Erica S. Beardsley
Erica B. Robinett*
David F. McPherson*
Harish Mirchandani*
William H. Kennedy, Jr.
Michael J. Kirwin
David R. Johnson*
Scott W. Kowalski
C. Kelly Skrabak
J. Brian Cashmere
Joseph C. McGowan*
Daniel J. Alexander*
Geoffrey A. Graves*
John R. Marking*
Nicholas M. Sarris
S. Jerome Rosenbaum
Sherri D. Martinelli*
Gwynne W. Guzzeau
Christopher M. Anzidei
Michelle G. Hicks
Laura A. Shelkey
Akin Alcitepe
Jason D. Blatt
Michelle R. Depuy
Alexander N. Lamme
Timothy E. Elliott*
James M. Phelps
Eric Yeo
Justin S. Hawkins
*Not Admitted in Virginia

December 1, 2000

DEC 06 2000
CESWF-OC

**Via Facsimile and U.S. Mail**

Rex Crosswhite, Esquire
Deputy District Counsel
Department of Army
Forth Worth District Corps of Engineers
P.O. Box 17300
Fort Worth, TX 76102-0300

| | | |
|---|---|---|
| Re: | Principal: | Sedona Contracting, Inc. |
| | Surety: | The Fidelity and Deposit Company of Maryland |
| | Bond No.: | PRF 8131176 |
| | Obligee: | United States of America, Department of Army, Forth Worth District Corps of Engineers |
| | Project: | Contract No. DACA63-99-C-0039; Vehicle Operations-Maintenance Complex, Lackland AFB |

Dear Mr. Crosswhite:

Our law firm has been retained by Fidelity and Deposit Company of Maryland ("F&D") in connection with the above-referenced project (the "Project") and, specifically, to investigate the Fort Worth District Corps of Engineer's (the "Corps") arbitrary refusal to escrow contract funds related to the Project. In that regard, this letter is written to formally demand that the Corps immediately stop making payments to F&D's principal, Sedona Contracting, Inc. ("Sedona"), and to request that, in order to protect the interests of all parties concerned, the Corps place all earned and unpaid contract balances related to the Project (at least to the extent of F&D's bond losses) into an escrow account until such time as the parties' rights to those funds can be determined. Please be advised that, based on the facts and circumstances set forth below, it is our opinion that the Corps' failure to honor the voluntary letter of default and its attendant failure to escrow contract funds is an abuse of its discretion and raises questions concerning F&D's obligations under the bonds it issued with the Corps as the Obligee.

Based upon our review of the facts, it is evident that Sedona is in default on its contractual obligations on the Project. In that regard, Sedona has failed to pay its subcontractors as required by the clear terms of its contract with the Corps. As a result of that default, F&D has incurred payment bond losses in excess of Two Hundred Thousand Dollars ($200,000.00). Moreover, Sedona's financial condition continues to deteriorate, and F&D's consultants have performed an investigation and determined that Sedona will be unable to complete the Project with the remaining contract funds, thereby exacerbating the current nonpayment problem.

Based upon Sedona's precarious financial condition, its resulting failure to pay its subcontractors, F&D's payment bond losses, and F&D's concerns that Sedona's actions will further prejudice both the Corps and F&D, F&D concluded that it was necessary to advise the Corps of Sedona's default. Accordingly, on November 8, 2000, F&D released to the Corps Sedona's voluntary letter of default and F&D's letter demanding that the Corps release no further funds to Sedona. The notice of Sedona's default was given to the Corps so that F&D could take advantage of the doctrine of equitable subrogation. The Federal Circuit has applied the doctrine of equitable subrogation, even in the absence of a takeover by the surety, in order to allow the surety "to attempt to recover progress payments or the final payment when it notifies the Government that its principal is in default, or is about to go into default." Ranson v. U.S., 17 Cl.Ct. 263, 267-68 (1989). When this notification is made, "the United States in effect becomes a stakeholder for remaining contract proceeds." Id. at 268 (citing Balboa, 775 F.2d at 1162). Accordingly, upon giving notice to the Corps of Sedona's default, F&D expected that the Corps would thoroughly investigate and consider all relevant factors before making a determination of whether to discontinue releasing contract funds to Sedona.

To F&D's astonishment, on November 16, 2000, barely a week after having received notice of Sedona's default, you informed Darrell Leonard, F&D's Claims Counsel, that the Corps had decided against defaulting Sedona. The Corps' position, which clearly disregarded the facts leading up to F&D's decision, was that it was not obligated to honor the voluntary letter of default or the stop payment notice. Subsequently, at a meeting on November 20, 2000, you were advised by Mr. Leonard that because of Sedona's financial condition, the Corps would ultimately be harmed by its failure to terminate and stop payments to Sedona. Mr. Leonard reiterated the fact that F&D had already incurred over Two Hundred Thousand Dollars ($200,000.00) in payment bond losses and that Sedona's financial condition was continuing to deteriorate as determined by F&D's consultants. Additionally, Mr. Leonard advised the Corps that F&D disagreed with its position that it was not obligated to honor the voluntary letter of default or the stop payment notice and

cautioned the Corps that its position might affect F&D's obligations under the bonds issued for the Project. Nevertheless, you stated that the Corps intended to continue to pay contract funds to Sedona. Remarkably, the Corps' stated position was that Sedona's failure to pay its subcontractors, F&D's attendant payment bond losses exceeding Two Hundred Thousand Dollars ($200,000.00), and Sedona's agreement to a voluntary default were not sufficient reasons to find Sedona in default under the contract.

With all due respect, we believe the Corps' position is arbitrary, unreasonable and simply wrong. While the Corps has discretion in making the determination of whether to declare Sedona in default and whether to continue to release contract funds to Sedona, the Corps may not abuse that discretion. Several courts have emphasized that the Government has a duty to take the interests of the surety into account in wielding its discretion. See, e.g., Balboa Ins. Co. v. U.S., 775 F.2d 1158, 1164 (Fed. Cir. 1985). Argonaut Ins. Co. v. U.S., 434 F.2d 1362, 1368 (Ct.Cl. 1970); Ohio Casualty Ins. Co. v. U.S., 12 Cl.Ct. 590 (1987). In Argonaut, the court held that while the Government has discretion, the Government's discretion is limited by its "*duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract.*" 434 F.2d at 1368 (emphasis added). In determining whether the Government has exercised reasonable discretion in distributing funds to the contractor after notice from the surety that the contractor is in default, a court will consider the following eight factors:

(1) Attempts by the Government after notification by the surety, to determine that the contractor had the capacity and intent to complete the job. Balboa, 775 F.2d at 1164 (citing United States Fidelity and Guaranty Co. v. U.S., 676 F.2d 628, 631; Royal Indemnity Co. v. U.S., 529 F.2d 1312, 1321 (Ct. Cl. 1970); Argonaut, 434 F.2d at 1366, 1369; Fireman's Fund Ins. Co. v. U.S., 362 F.Supp. 842, 848 (D.Kan. 1973)).

(2) Percentage of contract performance completed at the time of notification by the surety. Id. (citing United States Fidelity and Guaranty Co, 676 F.2d at 631; United States Fidelity and Guaranty Co. v. U.S., 475 F.2d 1377, 1385 (Ct. Cl. 1973); Argonaut, 434 F.2d at 1366).

(3) Efforts of the Government to determine the progress made on the contract after notice by the surety. Id. (citing United States Fidelity and Guaranty Co., 676 F.2d at 631; Royal Indemnity, 529 F.2d at 1320-21. See United States Fidelity and Guaranty, 475 F.2d at 1385).

(4) Whether the contract was subsequently completed by the contractor (not conclusive but relevant to show the reasonableness of the progress on the project). Id. at 1164-65. (citing Argonaut, 434 F.2d at 1369).

(5) Whether the payments to the contractor subsequently reached the subcontractors and materialmen (this goes to the equitable obligation of the Government to subcontractors and others to see that they will be paid; also, because the surety is liable to the subcontractors, any money that reaches them furthers the objectives of the surety as well as the Government. Id. at 1165 (citing United States Fidelity and Guaranty, 475 F.2d at 1385; Argonaut, 434 F.2d at 1369).

(6) Whether the Government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the Government. Id. (citing United States Fidelity and Guaranty, 475 F.2d at 1385).

(7) Whether the Government's action violates one of its own statutes or regulations. Id. (citing United States Fidelity and Guaranty, 676 F.2d at 630).

(8) Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor. Id (citing United States Fidelity and Guaranty, 676 F.2d at 631; Royal Indemnity, 529 F.2d at 1321; Argonaut 434 F.2d at 1369).

Based on the above enumerated factors, we can come to no other conclusion but that the Corps' decision to continue to release contract funds to Sedona is an abuse of its discretion. In that regard, it is apparent that the Corps has completely disregarded F&D's interests in its present determination. It seems clear that the Corps failed to undertake any type of investigation into Sedona's financial condition before proclaiming that it would continue releasing contract funds to Sedona. Rather, the Corps has apparently taken Sedona at its word with regard to its financial capacity and intent to complete the Project. As previously noted, Sedona is experiencing severe financial problems, and even the most cursory investigation by the Corps would elucidate this fact. The Corps' failure to investigate this matter makes its decision arbitrary. Additionally, the Corps apparently made no effort, after receiving notice from F&D, to perform a cost benefit analysis on whether the contract could be completed as quickly or cheaply by a successor contractor. The Corps' failure, after receiving notice from F&D, to determine whether Sedona has the financial capacity and intent to complete the Project and its failure to carefully investigate other relevant matters makes its decision to continue to release contract funds to Sedona arbitrary and injudicious, and provides further evidence of the Corps' failure to properly exercise its discretion.

Unfortunately, the Corp's abuse of discretion does not end with its failure, after receiving notice from F&D of Sedona's default, to ascertain whether Sedona has the capacity and intent to complete the Project. For whatever reason, the Corps has ignored Sedona's failure to pay its subcontractors and the resulting payment bond losses incurred by F&D. After receiving the voluntary letter of default and F&D's letter demanding that no further contract funds be released to Sedona, the Corps took no steps to investigate or ascertain whether the subcontractors, which Sedona was required to pay under the express terms of its contract with the Corps, were in fact being paid. Rather, the Corps blithely decided, a little more than a week after having received notice, that it would continue to release contract funds to Sedona. The decision not to thoroughly investigate Sedona's nonpayment of its subcontractors demonstrates the Corps' complete failure to consider F&D's interests, as they are *required to do by law*. The Corps' conduct in coming to its conclusion about whether to continue to release contract funds to Sedona was not based on judgment and reason after a careful evaluation of all of the facts and circumstances, but was, rather, a hasty and careless decision indicative of an abuse of discretion.

After having been notified of Sedona's bleak financial condition, its failure to pay its subcontractors, Sedona's consent to a voluntary default, and F&D's mounting payment bond losses, the Corps has amazingly shirked its duties and investigative responsibilities

clearly owed to F&D. Unquestionably, Sedona has defaulted on this contract and, based on F&D's consultant's investigation, will not be able to complete the Project with the remaining contract funds. The Corps' decision to continue to pay Sedona, and its refusal to honor Sedona's voluntary letter of default, will ultimately harm both F&D and the Corps. It is within the Corps' power and responsibility to prevent this eventuality.

Please be advised that, should the Corps continue to arbitrarily insist on making payments to Sedona, F&D intends to hold the Corps responsible for its resulting bond losses. In order to protect the interests of all of the concerned parties, we respectfully request that you reconsider your current position based on a thoughtful and reasoned analysis and investigation of the facts and circumstances. Towards that end, we would like to arrange a meeting with you as soon as possible to address the matters set forth in this letter and to work towards a resolution of this matter that will be in the best interests of all parties involved.

Please contact our offices as soon as possible, but no later than Wednesday, December 6, 2000, to discuss when such a meeting can be held. In the meantime, should you require any further information in connection with our above request, please do not hesitate to call me.

Very truly yours,

**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**

Robert G. Watt

RGW/mmb
cc: Darrell Leonard, Esquire

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO ATTENTION OF:

December 8, 2000

Office of Counsel

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance Complex, Lackland Air Force Base

Mr. Robert G. Watt
Watt, Tieder, Hoffar,
and Fitzgerald, LLP
7929 West Park Drive
Suite 400
McLean, Virginia 22102-4224

Dear Mr. Watt:

We have received your letter dated December 1, 2000, on behalf of your client, Fidelity and Deposit Company of Maryland (F&D). After reviewing your letter and the applicable legal authorities, we disagree with the conclusions reached and the positions taken in your letter.

Initially you argue that Sedona is in default of its contractual obligations. Currently, Sedona is on schedule. The project is scheduled to be 37% complete. Sedona's has completed 37% of the contract work. Under the Termination for Default clause of the contract between Sedona and the Corps of Engineers, the Government's right to terminate a contractor's right to proceed with a contract for default is limited to those circumstances wherein the contractor is not making sufficient progress to insure that the contract will be completed by the contract completion date. Since Sedona is currently on schedule, they are not in default of their contractual obligations and could not be terminated for failure to make sufficient progress in order to insure completion of the project by the contract completion date.

The Government is on notice that Sedona has failed to pay its structural steel supplier. In Sedona's August pay request, Sedona requested $233,000 for

structural steel. The pay estimate contained a certification that this amount would be paid to the supplier. The failure to pay the supplier is a violation of the Prompt Payment Act. Pursuant to the payment clause of the contract, Sedona is obligated to reduce its subsequent pay request by the amount received from the Government, which is not paid to subcontractors or suppliers. Sedona has failed to include the required reduction in its pay request and the Corps of Engineers will unilaterally withhold the amount of non-payment to the steel supplier from Sedona's next pay request.

The Corps of Engineers has been advised by F&D that they have made a partial payment to the subcontractor in the amount of $200,000.00. Although Fidelity and Deposit Company of Maryland has alleged that this payment is made under their payment bond, we have not been provided any proof of that fact.

We disagree with the position taken by F&D that by virtue of the surety making a payment under its payment bond places the Corps of Engineers in the position of a stakeholder for the remaining contract proceeds. As the Court of Claims explained in <u>Argonaut Ins. Co. v. United States</u>, 434 F.2d 1362, 1367-68 (Ct. Cl. 1970), there is a significant difference between the Government's role before and after completion of performance on a Government contract. The Court in <u>Argonaut</u> held:

> as opposed to [the Government's] interest in disbursing retainage payments after completion, during performance [the Government] has a vital interest in the 'timely and efficient' completion of work. It is to overcome various unforeseen circumstances which may hinder performance that the Government incorporates into the contract broad rights and permits the federal procurement officials broad discretion and flexibility.

The Courts have recognized that it is common knowledge that contractors rely upon contract proceeds administered though progress payments to properly finance the contract. Fireman's Fund Ins. Co. v U.S. 909 F.2d 495, 498 (Fed. Cir. 1990). Where a surety has informed the Government that the contractor is in default the Government has an obligation to take reasonable steps to determine if the contractor has the capacity and intention to complete the job. Balboa Insurance Company v. United States, 775 F.2d 1158, 1164 (Fed. Cir. 1985).

The Court in Balboa found that the Government could exercise its discretion as to whether to make further payments to the contractor. The exercise of the Government's discretion was limited by "its duty to exercise its discretion responsibly and to consider the suretys interest in conjunction with other problems encountered in the administration of the contract." Balboa v U.S., 775 F.2d at 1164; citing Argonaut Insurance Company, 434 F.2d at 1368. In determining whether the Government has reasonably exercised its discretion the court set forth the eight factors cited in your letter which must be considered. In relation to each of these factors the Government submits that it has been reasonable in the exercise of its discretion not to withhold payments from the contractor based upon the following criteria.

(1) Determining whether the Contractor has the Capacity and Intent to Complete the Project.

Subsequent to notice by the surety Government representatives have contacted both the contractor and the contractor's attorney. The contractor and its attorney have stated an unequivocal intent to continue performance on the project and complete it. The expressed intent to complete the project is evidenced through their manning of the project and continued performance of the work required under the contract.

(2) Percentage of Contract Performance Completed at the Time of Notification by the Surety.

Under the subject contract, the contractor has completed 37% of the project. The Government is not placed in the position of a stakeholder whose only responsibility is the disbursement of earned contract funds. Rather, there remains 63% of the project to be completed. Further, the Government has a contractor who is fully managing the job and whose subcontractors continue to work the project.

(3) Efforts to Determine Progress Subsequent to Notice by the Surety.

The Government is monitoring the project on a daily basis. Any deterioration of manpower, subcontractor manning of the project, or the failure to achieve scheduled progress will be noted and will be factor in determining whether future payments will be released to Sedona.

(4) Whether the Contract was Subsequently Completed by the Contractor.

It is premature to make this determination, but the contractor is on schedule, fully manning the project, the subcontractors are continuing to work on the project and the contractor expresses the intent to complete the project.

(5) Whether Payments to the Contractor Subsequently Reach the Subcontractors.

We know of one supplier who has not been paid. The other subcontractors and suppliers continue to work on the project. Under the Prompt Payment Act if the contractor certifies payment is made to subcontractors on previous pay estimates and fails to make those, subsequent pay estimates will be reduced by the amount that the contractor has not paid to its subcontractors.

(6) Whether the Government Contracting Agency had Notice of Problems with the Contractors' Performance Previous to the Suretys Notification.

No performance problems of this contract have been noted prior to the surety's notification.

(7) Whether the Government Actions Violate One of its Own Statutes or Regulations.

Government actions do not violate any statutes or regulations.

(8) Evidence of the Contract have been Completed as Quickly and Cheaply by Successor Contractor.

The contractor is currently on schedule. The Government has no evidence that other contractors could complete the contract as cheaply or quickly.

Based upon our evaluation of the factors set forth in Balboa, we believe that it is reasonable to exercise our discretion and continue making payments to Sedona while carefully and closely monitoring Sedona's progress on the project. The Corps of Engineers currently has no contractual basis on which it can sustain a termination for default. Should the Corps of Engineers at this juncture decide to terminate Sedona's contract for default, such termination would be reversed by the Armed Services Board of Contract Appeals or U.S. Court of Federal Claims and the contract converted into a termination for convenience which would allow Sedona to incur all costs incurred to date. Even where the Government knows that a Government contractor has financial difficulties, the Government does not become obligated either to withhold progress payments or to declare the contractor in default at the suretys request so long as the progress of the contractor on the job is satisfactory and it has good reason to believe that

the contract will be completed. Royal Indemnity Company, 529 F.2d 1312, 1321 (Ct. Cl. 1976). The Court in Royal stated:

> It is superior policy as far as the Government's interest in the cheapest and most rapid completion of the project is concerned, to keep the original contractor going as long as possible even if he encounters financial difficulties.

Royal Indemnity Company, 529 F.2d at 1321.

The Corps of Engineers decision to continue payments to Sedona has been based upon a thorough examination of the facts and is a reasonable exercise of discretion balancing both the Government contractual obligations to Sedona and its duty to project the rights of the surety. The Corps of Engineers has been placed in the unenviable position of not violating Sedona's contractual rights while protecting the rights of the surety to the fullest extent possible. The Contracting Officer has reasonably exercised his discretion to continue payments to Sedona. This determination is based on the facts that Sedona is on schedule; continues to make progress towards the completion of the project; continues to communicated the intent to complete the project; fully mans the project; and the subcontractors continue to work and man the project. We have examined Sedona's voluntarily letter of default and do not find it to be valid or binding. The voluntary letter of default was given over one

D.S.



year ago. Sedona's current action of manning the project and continuing to prosecute the work negates the effect of a voluntary letter of default.

Sincerely,

Lloyd R. Crosswhite
Deputy District Counsel

CROSSWHITE