**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:06-cv-00186-LB (Judge Block)** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**APPENDIX TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated September 21, 2006

/s/ Christopher J. Brasco
CHRISTOPHER J. BRASCO
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, VA 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
Counsel for the Plaintiff

# INDEX TO APPENDIX


1. Affidavit of Darrell Leonard, p. 1-2.
2. April 13, 2000 Government letter to Sedona, p. 3-4.
3. Pre-construction Meeting Minutes, p. 5-16.
4. August 24, 2000 letter from Government to Sedona, p. 17-18.
5. November 8, 2000 F&D letter to Government, p. 19-20.
6. November 9, 2000 Internal Government Memorandum, p. 21.
7. November 16, 2000 letter from Government to Sedona, p. 22-23.
8. November 29, 2000 letter from Government to Sedona, p. 24-25.
9. February 8, 2001 letter from Government to F&D, p. 26-27.
10. Excerpt from Specifications regarding Schedule, p. 28.
11. February 12, 2001 letter from Sedona to Government, p. 29.
12. November 27, 2000 letter from Government to Sedona, p. 30.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**THE UNITED STATES OF AMERICA,** )<br>)<br>**Defendant.** ) | **Case No. 1:06-cv-00186-LB**<br>**(Judge Block)** |

**AFFIDAVIT OF DARRELL LEONARD**

I, Darrell Leonard, do solemnly declare and affirm that the following facts are true to the best of my knowledge, information and belief:

1. I have served and continue to serve in the position of Plaintiff, Fidelity & Deposit Company of Maryland's ("F&D"), bond claims attorney with regard to the performance and payment bonds F&D provided on behalf of Sedona Contracting, Inc. ("Sedona") for Contract No. DACA63-99-C-0039 ("Contract") for the construction project designated as the Vehicle Operations/Maintenance Complex at Lackland Air Force Base in San Antonio, Texas ("Project"). I was responsible for the settlement and payment of all payment bond claims submitted on the Project.

2. To the best of my knowledge, all valid payment bond claims and other outstanding claims of payment due by any Project subcontractor or supplier have been paid, settled, or are barred by the statute of limitations.

4. F&D paid a total of at least $1,113,568.06 to at least thirteen different subcontractors and material suppliers in satisfaction of payment bond claims on the Project.

5. F&D has paid and satisfied the invoices of all subcontractors and suppliers that F&D employed in its completion of the Project under its takeover agreement with the Government.

FURTHER AFFIANT SAITH NOT.

DARRELL LEONARD

STATE OF INDIANA
COUNTY OF Lake : to-wit

Sworn and subscribed to before me this 20th day of September, 2006, a Notary Public for the aforesaid jurisdiction.

Notary Public

My Commission Expires: 8/8/14

ADELE MOLINARO
Notary Public- Seal
State of Indiana
My Commission Expires Aug 8, 2014

Cardenas/mld

April 13, 2000
Serial Letter No. 99-0039-0027

San Antonio Area Office

SUBJECT: Pay Request #3, Contract No. [redacted] BC-Vehicle Operations/Maintenance Complex, Lackland AFB, San Antonio, Texas

Sedona Contracting, Inc.
6800 Park Ten Blvd, Suite 135E
San Antonio, Texas 78213

Gentlemen:

Reference your Pay Request number 3, received at the Area Office on April 10, 2000, in the amount of $492,441.00.

Your request for payment is being returned to you disapproved for the following reasons:

a. Your pay request was submitted without proper documentation to substantiate payment as required under Contract Clause 79, 52.232-5, PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (May 1997). Specifically, the information related your subcontracts and subcontractor payments required by paragraphs (ii) thru (iv).

b. You did not include your contractor certification as required by Contract Clause 79, paragraph (c).

c. The invoice document you submitted does not include the minimum information required by Contract Clause 82, 52.232-27, PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (Jun 1997), paragraph (2) Contractor's invoice, to insure timely processing of your pay request.

d. Specification Section 1320, paragraph 3.3 requires the submission of a narrative report with your updated project schedule. The project schedule is required as backup documentation for payment under this same specification section.

COE2 1336

e. Your First Aid Case History report was not submitted with your pay request. The requirement to submit this report on a monthly basis to the Area Office was discussed at the Preconstruction Conference meeting prior to the start of work.

f. Reference the progress meeting held at the jobsite on April 3, 2000 to review percentages of work completed. We were not notified of your intent to submit invoices for payment on stored materials with this Pay Request number 3. Because our Quality Assurance Inspector, Mr. Bill Reese, was not able to verify and inspect the stored materials, we will not approve payment for these stored materials under this pay request.

Also, reference our serial letter 99-0039-0026 disapproving of your initial project schedule submitted under your serial letter number 99-0039-0044 dated March 20, 2000. Specification Section 1320, paragraph 3.5 states that lack of an approved schedule shall result in an inability of the Contractor Officer to evaluate Contractor progress for the purposes of payment.

For the reasons listed above, your pay request is being returned to you unprocessed.

If you have any questions, please do not hesitate to contact Mr. Manuel Fano or Mr. George Cardenas, of the Lackland Resident Office, at 210/675-7712.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
4204 WOODCOCK, SUITE 245
SAN ANTONIO, TEXAS 78228-1319

REPLY TO
ATTENTION OF:

P. De La Fuentes/pdf

November 9, 1999
Serial No. 99-0039-0001

Lackland Resident Office

SUBJECT: Preconstruction Conference Minutes, Contract No. DACA63-99-C-0039, BC – Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

Sedona Contracting, Inc.
5800 Park Ten Blvd., Suite 135E
San Antonio, Texas 78213

Gentlemen:

The attached copy of the minutes to subject conference held November 5, 1999 is forwarded for your records. You are reminded that the minutes to this meeting being agreed to and signed will become a part of the safety program for this project.

A copy of the minutes must be kept on file at the job site from start to finish.

Sincerely,

*Original signed by:*

Manuel Fano
Contracting Officer's Representative

Attachment

COE00112

**PRE-CONSTRUCTION AND SAFETY CONFERENCE**
**CONTRACT NO. DACA63-99-C-0039**
**BC - VEHICLE OPERATIONS/MAINTENANCE COMPLEX**

| 0900 hrs | 5 November 99 | Lackland Res. Off. |
|---|---|---|
| TIME | DATE | LOCATION |

**PERSONNEL ATTENDING MEETING**

| NAME | ORGANIZATION | TITLE | PHONE |
|---|---|---|---|
| Manuel Fano | Corps of Eng. | Resident Eng. | 675-7712 |
| GEORGE CARDENAS | COE | PROJECT ENGR | 675-7712 |
| BILL REESE | COE | QA | 675-7712 |
| Roy Gutierrez | 37 TRW/SE | Safety Specialist | 671-3967 |
| Hector Trinidad | SEDONA | CM | 736-5335 |
| Eddie STUART | SEDONA | SUPERINTENDENT | 673 8216 |
| Tracy Trinidad | sedona | Quality control | 736-5335 |
| DEAN BARNHART | ARCHITECT | Project Manager | 652-4465 |
| GILBERT SANCHEZ | FIRE DEPT | FIRE INSPECTOR | 671-2321 |
| FOLEY BRIAN D. | VEH. MAINT | VMM | 671-2869 |
| Flack Gary D. | Veh maint | VMO | 671-2869 |
| Eddington Robert D | Vehicle operations | Fleet MGR | 671-3413 |
| Walker, Gordon D. | vehicle operations | Superintendent | 671-3415 |
| Ronald Fucik | 37 CES/CECL | Project Manager | 671-4096 |
| Peter Miscaldi | 37 LG/CC | Commander | 671-3886 |
| JAMES KODAT | 37 TRANS/LGTR | Flight Commander | 671-3045 |
| Roger Kiker | 76 CES/CECC | Mechanical Engr. | 925-7303 ext. 492 |
| Charles Weiss | 37 TRNS/CC | Commander | 671-2855 |
| Les FORD | 37 TRNS/LGTR | Chief [illegible] | 671-3045 |
| GARY WATTS | 37 CS/SCX | chief Plans | 671-3196 |
| | | | |
| | | | |

COE00113

# PRECONSTRUCTION AND SAFETY CONFERENCE

LOCATION : COE Lackland Resident Office Conference Room

FOR : BC - Vehicle Operations/Maintenance Complex, Lackland AFB, Texas

CONTRACT NO: DACA63-99-C-0039

CONTRACTOR : Sedona Contracting, Inc.

ADDRESS : 5800 Park Ten Blvd., Suite 135E, San Antonio, Texas 78213

TELEPHONE : (210) 736-5335

CONTRACTING OFFICER: John H. Rogers

ADMINISTRATIVE CONTRACTING
OFFICERS AND CONTRACTING
OFFICER'S REPRESENTATIVES : Thomas L. Armstrong

: Roger Anderson

: Manuel Fano

1. The conference was convened at 0900 hours on November 5, 1999 at the COE Lackland Resident Office. The minutes of the meeting, being agreed to and signed, will become a part of the safety program for this project. A copy of these minutes will be on file at the jobsite from start to finish.

2. Introduction: All personnel attending the meeting were introduced and a listing is attached. The Resident Office representative, Mr. Manuel Fano, explained that the purpose of the meeting was to orient the contractor as to safety requirements, resident and area office procedures, contract requirements, and other requirements; introduction of Corps of Engineers, Contractor's and Air Force personnel that will be involved in this project; and a general discussion of the items of major importance relating to the project.

3. The contract was awarded on September 23, 1999 in the amount of $6,077,257.00. Only the base bid and options 1 through 3 were awarded. The Notice to Proceed ~~has not been~~ was issued by the Contracting Officer ~~yet~~ on 11/4/99. The contract duration is 669 calendar days.

4. Liquidated Damages for failure to complete the work within contract time are established in Section 01000, Construction Schedule, and are $470.00 per calendar day for all work.

COE00114

5. Responsibilities:

a. The **Contracting Officer Representatives** have the authority to inspect, examine, and test all materials and/or approve samples, shop drawings, descriptive data, and such other similar items as may be called for in the contract.

b. The **Administrative Contracting Officers** have the authority to execute construction contract modifications which do not exceed $100,000.00 under the "Changes, Different Site Conditions, Variation in Estimated Quantities, Value Engineering and Suspension of Work" clauses of the contract; and time extensions for unusually severe weather under the Default clause of the contract.

c. The contractor will receive a letter from the Contracting Officer describing the above authorities in detail.

d. It was pointed out that only the Contracting Officer and the Administrative Contracting Officers have the authority to make changes to the contract. The Project Engineer or any other Government Representative do not have authority to waive or change any contract requirement.

e. The Area and Resident Office organizations consist of the following personnel with the stated responsibility:

The Area Engineer is Mr. Thomas L. Armstrong.

The Resident Engineer, Mr. Manuel Fano, who acts in behalf of the Area Engineer.

The Project Engineer, Mr. George Cardenas, is responsible for the administration and quality assurance for this contract.

The Office/Field Engineer, Mr. Gary Stangeland, will assist Mr. Cardenas in the administration of this project and with the quality assurance.

The Quality Assurance Representative, Mr. Bill Reese, is responsible for the quality assurance of this contract and has authority to ensure contract construction compliance by issuing advice when construction does not comply with contract requirements.

f. Contractor's Organization:

The Project Superintendent is Mr. Eddie Stuart, and he has the responsibility for constructing the entire project safely and timely. The contractor shall submit a letter stating what authority will the superintendent have; i.e., sign letters, payment estimates, negotiate modifications, etc.

COE00115

Also, as stated in paragraph 01451-3.1 of the contract specifications, "The project superintendent will be held responsible of the quality of work on the job and is subject to removal by the Contracting Officer for non-compliance with quality requirements specified in the contract."

The Quality Control System Manager, Mr. Tracy Trinidad is responsible for quality control and job safety in accordance with the contract. The QC manager has authority to remove from the jobsite any individual who refuses to comply with safety requirements of the contract, to stop any phase of work that is unsafe or does not meet the contract requirements.

g. The contractor shall provide a letter listing the subcontractors to be utilized for this project.

6. Normal working hours will be Monday through Friday, 7:00 a.m. to 4:00 p.m. The Contractor will notify the Corps of Engineers if at any time they will be working hours other than these.

7. Base or Local Regulations: The following items concerning Base operations were discussed:

a. Identification of workers and vehicles. Contractor shall provide a letter listing all the employees that will be working on this project. This list must include the name, social security number, and current address for each employee. The COE will attach a cover letter and hand carry to Security Police.

b. Request for outages require 14 days advance written notice.

c. Regulations concerning welding, cutting and welding permit issued by Base Fire Department.

d. Base Fire Department emergency phone # is 671-0911.

e. Immediate notice to the Quality Assurance Representative will be given of any potential strikes that may affect the delivery of equipment, materials or completion of the project.

f. The haul road to be used will be as shown on the contract drawings.

g. Base Security Police enforces traffic control. Observe street signs, the use of safety belts and speed limits.

h. Contractor to submit, as part of his Environmental Protection Plan, the location of the office trailers and storage yard. The location of the trailers and laydown area must be approved prior to mobilization.

COE00116

i. Contractor is responsible for the security of his property and jobsite.

j. 1) There is equipment in the existing facility that needs to be moved to Veh. Maint. – This is a separate contract.
2) User expressed their concern regarding completion date. They are required to be operational by April 1, 2001.

8. Progress Payments: Payment for the completed work will be based upon amounts agreed to mutually by the contractor and a representative of the Corps of Engineers using the approved NAS Schedule breakdown as a guide, prior to submitting an official pay request to the Area Office.

a. Allowance may be made for materials stored on site if legible invoices are submitted by the contractor with the pay request.

b. If payment is requested for performance and payment bond premiums as a separate item, it should be included as a separate activity in the NAS.

c. Payment for mobilization cost can be made, provided that a reasonable demobilization amount is allowed for at the end of the project.

d. A 10% retainage will be withheld when progress is 5% or 15 calendar days behind schedule during any one pay period and will continue to be withheld until such time that the schedule is regained and refunding will not adversely affect the protection of the Government's interest.

e. Work performed by a subcontractor will not be included in any contract payment estimate until the Statement and Acknowledgment, Standard Form 1413, is submitted in a satisfactory manner. Reference SWFP 115-1-1.

f. Withholdings from the pay estimate will be made for any non-conforming work, labor violations, delinquent submission of daily logs, and As-builts and Installed Property List not kept up to date.

g. Payment will not be allowed for items which shop drawings have not been submitted and approved.

COE00117

9. Progress Schedule and Reporting with NAS: Per the Contract Clauses and section 01320, the contractor is required to submit a Network Analysis System utilizing the critical path method.

a. Monthly meetings will be held to discuss any proposed revisions or adjustments to the NAS.

b. A preliminary project schedule shall be submitted within 15 days after notice to proceed. The approved preliminary schedule shall be used for payment purposes not to exceed 60 calendar days after Notice to Proceed.

c. The Initial Complete Project Schedule shall be submitted for approval within 45 calendar days after NTP. The Government will have 30 days to review and approve this schedule.

d. No payment will be made during the first 60 days without an approved preliminary project schedule, nor after the first 60 days without an approved and tested, complete project schedule.

e. Progress payments on work out of sequence will not be allowed unless logic changes are made and approved by the Contracting Officer Representative prior to submission of the updated progress schedule.

10. Contract Changes/Modifications: If the need to change the contract arises, the following will be the procedure to be followed. A Request for Proposal will be sent to the contractor for his quotation on certain additional work to be performed. Upon receipt of the RFP, the contractor will prepare his proposal, including a complete breakdown of all the costs and explanation for additional time (if any), and send it to the San Antonio Area Office. The Office Engineer will get in touch with the contractor to negotiate the cost and time. After an agreement is reached, the contractor will receive an SF Form 30 with the changes negotiated for his signature. Once it is signed by both parties, it becomes a bilateral agreement and the contractor can begin work.

Never proceed with any modification work without written authority or direct Instructions from the Contracting Officer or his Authorized Representatives; otherwise, you are assuming the risk of not being reimbursed for additional expenses. Should local personnel desire something different from what's required by the contract, your attention is called to the fact that all changes must be issued by the Contracting Officer or Administrative Contracting Officer. No one else has authority to make any changes.

COE00118

11. Correspondence: All correspondence pertaining to this contract shall be addressed to :

Area Engineer
U. S. Army Corps of Engineers
4204 Woodcock, Suite 245
San Antonio, Texas 78228-1319

Correspondence shall be sent in original and two copies. The contractor's correspondence shall use a serial numbering system. If the contractor's correspondence is not serialized, it will be returned without action.

All government correspondence to the contractor will be sent to address stated in the contract unless specifically requested in writing to be sent elsewhere.

The contractor may use a Request for Information (RFI) system for drawing/specifications clarifications, subject to the following conditions:

a. The contractor shall use a sequential numbering system for all RFIs separate and apart from the correspondence numbering system.

b. The contractor shall provide one original and two copies of all RFIs.

c. The Contractor shall designate ONE individual responsible person, subject to approval of the Contracting Officer, for reviewing and issuing RFIs.

d. All RFI's are to identify the schedule activities directly and/or indirectly affected by the RFI on the progress schedule. The Contractor should anticipate a minimum of 10 calendar days for Government review and response.

e. Refer to Special Contract Clauses for other requirements.

12. Contractor Quality Control System (CQC). Section 01451 requires the contractor to maintain an adequate inspection system and perform such inspections to assure that the work conforms to the contract requirements and to maintain and make available to the Government adequate records of such inspections. The CQC organization will consist of the following personnel, as a minimum:

CQC System Manager who will be on the jobsite at all time work is in progress. The CQC System Manager shall have completed the course entitled "Construction Quality Management for Contractors".

Additional CQC staff as necessary to perform all QC activities.

A Quality Assurance/Quality Control Mutual Understanding Conference will be held at a later date to discuss the CQC system in more detail. During this meeting the Quality Control Plan will be discussed.

13. As-built drawings: It is the responsibility of the Quality Control Organization to maintain up to date asbuilt drawings at the jobsite. Section 01700 of the contract specification describes the requirements for asbuilt drawings. The asbuilt drawings and installed property list will be reviewed by the Quality Assurance Representative on a monthly basis, as a minimum. Deductions will be made from the pay request if t they are not up to date.

COE00119

14. Shop Drawings: The contractor must become very familiar with section 01330 of the specifications. He will submit to the San Antonio Area Office the specified copies of all shop drawings and For Information Only submittals as called for in section 01330 of the specifications. There are two classifications for submittals: "Government Approved" shop drawings and "For Information Only" submittals.

A minimum of 60 days shall be allowed for review of Government Approved shop drawings. A minimum of 67 days shall be allowed for refrigeration and HVAC control systems.

Submittals For Information Only will not be returned unless they are reviewed by the Government and comments are made. The CQC organization is required to review all submittals and certify that they meet the contract requirements.

Section 01330 requires the preparation and submission of a submittal schedule or register (ENG Form 4288) within 21 calendar days after acknowledgment of Notice to Proceed. An updated register shall be submitted to the Area Office with the pay request every month.

15. Weather Related Time Extensions: Time extensions for weather delays will not be allowed until the number of anticipated adverse weather days for that particular month have been exhausted.

The schedule shown in paragraph 2, section 00800, defines the monthly anticipated adverse weather for the contract period and is based upon NOAA or similar data for the geographic location of the project. This is based on a 5 day work week. Actual adverse weather delay days must prevent work on critical activities for 50 percent or more of the contractor's scheduled work day. The contractors' progress schedule must included the anticipated adverse weather days on the durations of the critical activities.

16. Value Engineering: Value Engineering is an organized effort directed at analyzing the function of construction, systems, equipment, and supplies for the purpose of achieving the required function at the lowest overall cost consistent with the requirements for performance reliability and maintainability. The Contract Clauses and special clauses indicate the method of preparing a Value Engineering proposal and a brochure is included with your preconstruction package of information and forms.

17. Performance Evaluation of Construction Contractors: As a minimum, the Contractor's performance will be evaluated upon final acceptance of the work. However, interim evaluations may be prepared at any time during the contract performance when determined to be in the best interest of the Government. The following areas will be rated outstanding, above average, satisfactory, marginal or unsatisfactory:

a. Contractor Quality Control
b. Timely Performance
c. Effectiveness of Management
d. Compliance with Labor Standards
e. Compliance with Safety Standards

COE00120

18. Payrolls: Timely submittal of your and your subcontractor's certified payrolls is required. This includes DD Form 879, Statement of Compliance and SF Form 1413 which is a Statement of Acknowledgment of your subcontractors. This later form must be submitted within 7 days after award of any subcontract. Payrolls are required to be submitted on a weekly basis. All employees must be paid in accordance to the wage rates included in the contract specifications, as a minimum. The wage rates and an equal opportunity poster will be posted on the jobsite bulletin board which should be accessible to any employee. The Precon package includes a pamphlet entitled "Instructions to Contractors on Contract Labor Requirements" which instructs you on the regulations to follow. It is strongly recommended that your payroll clerk becomes very familiar with the information included in this pamphlet.

All payroll information shall be sent to the following address:

U. S. Army Corps of Engineers, Fort Worth District
ATTN: CESWF-CT-L
Post Office Box 17300
Fort Worth, Texas 76102-0300

19. Insurance: Evidence shall be submitted indicating compliance with workmen's compensation, comprehensive general liability, and automobile liability as required by the contract clauses and special contract clauses. Work shall not be performed by the contractor or subcontractors not having satisfied the insurance requirements. A copy of this insurance will be requested to be available at the preparatory meetings. Without insurance, no work shall be performed by the subcontractor.

20. It is the responsibility of the contractor to secure delivery of materials as required to maintain satisfactory progress on the job.

21. Repetitive Deficiencies. Will be discussed at preparatory inspection meetings for each definable phase of construction, prior to start work.

22. Environmental Protection. The contract specifications requires a submission of an Environmental Protection Plan to be executed for this project. This plan must be submitted and approved before any work can start.

23. Safety: The following was discussed: An Accident Prevention Plan is required to be submitted and approved prior to start any work; all injuries have to be logged in the First Aid Case History Report and a copy given to the Area Office at the end of the month. A copy will be kept at the jobsite at all times. You are to follow the requirements set forth by the Safety Manual EM385-1-1, OSHA and the Additional Safety Measures in the specifications. Attached is a list of construction phases where Hazard Control Measures are required to be prepared and discussed at the preparatory inspections of each particular phase. At the end of each month, the contractor is also required to submit to the Area Office a Month Exposure Report with all the man-hours worked by him and his subcontractors.

COE00121

24. Warranty of Construction. The contract specifications required that the contractor, subcontractors, manufacturers, and suppliers to warranty all the work under the contract and that it conforms to the contract requirements and contains no defects in workmanship, material, or design for a period of one year after final acceptance.

25. The Equal Employment Opportunity provisions of your contract, including Affirmative Action Plans, are administered by the Office of Federal Contract Compliance Programs at the address and telephone number provided in a Contracting Officer's letter sent to you.

26. In accordance with the Contract Clauses, by accepting this contract you have agreed to comply with the Clean Air Act and the Federal Water Pollution Control Act.

27. Drug-Free Workplace: The contract clauses require you to publish a statement notifying all employees working on this project that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Contractor's workplace and specifying the actions that will be taken against employees for violations of such prohibition. You must establish a ongoing drug-free awareness program to inform your employees about the dangers of drug use in the workplace.

28. Discussed Partnering for this project and having a Partnering Conference.

29. The following technical or additional items were discussed:

a) Government agrees to expedite submittals on this project due to the needed completion date by the User.

30. The contractor was furnished with the following supply of forms and guides:

a. DD 879, Statement of Compliance

b. SF 1444, Request for Authorization of Additional Classification Rate.

c. SF 1413, Statement of Acknowledgment

d. ITA 999, Request for Special Priority Assistance

COE00122

31. If there were any technical questions left unanswered, please submit them to the Area Office in writing.

Contractor's Representative

U. S. Army Corps of Engineers

5 NOV 99
DATE

11/5/99
DATE

COE00124

FILE A

GAC

REFERENCE MY PHONE WITH MR. THARP ON 8/25/00. MR. THARP ASSURES THAT HE INTENDS TO COMPLETE ALL WORK UNDER THIS CONTRACT. ANY ISSUES WILL BE ADDRESSED WITH SEDONA AT THE END OF THE PROJECT.

**Concord Services Corp.**
Vehicle Operations Facility - Lackland AFB - 9
Lackland AFB, Texas

• • • *Urgent* • • •

# Fax

| | |
|---|---|
| **Date:** | Friday, August 25, 2000 |
| **To:** | George Cardenas |
| **Company:** | US Army Corp of Engineers, Fort Worth District |
| **Fax Number:** | 210-673-7136 |
| **Tel Number:** | 210-675-7712 |
| **From:** | Robert Tharp Jr. **No. of Pages:** 1 |

**Message:**

If this transmission is incomplete, please call (210)494-7905

Thursday, August 24, 2000

Mr. Hector Trinidad
Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78213

**RE: Contract Correspondence**
**Document Number CON-002**
**Vehicle Operations Facility - Lackland AFB - 9**

Dear Mr. Trinidad ,

In response to your letter dated August 22, 2000 concerning re-mobilizing the jobsite and completing our work, please be informed it is our intent to have personnel on site August 25, 2000 to work correcting the deficiencies noted during our jobsite walk August 21, 2000 with the Corp. of Engineers and your superintendent Jake Trinidad. It is further our intent to formally notify both the contracting officer in charge of this project and your bonding company concerning Sedona's lack of payment to Concord Services for work performed, billed for by Sedona, and paid to Sedona by the Government. In accordance with paragraph 4.7.1 of our Subcontract Agreement we are notifying you of said non-payment and demanding immediate restitution for outstanding invoices. Further, you have been granted payment from the Corp of Engineers for the utilities portion of this project equal to 72% of the scheduled value with no retention being held. In accordance with Federal Aquisition Regulations we demand payment equal to 72% of our contract amount with no retainage held.

Our original contract amount was $400,000.00 and we have outstanding change orders totalling $11,923.00. Sedona Contracting has paid to Concord a total of $234,900.90. Currently we have an outstanding balance of $65,022.10. This number includes 72% of the original contract and 100% of completed change order work with no retention being held. Proper invoices to verify this demand can be provided again upon written request.

Should you have any further questions concerning this matter, please call.

Respectfully,
Concord Services Corp.

Robert W. Tharp, Jr.
President

cc: George Cardenas, Corp of Engineers
Fidelity and Deposit Surety Company
Wayne Justice, Trimble Batjer Insurance.

The Fidelity and Deposit Companies
Claim Division
3910 Keswick Road, 5th Floor (21211)
P.O. Box 17069
Baltimore, MD 21297-1069

Phone: 800-654-5155, Ext. 2
Fax: 800-329-6105
Email: darrell.leonard@zurichus.com

November 8, 2000

Via Facsimile and Certified Mail

Rex Crosswhite, Esq.
Deputy District Counsel
Department of the Army
Fort Worth District Corps of Engineers
P O Box 17300
Fort Worth, TX 76102-0300

| | | |
|---|---|---|
| RE: | Principal: | Sedona Contracting, Inc. |
| | Surety: | Fidelity and Deposit Co. of MD |
| | Bond No.: | PRF 8131176 |
| | Obligee: | United States of America, Department of the Army, Fort Worth District Corps of Engineers |
| | Project: | Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance, Lackland AFB |

Dear Mr. Crosswhite:

This will acknowledge receipt of your facsimile dated November 7, 2000, wherein Sedona Contracting purported to rescind its previous letters of direction regarding the dispersement of contract funds. Fidelity and Deposit Company of Maryland unequivocally denies the allegations contained in Mr. Trinidad's letter.

Please be advised that Fidelity and Deposit Company of Maryland (hereinafter "F&D") is the payment and performance bond surety for Sedona Contracting, Inc. with regard to the above referenced construction project. F&D has become aware of circumstances that indicate that Sedona Contracting, Inc. is financially unable to pay for the completion of the above referenced project. Furthermore, subcontractors and suppliers on this project have assertected claims under the payment bond totaling $28,518.81. As a consequence, Fidelity and Deposit Company of Maryland is exposed to potential losses under its payment and performance bonds furnished for this project.

As of this time, F&D demands that you release no further funds under the above referenced contract without the advance written consent and direction of F&D. F&D makes this demand on the basis of and to protect the Surety's rights of subrogation and to enable the Surety to protect its interest under its Bonds furnished for this project. Please note that any failure or refusal to observe this demand will be prejudicial to the Surety, and may result in serious legal consequences.

If you have any questions with regard to this notice, please contact the undersigned as soon as possible. We will be contacting you shortly to discuss this matter further. Thank you in advance for your cooperation in this matter.

● Page 2 November 8, 2000

Nothing herein shall be deemed to be an estoppel, waiver or modification of any of Fidelity and Deposit's rights or defenses and Fidelity and Deposit hereby reserves all of its rights and defenses under any general contracts, agreements, bonds, or applicable law.

Very truly yours,

Darrell Leonard
Claims Counsel

cc: Sedona Contracting, Inc.
Theodore Bailey, Esq.
Elizann Carroll, Esq.

11/21/00

**DEPARTMENT OF THE AIR FORCE**
**AIR EDUCATION AND TRAINING COMMAND**

09 NOV 2000

MEMORANDUM FOR CESWF-DE

FROM: HQ AETC/CEC
266 F Street West
Randolph AFB TX 78150-4319

SUBJECT: FY99 MILCON, BC – Vehicle Complex, PDC No. MBPB993213R1, Lackland AFB TX

1. Subject project was awarded on 23 Sep 99 with a total CWE of $6,583,126.79 and a construction time period of 669 days. This equates to a contractual completion date of 14 Sep 01. The long construction period came about because all of the optional bid items performance periods times were totaled into the base bid construction time; however, we did not award the relocation of Gary Avenue.

2. Your resident office has impressed on the construction contractor, Sedona Contracting, the importance of finishing the Vehicle Maintenance Building by 1 Feb 01 in order to move the vehicle lifts from the existing Kelly Vehicle Ops Facility and meet our 1 Apr 01 Kelly closure date. However, progress is very slow and the Resident Engineer is of the opinion the contractor will not complete the Vehicle Maintenance Facility by 1 Feb 01.

3. A construction period of 669 days for this relatively unsophisticated facility is excessive. We ask you to impress upon Sedona that we need this Vehicle Maintenance Facility by 1 Feb 01 in order to meet the Kelly closure date. In the future, please ask your contracting personnel to collaborate with our project manager when establishing construction periods of greater than one year duration. ? PM

4. Should you have a question or require further information, please call me at (210) 652-3991 or have your staff contact our POC, Mr. Dean Banhart, HQ AETC/CECT, at (210) 652-4465.

HOMER L. GUY, Colonel, USAF
Chief, Engineering Division
Directorate of Civil Engineering

COE01227

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

November 16, 2000

Office of Counsel

SUBJECT: Contract No. DACA63-99-C-0039, Vehicle Operations/Maint. Complex, Lackland Air Force Base and Contract No.DACW63-98-C-0048 Laredo Border Patrol Station

Theodore M. Bailey, Esq.
Milam Building, Suite 711
115 East Travis Street
San Antonio, TX 78205-1611

Dear Ted;

On the morning of November 16, 2000, you advised me that your client, Sedona Contracting, Inc. (Sedona), had been told by a Corps of Engineers representative at Lackland that the Corps would not be processing further payments under the subject contracts. I advised you that the Government's position as understood by your client was not the position of the Corps of Engineers in this matter. The San Antonio Area Office has been advised by the District to process future pay estimates submitted by Sedona. The only caveat is that prior to releasing the pay request to the payment office, the San Antonio Area Office is to advise the District Office of the payment and receive permission for release of the payment.

The Miller Act Performance Bond surety, Fidelity and Deposit Companies, has requested that the Contracting Officer withhold further payments from your client. This has placed us in the precarious position of balancing the rights and equities of the surety and your client. However, the surety has not

COE300066

established their equitable rights as a performing performance bond surety wherein they can legally demand that future payments be stopped. We will continue to monitor this matter closely.

Sincerely,

Rex Crosswhite
Deputy District Counsel

CARDENAS/mld

November 29, 2000
Serial No. 99-0039-0055

Lackland Resident Office

SUBJECT: Progress Schedule, Contract Number DACA63-99-C-0039, BC - Vehicle Operations/Maintenance Complex, Lackland Air Force Base, San Antonio, Texas

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135 East
San Antonio, Texas 78228

Gentlemen:

Reference your latest Progress Schedule with a data date of September 29, 2000 submitted with your Pay Request Number 7 received on October 10, 2000.

Upon review of your progress schedule, we noted several construction activities with negative total float indicating that your progress on this project is less than satisfactory. Some of the activities listed on the enclosed report were discussed in a meeting held on Friday, November 17, 2000 in my office. In attendance at this meeting were Mr. Jake Trinidad of your office, Mr. Sydney Whitehead, your Project Scheduler, and Mr. George Cardenas of my office.

Here are some examples of activities on the project's critical path showing negative total float:

a. Activity 010030.P Coordination Meeting: This activity indicates 135 days of negative float. Mr. Whitehead indicated that you had not notified him that this activity had been completed. Mr. Whitehead, I assume speaking on behalf of Sedona Contracting, stated that this meeting was not an official meeting because the "Authorized Representative of the Contracting Officer" was not in attendance. This Quality Assurance/Quality Control Mutual Understanding meeting was coordinated and conducted by my Project Engineer and was held in my office on December 6, 1999. This date must be inputted in your schedule.

COE01345

b. Several Activities for review of submittals indicate negative float time. These activities representing the submittal process should only represent submittals requiring Government approval as required by paragraph 3.4.5 of Contract Specification section 01320. As an example, Activity 011515.P Review Plumbing shows 118 days of negative float. All Plumbing submittals in the contract are designated "For Information Only" therefore, this activity 011515.P and other associated Plumbing activities need to be deleted. Please verify the accuracy of the dates currently shown in your schedule for those submittals activities showing negative float. See the enclosed report.

c. Activity 030020.C Form/Reinforce Beams was completed on or about August 13, 2000, 3 months behind what you initially scheduled.

d. Activity 030035.C Set Concrete Precast shows 130 days of negative float.

e. Activity 030040.C Form/Place Concrete Slab shows 119 days of negative float.

f. Activity 050005.C Erect Structural Steel shows 130 days of negative float.

Please insure that you review and correct your schedule deficiencies prior to scheduling a progress review meeting with Mr. Bill Reese, our Quality Assurance Inspector, for submission of your November 2000 pay request. If these deficiencies are not corrected, we will retain 10% of your November 2000 pay request in accordance with Contract Clause 79 of Contract Section 00700, due to your schedule showing unsatisfactory progress.

If you have any questions concerning the above, please do not hesitate to contact my Project Engineer, George Cardenas at (210) 675-7712/7713.

Sincerely,

Manuel Fano
Contracting Officer Representative

Enclosures

COE01346

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO ATTENTION OF:

February 8, 2001

Office of Counsel

SUBJECT: Sedona Construction Under Contract No. DACA63-99-C-0039, Vehicle Operations-Maintenance Complex, Lackland Air Force Base, Texas

Elizann Carroll
Strasburger & Price
Suite 4300
901 Main Street
Dallas, Texas 76202-3794

WTH&F
Rec'd on 2/12 By
Copies To: ANL

Dear Ms. Carroll:

In the meeting held between representatives of the Corps of Engineers, Fidelity and Deposit Company of Maryland (F&D), and Sedona Contracting, Inc. (Sedona), on January 10, 2001, I requested letters of direction from representatives of Sedona and F&D directing that payment be made to a joint control account pursuant to the Order issued by the U.S. District Court for the Western District of Texas. Mr. Bailey, in a letter dated January 11, 2001, submitted a letter from Sedona dated January 3, 2001, directing that payments be made to the joint account. Subsequent to the receipt of this letter representatives of the Fort Worth District's Contracting Division contacted Mr. Trinidad requesting that he execute the necessary forms in order to facilitate payment to the joint account. It is my understanding that Mr. Trinidad refused to execute the forms necessary in order to change the place of payment. I have contacted Mr. Bailey and advised him of his client's refusal to abide by the agreements made in the January 10, 2001 meeting.

Mr. Trinidad's refusal to abide by the terms of the agreement reached on January 10, 2001, has placed the Corps of Engineers in a precarious position balancing its obligations to Sedona under the contract against its obligations to protect the interest of the surety. We have reexamined the factors mandated under

Balboa v. United States, 775 F.2d 1158 (Fed. Cir. 1985), and have determined at this time, that payment will continue to be made to Sedona. Although Sedona's failure to abide by the January 10, 2001 agreement is disturbing, other than the failure to pay subcontractors, they are not in breach of their contractual obligations. We will continue to closely monitor this matter and shall continue to withhold payment from Sedona, under the Prompt Payment Clause of the contract, when they request payment from the Government and subsequently fail to pay their subcontractors.

Sincerely,

Rex Crosswhite
Deputy District Counsel

Copy Furnished:

Theodore M. Bailey, Esq.
Milam Building, Suite 711
115 E. Travis
San Antonio, Texas 78205-1611

Robert T. Watt
Watt, Tieder, Hoffar,
and Fitzgerald, LLP
7929 W. Park Drive
Suite 400
Mclean, Virginia 22102-4224

The Contractor shall include as the first activity for a project phase an activity called "Start Phase X" where "X" refers to the phase of work. The "Start Phase X" activity shall have a constraint date equal to the date that the NTP was acknowledged and a zero day duration.

3.4.20 End Phase

The Contractor shall include as the last activity in a project phase an activity called "End Phase X" where "X" refers to the phase of work. The "End Phase X" activity shall have a constraint date equal to the completion date for the project and a zero day duration.

3.4.21 Lag Activities

Duration for Lag Activities shall not have negative value.

3.4.22 Open Ends

Open Ended Activities other than the last activity, " End Project", shall only be used with approval of the Contracting Officer.

3.4.23 Ownership of Float

Float available in the schedule, at any time, shall not be considered for the exclusive use of either the Government or the Contractor. Use of Zero Free Float and Zero Total Float constraints shall not be allowed.

3.5 BASIS FOR PAYMENT

The schedule shall be the basis for measuring Contractor progress. Lack of an approved schedule, scheduling personnel, or approved periodic schedule updates shall result in an inability of the Contracting Officer to evaluate Contractor progress for the purposes of payment. In this event, progress payments will not be made until corrective action or additional information is provided which is determined sufficient in the judgement of the contracting Officer to analyze progress. The contractor's pay estimates will be based upon the amount of work completed, as agreed upon between Government and Contractor personnel during the Periodic Progress Meetings further specified below.

3.6 DEFAULT PROGRESS DATA DISALLOWED

Actual Start and Finish dates shall not be automatically updated by default mechanisms that may be included in CPM scheduling software systems. Actual Start and Finish dates on the CPM schedule shall match those dates provided from Contractor Quality Control Reports.

3.7 OUT-OF-SEQUENCE PROGRESS

Activities that have posted progress without predecessors being completed (Out-of-Sequence Progress) shall be allowed only by the case-by-case approval of the Contracting Officer. If approval is not given, a revised schedule that reflects corrections to the original logic to show the current sequence of activities shall be submitted prior to payment being made for those items of work.

3.8 PERIODIC PROGRESS MEETINGS

**SEDONA CONTRACTING, INC.**
**6800 Park Ten Blvd., Suite 135 East**
**San Antonio, Texas 78213**
**(210) 736-5335 / Fax 736-1927**

February 12, 2001

U.S. Army Corp of Engineers
Attn: Mr. John Rodgers
Post Office Box 17300
Ft. Worth, Texas 76102

Re: Payment on Contract No. DACA63-99-C-0039

Dear Mr. Rodgers:

We previously submitted a letter, January 22, 2001 stating the direction for funding.

To date we still not have received any form of payment for work we have performed all the way back in December. We need to have this payment processed immediately. We have several subcontractors who are refusing to continue work until they receive payment. I can not pay my subcontractors or suppliers until I receive payment from you, the owner. There are major repercussions in regards to the continuation of the project if payment is not made immediately. The project to date is on schedule and with no blemishes.

Please be reminded that Sedona Contracting is performing the work and is due the funding for this work. The contract was signed between Sedona Contracting and the Corp of Engineers, nobody else.

We need this funding processed immediately so that we may get our subcontractors and suppliers paid for the work that they have performed.

Please let me know when we may expect payment.

Thank you.

Hector Trindad

cc: Gary Shaw

A.TREVINO/rgg

November 27, 2000

San Antonio Area Office

SUBJECT: Pay Request No. 8, Contract No. DACA63-99-C-0039, Vehicle Operation/Maintenance Complex, Lackland Air Force Base, San Antonio, TX

Sedona Contracting, Inc.
6800 Park Ten Blvd., Suite 135E
San Antonio, TX 78213

Gentlemen:

Reference Pay Request No. 8 received on November 21, 2000, for the period October 1, 2000 through October 31, 2000. Pay Request No. 8 is being returned unprocessed because you did not supply, with the pay request, the following items. These items are located in Specification 00700, Contract Clause 532.232-5.

a. A listing of the amounts included for the work performed by each subcontractor under the contract.

b. A listing of the total amount of each subcontractor under the contract.

c. A listing of the amounts previously paid to each subcontractor under the contract.

Also, the following amounts will be withheld from your next pay request for non-payment to the subcontractors:

a. $233,200.00, previously paid to you for stored structural steel material in your September 2000 pay estimate. This money was never paid to H&M Steel.

b. $1,273.00, previously paid to you for pre-cast manholes, but never paid to the subcontractor, Hughes Supply Inc.

Please call Mr. William C. Reese or Mr. George A. Cardenas at the Lackland Resident Office, (210) 675-7712, if you have any questions on this matter.

Sincerely,

Thomas L. Armstrong
Administrative Contracting Officer

COE01192

02870