**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:06-cv-00186-LB (Judge Block)** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff, Fidelity and Deposit Company of Maryland, and defendant, the United States, respectfully submit the following joint preliminary status report:

**(a) Does the Court have jurisdiction over the action?**

Plaintiff states that the Court has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. § 1491, for the $1,145,221 in damages sought in this action. Defendant is not aware of a basis upon which to challenge the Court's jurisdiction at this time.

**(b) Should the case be consolidated with any other case, and if so, why?**

The parties agree that this case should not be consolidated with any other action that is currently pending before this Court or any other court.

**(c) Should trial of liability and damages be bifurcated and, if so, why?**

The parties agree that the trial of liability and damages should not be bifurcated.

**(d) Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

The parties agree that further proceedings should not be deferred pending consideration of another case before this Court or any other tribunal.

**(e) In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

The parties agree that no remand or suspension will be sought.

**(f) Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

The parties agree that no additional parties will be joined.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?**

After discovery is completed, the parties may submit cross motions for summary judgment pursuant to RCFC 56.

**(h) What are the relevant factual and legal issues?**

Plaintiff's Statement of the Issues

Plaintiff F&D acted as performance and payment bond surety on a construction project at Lackland Air Force Base, Texas that was partially performed by its principal, Sedona Contracting, Inc. under a Contract with the Government through the U.S. Army Corps of Engineers, Fort Worth District ("Corps"). Sedona experienced financial problems during its performance of the work and ultimately abandoned the work. After the Corps terminated Sedona's Contract for default on June 7, 2001, F&D executed a

Takeover Agreement with the Government and procured another contractor to complete the work.

F&D's Complaint alleges two separate counts that sound in the impairment of suretyship doctrine. First, F&D contends that the Corps improperly administered the Contract during Sedona's period of performance. In particular, F&D alleges that the Corps improperly administered the Contract's quality control and payment procedures for Sedona's Contract. For example, with respect to quality control, F&D alleges that the Corps both paid for defective work and failed to insist upon the proper quality controls prior to making payments to Sedona. Further, an example of the Corps' alleged improper administration of the payment process, is that the Corps failed to insist upon required subcontractor certifications as a prerequisite to releasing progress payments, thereby facilitating Sedona's diversion of funds from the Project. As a result of these and other alleged acts and omissions by the Corps, F&D contends that it incurred needless additional costs in completing Sedona's work following the default termination.

Second, F&D alleges that the Corps abused its discretion and failed to exercise reasonable discretion in administering Sedona's termination. F&D contends that the Government had a duty to properly account for the interests of F&D as surety in reaching its decision to terminate the Contract bonded by F&D. By as early as November 2000, F&D requested that the Corps terminate Sedona's Contract in order to allow F&D to complete the work. F&D has alleged that the Corps failed to take prompt action in the face of Sedona's misdeeds and lack of progress, thereby allowing the Project to languish for many months before the Corps finally terminated Sedona's Contract on June 7, 2001. F&D's Complaint refers to both internal Corps records and external correspondence

indicating that the Corps was aware of Sedona's diversion of funds in or around late 2000 and understood that Sedona's only source of job funding was the Corps' progress payments. The Corps refused to make further payments to Sedona after becoming aware of its apparent diversion of funds. The Corps, however, refused to terminate the Contract even though F&D had communicated its desire to takeover and complete the work. F&D alleges that the Project languished for many months due to the Corps' actions and inactions until the Corps ultimately made the decision to terminate Sedona's Contract and allow F&D to complete the work. As a result of this period of inactivity at the site, F&D alleges that it incurred additional costs to secure subcontractor commitments and to replace work. F&D has alleged that the Government's improper pre-default administration of the Contract and its delayed termination of Sedona caused F&D to incur $1,145,221 in damages.

<u>Defendant's Statement of the Issues</u>

Defendant agrees that the above statement summarizes the allegations made in plaintiff's complaint. Defendant believes that the Corps properly exercised its discretion in administering Sedona's contract and did not impair F&D's rights as surety under Sedona's contract. Specifically, the Corps followed the Contractor Quality Control ("CQC") provisions of the contract and properly performed its quality assurance function. Additionally, the Corps took prompt and decisive action to protect the interests of F&D with respect to instances of subcontractor nonpayment when notified of such. After carefully considering F&D's request, on December 1, 2000, to terminate Sedona's contract, the Corps determined that it was a reasonable exercise of its discretion to continue Sedona's contract and to closely monitor Sedona's progress on the project.

While there had been some subcontractor notifications of nonpayment, at that point in time, Sedona was on schedule with performance pursuant to the contract. There were also reassurances from Sedona that they intended to complete the project and had sufficient financial resources. After it became apparent that Sedona would not be able to complete the project, the Corps properly terminated for default Sedona's contract on June 7, 2001. Defendant believes that the lapse of time between the initial notice that problems existed with Sedona's contract and the notification of the termination of Sedona's contract was necessary and justified, and was not an abuse of discretion.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties are actively engaged in settlement negotiations, and the Plaintiff is responding to certain informal discovery inquiries from the Government in an effort to foster meaningful settlement dialogue. There is a likelihood that a settlement can be reached, and F&D and counsel for defendant are amenable to alternative dispute resolution.

**(j) Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?**

As outlined above, one or both parties may move for summary judgment pursuant to RCFC 56. If dispositive motions are not submitted, or if any such motions are not completely dispositive of this action, and in the event that a settlement cannot be reached, the parties anticipate proceeding to trial. The parties are not requesting an expedited trial. At this time the parties anticipate the trial would take place in Washington, D.C., or alternatively, in Fort Worth, Texas.

**(k) Are there special issues regarding electronic case management needs?**

The parties are not aware of any such needs.

**(l) Is there other information of which the Court should be aware at this time?**

The Plaintiff would like the Court to be aware that it anticipates that it will soon amend its Complaint to allege an additional count under the Contract Disputes Act, 41 U.S.C. § 601 et seq. The Plaintiff has filed a certified claim for $1,416,179.37 pursuant to its Takeover Agreement with the Government and in accordance with the CDA; Plaintiff is currently awaiting a decision from the Contracting Officer on this claim. Plaintiff's CDA claim includes the $1,145,221 sought in this action along with certain additional damages totaling $270,958. It is anticipated that the Plaintiff's CDA claim will be joined in this action in the near term.

Defendant has no additional information of which the Court should be aware at this time.

**II. Proposed Discovery Plan Under COFC Rules Appendix A, Section III, ¶ 4**

The parties intend to conduct simultaneous discovery through interrogatories, requests for admission, requests for production of documents, depositions, and subpoenas duces tecum and for deposition. The parties propose the following discovery deadlines:

(a) Exchange of Initial Disclosures: June 15, 2007

(b) Deadline to Complete Fact Discovery: November 16, 2007

(c) Disclosure of Plaintiff's Expert Reports: December 7, 2007

(d) Disclosure of Defendant's Expert Reports: January 11, 2008

(e) Disclosure of Plaintiff's Reply Expert Reports: February 8, 2008

(f) Conclusion of Expert Depositions: March 7, 2008

(g) Deadline for Dispositive Motions: April 18, 2008

Respectfully Submitted,

s/Christopher J. Brasco
Christopher J. Brasco, Esquire
Christopher M. Anzidei, Esquire
8405 Greensboro Drive, Suite 100
McLean, VA 22102
(703) 749-1000

Counsel for the Plaintiff

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

OF COUNSEL:

Ching Han Wong
Assistant District Counsel
Fort Worth District
U.S. Army Corps of Engineers
819 Taylor Street
Fort Worth, TX 76102

Attorneys for Defendant

electronically filed,
May 21, 2007

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2007, a copy of the foregoing "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad